# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

MELANIE E. DAMIAN, as
Receiver for On Point Global LLC, *et. al.*,

    Plaintiff,

v.

HOLLY MELTON,
BAKER & HOSTETLER LLP, and
CROWELL & MORING LLP,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, Melanie E. Damian, in her capacity as the Court-appointed Receiver ("Plaintiff or the "Receiver") for On Point Global, LLC, *et al*[1] (the "Receivership Entities"), hereby sues Defendants, Holly Melton, Baker & Hostetler LLP, and Crowell & Moring LLP (collectively, the "Defendants"), and states as follows:

---

[1] The Receivership Entities include: On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a Rogue Media Services LLC; DG DMV LLC; On Point Domains LLC; Final Draft Media LLC; Cambridge Media Series LLC f/k/a License America Media Series LLC; Issue Based Media LLC; Bella Vista Media Ltd. also d/b/a BV Media; Carganet S.A. also d/b/a G8 Labs; Direct Market LLC; Bluebird Media LLC; Borat Media LLC; Bring Back the Magic Media LLC; Chametz Media LLC; Chelsea Media LLC; Coinstar Media LLC; Domain Development Studios LLC; Domain Dividends Media LLC; Eagle Media LLC; Falcon Media LLC; GNR Media LLC; Island Media LLC; Leatherback Media Group LLC; Macau Media LLC; CEG Media LLC f/k/a Matzoh Media LLC; MBL Media Ltd. Inc.; Orange and Blue Media LLC; Orange Grove Media LLC; Panther Media LLC; Pirate Media LLC; Pivot Media Group LLC; PJ Groove Media LLC; Sandman Media Group LLC; Shadow Media LLC; Skylar Media LLC; Slayer Billing LLC; Spartacus Media LLC; Very Busy Media LLC; Wasabi Media LLC; Yamazaki Media LLC; Bronco Family Holdings LP a/k/a Bronco Holdings Family LP; BAL Family LP; Cardozo Holdings LLC; 714 Media Ltd.; Mac Media Ltd.; License America Management LLC; License America Holdings LLC; and Blackbird Media LLC.

## INTRODUCTION

1. This action is brought against an attorney and two law firms for negligently breaching their duties as attorneys and counsel to the Receivership Entities before they were placed in receivership in connection with a Federal Trade Commission enforcement action.

2. Receivership Entities On Point Global LLC, MBL Media Ltd., PBJ Media LLC, and Rogue Media Services LLC, and Direct Market LLC (collectively, the "OPG Entities", further, this term will refer to On Point Global LLC's overall business including its subsidiaries engaged in carrying out On Point Global LLC's business model) retained the Defendants to guide and counsel them concerning the legal risks and implications of the OPG Entities' business models and websites and whether their business models and websites complied with applicable laws, including the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b)

3. The Defendants knew or should have known that the OPG Entities' business models and websites as then operating contravened federal consumer protection laws, including the FTC Act, and they negligently failed to warn the OPG Entities that they should make changes and/or modify their business practices to be in compliance with these federal consumer protection laws or, in the alternative, cease operations.

4. As more fully set forth herein, the Defendants owed a duty to the OPG Entities as attorneys to counsel their clients in a reasonably prudent manner consistent with applicable law. Defendants breached their duties as attorneys in several ways, including, but not limited to, failure to gain a complete understanding of the OPG Entities' business models, websites, and operations and failure to competently counsel the OPG Entities regarding the legal risks of continuing to operate as they did.

5. On September 29, 2021, the United States District Court for the Southern District of Florida made a final determination contrary to the advice the Defendants had provided to the OPG Entities, holding, among other things, that the OPG Entities' "paid-guide" and "Freemium" websites violated Section 5(a) of the FTC Act. *See* ECF No. 528 in *Federal Trade Commission v. On Point Global LLC, et al.,* Case No. 19-25046-cv-Scola (the "FTC Enforcement Action").

6. Defendants' breaches of their duties as attorneys for the OPG Entities caused or was a substantial contributing factor in causing significant injuries to the OPG Entities. Further, the Defendants' failure to properly counsel the OPG Entities on compliance matters caused the OPG Entities to incur millions of dollars in Receivership and attorneys' fees.

7. The Receiver brings this action to recover the losses of the OPG Entities (now Receivership Entities) resulting from Defendants' breaches of their duties.

## THE PARTIES

<u>The Plaintiff/Receiver</u>

8. The Receiver was appointed in the FTC Enforcement Action by the United States District Court for the Southern District of Florida (the "Receivership Court") pursuant to its *Order Granting Ex-Parte Temporary Restraining Order and Order to Show Cause* dated December 13, 2019 [ECF No. 17] ("TRO") and its *Order Granting Motion for Preliminary Injunction* dated January 14, 2019 [ECF No. 126] ("Preliminary Injunction") (collectively, the "Receivership Orders"). The Complaint filed in the FTC Enforcement Action (the "FTC Complaint") and the Receivership Orders are in the public record.[2] *See* Case No. 19-25046-cv-Scola.

---

[2] Unless otherwise noted, all capitalized terms herein shall have the same meaning as ascribed in the FTC Complaint.

9. Pursuant to the Receivership Orders, the Receiver assumed "full control" of the Receivership Entities, with standing to investigate and prosecute claims against third parties including any claims in contract, law, tort, and equity.

10. On November 16, 2021, the Receivership Court entered its *Verdict and Order Following Non-Jury Trial* and further defined and expanded the Receiver's powers, duties, and responsibilities to include development and implementation of a claims process and distribution plan to assure that the compensatory purposes of a civil contempt sanction of more than $102 million dollars entered against, among others, the OPG Entities will be met. *See* FTC Enforcement Action at ECF No. 579.

The Defendants

11. Defendant Baker & Hostetler LLP ("Baker") is and was, at all material times hereto, a limited liability partnership, operating as an international law firm with sixteen offices throughout the United States, including an office in New York, New York.

12. Defendant Crowell & Moring LLP ("Crowell") is and was, at all material times hereto, a limited liability partnership, operating as an international law firm with offices throughout the United States and around the world, including an office in New York, New York.

13. At all material times hereto, Defendant Holly Melton ("Melton") was an attorney licensed to practice law and practicing law in the State of New York. At all times material hereto until October 21, 2018, Defendant Melton practiced with and on behalf of and was employed by Defendant Baker in New York, New York, and from approximately October 22, 2018 to the present, Defendant Melton has been employed as a partner level attorney and has practiced law with and on behalf of Defendant Crowell. At all times material hereto and in her employ by Baker

4

and Crowell, Defendant Melton provided legal services from or through Baker and Crowell in New York, to the OPG Entities in South Florida.

14. At all material times between May 2017 and the present, Defendant Melton and several other associates and partners identified below who performed services for and provided legal counsel to the OPG Entities were acting within the course and scope of their duties and responsibilities as partner and associate level attorneys employed by Baker and Crowell respectively and were acting with Baker and Crowell's respective approval and consent.

15. As more fully detailed herein, the Defendants provided legal services to the OPG Entities in connection with, among other issues, whether the OPG Entities' business models and websites complied with Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

16. On November 16, 2021, the Receivership Court entered its *Verdict and Order Following Non-Jury Trial* and determined that the OPG Entities' websites operated in violation of Section 5(a) of the FTC Act and finding On Point Global, LLC and certain of the OPG Entities and their principals jointly and severally liable for compensatory contempt damages in an amount not to exceed $102,768,235.47 (the final amount to be determined by a claims process approved by the Receivership Court and being implemented by the Receiver) based on those violations and the violations of the 2014 Permanent Injunction entered in the Acquinity Matter (*see infra*). See ECF No. 579 in the FTC Enforcement Action.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 754, and the principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367.

18. This Complaint is brought to accomplish the ends sought and directed by the Receivership Court, which, among other things, appointed Plaintiff as Receiver and authorized her to commence actions to recover assets and pursue claims of the Receivership Entities.

19. All of the Defendants are subject to the jurisdiction of this Court pursuant to Section 48.193(1)(b), Florida Statutes, in that, as more fully shown by the facts set forth below, Defendants committed tortious acts within the jurisdiction, including providing legal advice in Florida, which was relied upon in establishing and furthering the OPG Entities' business models, operations, and websites, and including providing advice to the OPG Entities through their principals located in South Florida. The Defendants' tortious acts caused injuries to the OPG Entities and to the victims of the OPG Entities' websites and operations within the jurisdiction. Further, each of the Defendants received transfers of funds, either directly or indirectly, from the OPG Entities, which were operating, conducting, engaging in, and carrying on illegal business operations or business ventures in, among other locations, the Southern District of Florida.

20. Defendants have sufficient minimum contacts with the State of Florida such that the exercise of personal jurisdiction comports with Constitutional due process requirements. Specifically, and not exclusively, Defendant Melton provided legal advice directly to individuals and entities in South Florida in connection with the advice at issue in this case, and Defendant Melton's legal advice caused and contributed to violations of the FTC Act in Florida, caused and contributed to the substantial judgment and resulting damages to the OPG Entities which was ordered in the Southern District of Florida, and directly impacted consumers in South Florida.

21. Defendants Baker and Crowell, in addition to providing legal advice to the OPG Entities in South Florida, have numerous partners who are members of the Florida Bar, have filed, litigated, and defended numerous significant lawsuits in South Florida, and have acted through

Defendant Melton, a partner of each firm, when Defendant Melton engaged in the acts described above and herein.

22. Venue is also proper in the Southern District of Florida pursuant to Title 28, United States Code, Section 1391(b), because a substantial part of the acts or omissions giving rise to the acts described and the claims set forth in this Complaint occurred in the Southern District of Florida.

**GENERAL ALLEGATIONS**

<u>Background of the OnPoint Entities and their Operations</u>

23. From approximately January 2017 to December 2019, among other lines of businesses not relevant to the instant claims, the OPG Entities created and operated approximately ninety-seven (97) "paid guide" businesses via certain "portal sites" and approximately one hundred and four (104) "transaction sites," consisting of websites with URLs that often contained the name of a state, a keyword related to a government-related service, and a ".org" top-level domain—for example, "floridadriverslicense.org."

24. Consumers were directed to these "paid guide" businesses when looking for information on how to obtain government services, such as to renew a driver's license or similar state-provided services, either via a "portal site" (which would eventually direct them to a "transaction site") or via direct access to the "transaction site."

25. Once on the "transaction site," consumers could purchase pdf guides on the advertised government service and the OPG Entities would collect the consumers' personal contact and credit card information.

26. Through either way of access (portal or transaction site), the consumers would then see links purporting to contain information entitled "Obtain Your . . . Guide," followed by text

promoting the site as being a "comprehensive source" for obtaining "all" requisite government services.

27.   On neither kind of site were the consumers able to obtain the advertised services, as advertised.  Moreover, although some of the sites contained language in small print at the bottom, purporting to advise consumers that they, in fact, would have to go to their state's DMV services website and providing various links for same, none of the sites indicated which of those links were the official State DMV websites, as opposed to third-party websites or applications.

28.   In total, during the relevant time period, the OPG Entities' ninety-seven (97) "paid guide" businesses earned $85,470,480.06 through these practices.

29.   Throughout this time, some of the OPG Entities' advertising accounts with Google and Bing websites were shut down after being determined to be "high risk" to consumers and with a high probability of scam/fraud.  Other similar third-party service providers, such as Visa, alerted the OPG Entities that its chargeback rates, based on successful consumer disputes to transactions, exceeded acceptable industry chargeback rates.  These facts became known to Defendants.

<u>Representation of Burton Katz in the Acquinity Matter and</u><br><u>Actual Knowledge of the 2014 Permanent Injunction</u>

30.   On June 16, 2014, the FTC filed an amended civil Complaint against Acquinity Interactive, LLC ("Acquinity"), Burton Katz ("Katz"), and others, in the matter styled *Federal Trade Commission v. Acquinity Interactive, LLC*, *et al.*, Case No. 14-60166-cv-Scola ("Acquinity Matter") alleging, among other things, that Katz, through Acquinity, engaged in deceptive and unfair "cramming" on mobile phone bills [*see* Acquinity Matter, ECF No. 135 at p.2].  The FTC further alleged that Katz and his business operation tricked consumers into signing up for costly phone bill subscriptions through websites that offered free merchandise in exchange for consumers' phone numbers.  Katz's operation then enrolled the consumers in unwanted premium

text messaging services that charged them monthly. The only mention of the charges appeared in separate hyperlinked pages or in small print and locations where consumers were unlikely to notice. *See* Acquinity Matter, ECF No. 135 at p.2.

31. In or about July 2014, Katz retained Linda Goldstein, then an attorney employed by the law firm, Manatt, Phelps & Phillips, LLP, to represent him in the Acquinity Matter proceedings. At the time, Defendant Melton was also working as an attorney employed by Manatt, Phelps & Phillips, LLP and was involved in representing Katz in the Acquinity Matter.

32. On or about October 16, 2014, the District Court presiding over the Acquinity Matter (the "Contempt Court") entered a *Stipulated Final Judgment and Order for Permanent Injunction* ("2014 Permanent Injunction") against Katz and Acquinity. *See* Acquinity Matter at ECF No. 132. Katz's attorney, Linda Goldstein, agreed to the terms of the 2014 Permanent Injunction and jointly with the FTC sought and agreed to its entry [Acquinity Matter at ECF No. 128].

33. The 2014 Permanent Injunction prohibited Katz from, among other things, "making, or assisting others in making, expressly or by implication, any false or misleading representation including representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service." *See* Acquinity Matter, ECF No. 132 at 2. The 2014 Permanent Injunction also subjected Katz to ongoing compliance monitoring. *See id.* at 7-12.

34. On or about March 14, 2017, attorneys Linda Goldstein and Defendant Melton left their employment with the law firm Manatt, Phelps & Phillips, LLP and began their employment with Baker.

35. As such, attorney Linda Goldstein's and Defendant Melton's actual knowledge of the 2014 Permanent Injunction and the terms and restrictions it imposed on Katz and his businesses became knowledge of and was imputed to Baker upon their employment with Baker.

<u>Defendants' Representation of the OPG Entities Related to Compliance Matters</u>

36. At all times material to this action, and throughout the OPG Entities' actions as alleged in the foregoing paragraphs, the Defendants held themselves out to be experienced in representing individuals and entities in connection with the FTC Act and related laws and with legal compliance reviews and analyses and represented the OPG Entities for this purpose.

37. In or about May 2017, the OPG Entities retained Defendant Melton and the Baker firm to conduct a compliance analysis and assess the legal risks of their business models and websites to determine whether they complied with applicable laws.

38. In or about May 2017, Melton and other partners and associates of Baker conducted a legal compliance analysis of the OPG Entities' business model. Defendants Baker and Melton failed to raise any substantive concerns regarding the business model.

39. In addition, throughout May and June 2017, Melton prepared numerous correspondence on Baker letterhead and directed to Brent Levison at OnPoint Global-related entities, PBJ Media, LLC, MBL Media, Ltd, and Rogue Media Services, LLC, in which she provided "assess[ment of] the legal risk of a new business model" which would provide online "concierge services" to residents of certain enumerated states, in order to process those residents' renewals of vehicle registrations.

40. Melton concluded that her "legal research did not uncover any legal challenges to this type of business model, either in connection with private legal actions or with governmental

enforcement agencies." She further opined that the business model presents a "low legal risk," if certain disclosures were made on the websites.

41.     Later, in September, 2017, Charlie Eissa, on behalf of the OPG Entities, requested that Defendant Melton and Baker conduct a, "thorough legal and compliance review" of the entire business models and websites specifically requesting that the review and counsel provided by Melton and Baker "ensure total compliance". Defendant Melton acknowledged that "[t]his is a large scale compliance review".

42.     Specifically, Defendant Melton and Baker were asked to and agreed to review 16 web properties and marketing processes for website disclaimers, data collection, landing pages site content, the Guide, text communications, and e-mail communications. Both Freemium and paid-guide websites were provided for review in substantially the form found non-compliant by the Court in the FTC Enforcement Action.

43.     When Melton moved from Baker to Cowell in late 2018, Melton and other lawyers employed by Baker continued to provide FTC Act compliance work, as well as data collection, security and online privacy advice to the OPG Entities. On the latter point, an attorney employed by Baker advised Mr. Levison regarding the "onpoint global site" and California law concerning online privacy and the collection of personal information from Californians but concluded that "given the relatively small amount of information being collected, and the fact it's primarily an informational page, you're at low risk for enforcement."

44.     At no time did Melton or Baker raise any concerns about the OPG Entities' business model including the " Freemium or paid-guide" business despite their supposedly thorough legal and compliance review of same.

45. Furthermore, despite Melton and Baker's actual knowledge of the 2014 Permanent Injunction and the restrictions it imposed and compliance it required, at no time did Melton or Baker acknowledge or alert the OPG Entities or explain the increased risks and scrutiny attendant to the 2014 Permanent Injunction which applied to and imposed restrictions on Katz as well as the OPG Entities as companies formed and operated by Katz or otherwise include in their advice compliance counseling as it related to the 2014 Permanent Injunction.

46. On April 5, 2019, Melton provided Crowell's "Compliance Monitoring Program" to On Point Global: an ongoing compliance monitoring program to "ensure that OnPoint Global, LLC complies with applicable laws and regulations and thereby reduces the risk of government investigations, consumer claims and partner indemnity demands." Crowell further proposed a schedule to continually review the websites and marketing materials in order to flag any compliance issues.

47. Thereafter, Crowell provided compliance counseling to OPG Entities. Crowell represented that such counseling included an Initial Comprehensive Review of websites and provided tracking of the websites reviewed and supposed periodic reviews. Until the time that the FTC brought suit against the OPG Entities in December of 2019, alleging violations of the FTC Act based on the OPG Entities' business model and deceptive websites, Defendants failed to provide advice that would correct violations of the FTC Act.

48. Melton also provided "legal training" to the OPG Entities on or about March 11, 2019, which included a PowerPoint presentation reflecting that Melton provided information to the OPG Entities regarding basic consumer protection principles, telemarketing law, lead generation issues, .com disclosures, CAN-SPAM, and privacy and data security.

49. At no time did Melton or Crowell raise any concerns about the OPG Entities' business model despite their purported thorough legal and compliance review and the training provided to the OPG Entities as to same.

50. Furthermore, as discussed *supra*, despite Melton's actual knowledge of the 2014 Permanent Injunction, which is imputed to Crowell, and the restrictions it imposed and compliance it required, at no time did Melton or Crowell acknowledge or alert the OPG Entities or any of their principals of the Acquinity Matter proceedings or the 2014 Permanent Injunction which applied to and imposed restrictions on Katz as well as the OPG Entities as companies formed and operated by Katz.

### The OPG Entities' Violations of the FTC Act

51. Section 5(a) of the FTC Act, under which the FTC sued the OPG Entities and all Defendants named in the FTC Enforcement Action, prohibits the use of "unfair and deceptive acts or practices in or affecting commerce."

52. In its September 29, 2021 *Order on Cross Motions for Summary Judgment*, the Receivership Court conducted its section 5(a) analysis pursuant to a three-pronged test: "(1) there was a representation or omission; (2) the representation or omission was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation or omission was material.". FTC Enforcement Action, ECF 528 at p.12.

53. As determined by the Receivership Court relating to the illegal paid-guide businesses:

> "Renew your License." "Renew Car Registration." On Point made these statements and others like them on their paid-guide-related websites. Taken alone, these representations could lead a reasonably prudent consumer to believe that they were going to renew their license or car registration on these websites. But consumers did not receive these services. Rather, for nearly $30 each, consumers received a pdf guide with information that could otherwise be accessed for free from the

government. Moreover, the guide websites contained notable omissions—the sites omitted any disclosures that informed consumers that they were *not* receiving the services above.  [Emphasis in original]

54.     The Receivership Court determined that the representations and omissions on the websites were <u>material</u> and noted that the FTC produced evidence that consumers did rely on the misrepresentations and omissions, customers complained, and third-party search-engine entities and credit card issuers suspended the OPG Entities' accounts.  Defendants represented the OPG Entities throughout the applicable time of the violations.

55.     The Receivership Court also determined that the representations and omissions were likely to mislead reasonable customers, as highlighted by the FTC's following evidence: (1) a chargeback threshold that was so high that the OPG Entities' accounts breached payment processors' thresholds sixty-four times over three years; (2) customer complaints both by phone and online, all of which the OPG Entities worked to hide; (3) four consumer affidavits and hundreds of consumer complaints; and (4) the third-party search engines' shutdowns of the OPG Entities' accounts due to designations as "high risk" and "high probability of scam/fraud."

56.     At all times material hereto, the Defendants provided continuous compliance advice, review and work for the OPG Entities, and were aware or should have been aware of the deceptive nature of the OPG Entities' business model and websites, as evidenced by the significant "red flags" surrounding the OPG Entities' conduct during the time when the Defendants were purportedly ensuring the OPG Entities' compliance with controlling law.

<u>The FTC's Motion for an Order to Show Cause Why Katz and the OPG Entities Should Not Be Held in Contempt for Violations of the 2014 Permanent Injunction</u>

57. On February 12, 2020, in the Acquinity Matter, the FTC filed a Motion for an Order to Show Cause Why Katz and the OPG Entities Should Not Be Held in Contempt for their violations of the terms of the 2014 Permanent Injunction. *See* Acquinity Matter ECF No. 135.

58. The FTC alleged, among other things, that Katz and On Point Global, LLC as well as twelve (12) entities associated with and/or subsidiaries of On Point Global, LLC (the "Contempt Defendants") operated a deceptive business that, much like this prior business model which was the subject of the Acquinity Matter, used deceptive websites to lure consumers into giving up money and personal information in direct violation of the terms of the 2014 Permanent Injunction. *See* Acquinity Matter, ECF No. 135 at p.2.

59. Katz retained Defendant Melton and Baker attorney Linda Goldstein to represent him in the Acquinity contempt proceedings.

60. On September 29, 2021, the Contempt Court entered its *Order on Motions for Summary Contempt* [Acquinity Matter at ECF No. 225] which granted in part the FTC's Motion for Summary Contempt as to the Contempt Defendants and as to Katz and Brent Levison, holding these Defendants in contempt for violating the terms of the 2014 Permanent Injunction. A copy of the Contempt Court's *Order on Motions for Summary Contempt* is attached hereto as **Exhibit A**.

61. As to Katz, the Court found, among other things, that Katz: (1) was bound by the 2014 Permanent Injunction; (2) had actual notice of it and its restrictions and requirements; and (3) played an active role at On Point Global, LLC and, as such, he had sufficient management and control or power to prevent the OPG Entities from making of false or misleading material

15

representations which led to their violation of the 2014 Permanent Injunction. Thus, Katz violated the terms of the 2014 Permanent Injunction and was held in contempt. *See id*.

62. As to the Contempt Defendants, which included On Point Global, LLC, the Contempt Court found, among other things, that each entity: (1) had actual notice of the 2014 Permanent Injunction as imputed through Katz and Brent Levison; and (2) acted in active concert or participation with Katz as each entity had a specific role in assisting Katz carry out the deceptive scheme. As such, the Court found the Contempt Defendants violated the terms of the 2014 Permanent Injunction and held them in contempt. *See id*.

63. As to damages, the Contempt Court deferred ruling on the appropriate relief until after the show-cause hearing which was scheduled for the trial-period beginning on October 25, 2021. *See id*.

64. Ultimately, in conjunction with the *Verdict and Order Following Non-Jury Trial* entered in the FTC Enforcement Action and the contempt findings in the *Order on Motions for Summary Contempt*, the Receivership Court set contempt damages in an amount not to exceed $102,768,235.47 (the final amount to be determined by a claims process to be approved by the Receivership Court and implemented by the Receiver) as outlined *supra*.

65. As discussed herein, the Defendants had actual knowledge of the 2014 Permanent Injunction and its restrictions and requirements. Despite having actual knowledge of the 2014 Permanent Injunction and that Katz and the OPG Entities were in violation of same, the Defendants failed to competently counsel the OPG Entities as to the risks presented by the business models and the violation of the restrictions of the 2014 Permanent Injunction and the consequences thereof directly causing and contributing to the harm incurred by the OPG Entities by way of the Courts' findings in both the Acquinity Matter and the FTC Enforcement Action.

<u>The Defendants Breached their Fiduciary Duties to the OPG Entities</u>

66. As attorneys for the OPG Entities, the Defendants owed a fiduciary duty to the OPG Entities to, among other things, exercise diligence and care in assuring that the OPG Entities operated in compliance with the law and within the terms of the 2014 Permanent Injunction and in the best interests of the OPG Entities and their investors and customers.

67. In their fiduciary capacities, the Defendants permitted, and, indeed, advised the OPG Entities to operate in violation of the law and in violation of the 2014 Permanent Injunction. As set forth above and more fully described below, the Defendants failed to counsel the OPG Entities that their business models violated both the FTC Act and the 2014 Permanent Injunction.

68. The Defendants failed to counsel the OPG Entities that their business model violated the FTC Act, that the websites were deceptive, and that, unless the OPG Entities changed their model, the OPG Entities would be operating in violation of the FTC Act and the 2014 Permanent Injunction. Instead of warning them of the risks, the Defendants counseled the OPG Entities to continue to operate in violation of the FTC Act and the 2014 Permanent Injunction, until they were shut down by the Court in the FTC Enforcement Action and the Receiver was appointed.

69. The Defendants failed to provide reasonably prudent advice under the circumstances.

70. As a result of Defendants' negligence, the OPG Entities suffered substantial harm.

71. One of the duties of the Receiver is to bring claims against third parties on behalf of the OPG Entities and for the benefit of the OPG Entities' creditors and customers. This lawsuit is brought pursuant to that duty.

72. All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

## COUNT ONE
## LEGAL MALPRACTICE

73. Plaintiff hereby reasserts the allegations set forth in paragraphs 1 through 72 as if fully set forth herein.

74. An attorney-client relationship existed between the OPG Entities and the Defendants in that the OPG Entities retained Defendants to perform legal services related to the implications of the FTC Act on their businesses and their compliance therewith, and later, to represent the OPG Entities in connection with the FTC Enforcement Action and contempt proceedings in the Acquinity Matter. Each of the Defendants, individually or through individual representatives, performed work for the OPG Entities at times from 2017 through at least December 2019.

75. As described herein, Melton and Baker also represented Katz in the Acquinity Matter and as such had full knowledge of the implication of the 2014 Permanent Injunction on Katz, the CEO of the OPG Entities, and on the OPG Entities.

76. As a result of the attorney-client relationship between the OPG Entities and the Defendants, each of the Defendants owed a duty of care and skill to the OPG Entities, including a duty to fully, fairly, and competently represent the OPG Entities in connection with the implications of the FTC Act and the 2014 Permanent Injunction on their businesses and their compliance therewith. The Defendants owed duties to the OPG Entities to, among other things, exercise ordinary care, skill and knowledge that members of the legal profession ordinarily possess, give competent legal advice about the law and the consequences of violations of the FTC Act and other regulatory requirements and to assist the OPG Entities by fully researching the OPG

Entities' business model and the application of the FTC Act: (i) to determine whether the OPG Entities could continue to operate under their current business model without violating the FTC Act; (ii) to determine whether the OPG Entities were exposed to the risk of damages as a result of the FTC Act; (iii) to provide adequate warnings to the OPG Entities regarding the legal implications of their ongoing operations; and (iv) to provide competent, responsible legal advice in light of and in connection with the FTC investigation and enforcement action. The Defendants had a duty to perform the aforementioned duties with the care, skill, and diligence that are ordinarily employed by attorneys in the profession.

77. The Defendants failed to exercise the duty of care ordinarily employed by attorneys who are in their profession when performing legal services for the OPG Entities in advising the OPG Entities in connection with the FTC Act, the common law, and the 2014 Permanent Injunction. Defendants knew or should have known that the OPG Entities' business model and websites violated the FTC Act, common law, and the 2014 Permanent Injunction. A competent attorney using ordinary care would have effectively warned the OPG Entities that they could not continue to operate under their then-current business model without running afoul of the law. This failure to exercise ordinary care amounted to a breach of Defendants' duty of care arising from the OPG Entities' engagement of Defendants to perform legal services for them.

78. As a result of the Defendants' breach of their duty to the OPG Entities, the OPG Entities sustained significant damages and loss. Specifically, the OPG Entities' damages include the imposition of compensatory contempt sanctions not to exceed $102,768,235.47 (the final amount to be determined by a claims process approved by the Receivership Court and being implemented by the Receiver), together with millions of dollars in attorneys' fees and costs to defend the OPG Entities in the FTC Enforcement Action defense and in fees and costs of the

Receiver and her attorneys in carrying out the Receiver's duties under the Receivership Court's Orders.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the OPG Entities, hereby demands judgment against the Defendants for the total amount of damages resulting from the legal malpractice, breaches of fiduciary duty, and breaches of contract by the Defendants, and such further relief as this Court deems to be appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues and claims so triable.

Dated: August 16, 2022

    Respectfully submitted,

/s/ *Kenneth Dante Murena*
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Email: kmurena@dvllp.com
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*