# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

|  |  |
|---|---|
| MELANIE E. DAMIAN, as Receiver for On Point Global LLC, *et. al.*, <br><br> *Plaintiff*, <br><br> - against - <br><br> HOLLY MELTON, BAKER & HOSTETLER LLP, and CROWELL & MORING LLP, <br><br> *Defendants.* | Case. No. 1:22-cv-22606-JLK |

**DEFENDANT CROWELL & MORING LLP'S MOTION TO DISMISS THE
COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, AND
TO STRIKE THE RECEIVER'S REQUESTS FOR ATTORNEYS' FEES AND COSTS
AND INCORPORATED MEMORANDUM OF LAW**

Isaac J. Mitrani (No. 348538)
Daniel S. Bitran (No. 124041)
MITRANI, RYNOR, ADAMSKY &
TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida 33140
Tel: (305) 358-0050
*imitrani@mitrani.com*
*dbitran@mitrani.com*

Frederick B. Warder III (*pro hac vice*)
Alejandro H. Cruz (*pro hac vice*)
Dakotah M. Burns (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
*fbwarder@pbwt.com*
*acruz@pbwt.com*
*dburns@pbwt.com*

*Attorneys for Defendant
Crowell & Moring LLP*

## <u>TABLE OF CONTENTS</u>

Page

**TABLE OF AUTHORITIES** ................................................................................................. ii

**PRELIMINARY STATEMENT** ...........................................................................................1

**FACTUAL BACKGROUND** ................................................................................................2

      **A.**    **Crowell's Representation of On Point** .................................................2

      **B.**    **The FTC Sues On Point**...............................................................................4

      **C.**    **The Receiver's Complaint** ........................................................................6

**ARGUMENT** .........................................................................................................................6

**I.**     **THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
THE RECEIVER FAILS TO PLEAD FACTS SUFFICIENT TO SHOW
BOTH INJURY-IN-FACT AND A RIPE DISPUTE** ..............................................6**

      **A.**    **Legal Standard** ..........................................................................................6

      **B.**    **The Receiver Fails to Plead an Injury-in-Fact** ....................................7

      **C.**    **The Receiver's Claims Are Not Ripe** .....................................................9

**II.**    **THE RECEIVER FAILS TO PLEAD A BASIS TO RECOVER
ATTORNEYS' FEES AND COSTS** ...................................................................12

**CONCLUSION** ....................................................................................................................13

**REQUEST FOR HEARING**................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

*Baker v. Sepich*,
    No. 18-cv-81595, 2021 WL 5768069 (S.D. Fla. Oct. 28, 2021), *aff'd,* 2022
    WL 4594318 (11th Cir. Sept. 30, 2022) ...................................................................4

*Blumberg v. USAA Cas. Ins. Co.*,
    790 So.2d 1061 (Fla. 2001)...........................................................................................10

*Dawson v. York Specialized Loss Adjusting Div. of York Risk Servs. Grp., Inc.*,
    No. 20-60065-civ, 2020 WL 13016824 (S.D. Fla. Nov. 25, 2020) ........................12

*Deltoro v. Fresh Mkt., Inc.*,
    No. 14-61210-civ, 2014 WL 11776942 (S.D. Fla. Nov. 25, 2014) ........................12

*Digital Props., Inc. v. City of Plantation*,
    121 F.3d 586 (11th Cir. 1997) .....................................................................................9

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ...............................................................................6, 7

*Gibraltar Secs. v. Bitter*,
    No. 97-1587-civ, 1997 WL 728089 (M.D. Fla. Oct. 24, 1997)...............................13

*Grasso v. Grasso*,
    131 F. Supp. 3d 1303 (M.D. Fla. 2015).....................................................................12

*Hames v. City of Miami*,
    479 F. Supp. 2d 1276 (S.D. Fla. 2007), *aff'd as modified by* 281 F. App'x 853
    (11th Cir. 2008)............................................................................................................7

*Isaiah v. JPMorgan Chase Bank*,
    960 F.3d 1296 (11th Cir. 2020) ...............................................................................7, 8

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ...............................................................................2, 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................................................7

*Ouachita Watch League v. Jacobs*,
    463 F.3d 1163 (11th Cir. 2006) ...................................................................................6

*Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*,
    790 So.2d 1051 (Fla. 2001).....................................................................................10, 12

*Perlman v. PNC Bank, N.A.*,
    38 F.4th 899 (11th Cir. 2022) ........................................................................7, 8, 9

*Porter v. Ogden, Newell & Welch*,
    241 F.3d 1334 (11th Cir. 2001) ...........................................................................10, 11

*Queen for a Day, LLC v. J. Milton & Assocs, Inc.*,
    No. 19-cv-24308, 2020 WL 12188440 (S.D. Fla. Aug. 20, 2020) ........................................12

*Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*,
    No. 17-cv-81290, 2018 WL 10152613 (S.D. Fla. June 18, 2018)............................................9

*United States v. Rivera*,
    613 F.3d 1046 (11th Cir. 2010) ...........................................................................10, 12

**Statutes**

FTC Act Section 5(a), 15 U.S.C. § 45 ...........................................................................1, 4

**Other Authorities**

Fed. R. Civ. P. 12...............................................................................................1, 12

Defendant Crowell & Moring LLP ("Crowell"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(f), moves to dismiss the Complaint of Receiver Melanie E. Damian (the "Receiver") and to strike the Receiver's requests for attorneys' fees and costs.

## PRELIMINARY STATEMENT

The Receiver brings this legal malpractice action on behalf of On Point Global LLC and its affiliated entities ("On Point"), which operated a network of websites that deceived consumers into thinking they were purchasing government-related services. According to the Complaint, Defendants Crowell, Baker & Hostetler LLP ("Baker"), and Holly Melton (collectively, the "Defendants") previously represented On Point, as well as its CEO and founder, Burton Katz. The Receiver now seeks to recover from Defendants an as-yet undetermined amount of damages.

Between January 2017 and December 2019, On Point operated numerous "paid guide" websites which suggested to consumers that they could obtain government-like services such as renewals of drivers' licenses and car registrations. In fact, in most cases, consumers who paid a fee on On Point's websites would be provided an electronic file collating publicly available information. In 2019, the Federal Trade Commission ("FTC") brought an enforcement action against On Point, alleging that certain of On Point's websites were deceptive within the meaning of Section 5(a) of the FTC Act, 15 U.S.C. § 45 (the "Enforcement Action"). The court found On Point liable for engaging in deceptive business practices in violation of the FTC Act. In this case, the Receiver alleges that Defendants negligently failed to advise On Point that its business practices may have run afoul of the FTC Act.

This Court lacks subject matter jurisdiction over the Receiver's allegations against Defendants. Specifically, two constitutional requirements are not met.

*First*, the Receiver has not pleaded Article III standing because she fails to allege a cognizable injury-in-fact.  In cases where a receiver's claims against a third party are premised on the misconduct of the company in receivership, the receiver cannot state a cognizable injury without pleading the existence of at least one innocent officer or director of the corporate wrongdoer.  The Receiver does not do so here.  To the contrary, the Receiver affirmatively pleads that On Point and its CEO engaged in a deceptive scheme that led to On Point's purported injury, an allegation confirmed by prior holdings in the Enforcement Action.

*Second*, the Receiver's malpractice claim is not ripe for adjudication because it has not accrued.  Under Florida law, transactional legal malpractice actions only accrue when a client incurs damages at the conclusion of the related or underlying judicial proceedings.  Because the judicial proceedings underlying the Receiver's claims remain pending, and damages, if any, cannot be known until the conclusion of the ongoing claims process, the Receiver's malpractice claim against Defendants is not ripe for adjudication by a federal court.

Independent of the jurisdictional requirements that the Receiver fails to meet, the Court should strike the Receiver's requests for attorneys' fees and costs for failure to plead a basis on which to recover such damages in this action.

## FACTUAL BACKGROUND

### A.      Crowell's Representation of On Point

Defendant Crowell is an international law firm.  (*See* Receiver's Complaint ("Compl.") ¶ 12).[1]  Defendant Holly Melton is a partner currently practicing in Crowell's New York office.

---

[1] The facts herein are taken from the Receiver's Complaint, and must be accepted as true in the context of a facial challenge to the Court's subject matter jurisdiction.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Crowell's recounting of those allegations is not an admission of their truth.

(*Id.* ¶ 13.)  Ms. Melton previously practiced as an attorney at Manatt, Phelps & Phillips, LLP ("Manatt"), and then at Baker.  (*Id.* ¶¶ 13, 31.)

The Receiver alleges that her claims relate to Defendants' prior representations of On Point and Burton Katz, On Point's founder, at various points between 2014 and 2019. Beginning in or around July 2014, Ms. Melton, who was then employed by Manatt, was allegedly involved in representing Katz in a prior FTC action related to Katz's previous businesses (the "Acquinity Matter").  (*Id.* ¶¶ 30-31.)  Katz and his former businesses were accused of "trick[ing] consumers into signing up for costly phone bill subscriptions through websites that offered free merchandise in exchange for consumers' phone numbers."  (*Id.* ¶ 30.) To resolve the Acquinity Matter, Katz entered into a stipulated final judgment and permanent injunction order (the "2014 Permanent Injunction") that prohibited him from engaging in false or misleading business practices in the future.  (*Id.* ¶ 33).

According to the Complaint, Katz "formed and operated" On Point beginning in or around January 2017.  (*Id.* ¶¶ 23, 45, 50.)  The Receiver alleges that between January 2017 and December 2019, On Point "created and operated approximately ninety-seven (97) 'paid guide' businesses . . . and approximately one hundred and four (104) 'transaction sites,'" to which consumers were directed when searching for "information on how to obtain government services, such as to renew a driver's license or similar state-provided services."[2]  (*Id.* ¶¶ 23-24.) Consumers, however, could not "obtain the advertised services, as advertised" on On Point's sites.  (*Id.* ¶ 27.)  Instead, in exchange for payment, consumers received electronic "guides" compiling publicly available information.  (*Id.* ¶¶ 25-26, 53.)

---

[2] The Receiver does not identify these websites by name or URL in the Complaint.

The Receiver asserts that beginning in or around May 2017, Ms. Melton, who was then an attorney at Baker, advised On Point with respect to certain of its "business models and websites to determine whether they complied with applicable laws," including the FTC Act.  (*Id.* ¶¶ 15, 37.)  The Receiver further alleges that in or around October 2018, Ms. Melton left Baker and became a partner at Crowell, where she and others continued to provide compliance-related advice to On Point.  (*Id.* ¶¶ 13, 43-50.)

**B.      The FTC Sues On Point**

In 2019, the FTC brought an enforcement action against On Point, alleging that On Point engaged in deceptive acts or practices within the meaning of Section 5(a) of the FTC Act, 15 U.S.C. § 45 (the "Enforcement Action").  (*Id.* ¶¶ 5, 8, 51; *see FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Dec. 9, 2019), ECF No. 1.)[3]  In the Enforcement Action, the court held that On Point's websites were deceptive within the meaning of Section 5(a).  Specifically, in its summary judgment decision and order, the court found that the representations on On Point's websites "could lead a reasonably prudent consumer to believe that they were going to renew their license or car registration on these websites.  But consumers did not receive these services. Rather, for nearly $30 each, consumers received a pdf guide with information that could otherwise be accessed for free from the government."  (*Id.* ¶ 53.)

In February 2020, the FTC also initiated a contempt action against Katz and several related On Point entities in the Acquinity Matter (the "Contempt Proceeding").  (*Id.* ¶¶ 57-58; *see* Order to Show Cause, *FTC v. Acquinity Interactive, LLC*, No. 14-cv-60166 (RNS) (S.D. Fla.

---

[3] The Court may take judicial notice of the filings in the related FTC actions.  *See, e.g.*, *Baker v. Sepich*, No. 18-cv-81595, 2021 WL 5768069, at *3 (S.D. Fla. Oct. 28, 2021) ("As a general matter, courts routinely take judicial notice of public records, including court filings."), *aff'd*, 2022 WL 4594318 (11th Cir. Sept. 30, 2022).  The FTC's Enforcement Action and the Acquinity Matter both remain pending in this district before the Hon. Robert N. Scola.

Feb. 14, 2020), ECF No. 136.)  As set forth in the Complaint, the FTC alleged in the Contempt

Proceeding that Katz and On Point "operated a deceptive business that . . . used deceptive

websites to lure consumers into giving up money and personal information in direct violations of

the terms of the" 2014 Permanent Injunction.  (Compl. ¶ 58.)  In the Contempt Proceeding, the

court ultimately entered a summary contempt order against Katz, On Point, and Brent Levison,

On Point's Chief Administrative Officer and Senior Vice President of Products.  (*Id.* ¶ 62;

Compl. Ex. A at 6.)  The court concluded that these individuals and entities "had actual notice"

of the 2014 Permanent Injunction and "acted in active concert or participation . . . in assisting

Katz carry out the deceptive scheme."  (Compl. ¶ 62; Compl. Ex. A at 4-6, 9.)

     In November 2021, the court held a contemporaneous bench trial and show-cause hearing

in the Enforcement Action and Contempt Proceeding, respectively, on the claims remaining after

the summary judgment and summary contempt orders.  (*See* Compl. ¶ 64; Verdict and Order

Following Non-Jury Trial, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Nov.

16, 2021), ECF No. 579.)  In its verdict and order following those proceedings, the court found

On Point and certain principals jointly and severally liable for contempt damages.  (*Id.* at 2-3.)

Instead of finding a definite amount of damages, however, the court held those defendants jointly

and severally liable for an as-yet undetermined amount of damages "not to exceed

$102,768,235.47."  (Compl. ¶¶ 16, 64.)  The final amount of damages will be—though, to date,

has not been—determined by a claims process implemented by the Receiver.  (*Id.* ¶¶ 64, 78.)

That claims process began in or around February 2022 and remains ongoing.  (*See* Order

Granting Receiver's Mot. to Approve (A) Noticing & Claims Admin. Process & (B) Plan of

Distribution, *FTC v. On Point Global LLC*, No. 19-cv-25046-RNS (S.D. Fla. Feb. 10, 2022)

(hereinafter, "Claims Process Order"), ECF No. 607.)  Indeed, the Receiver has sought and the

court has granted multiple extensions of the claims process.  (*See, e.g.*, Receiver's Mot. for Extension of Claims Bar Date, *FTC v. On Point Global LLC*, No. 19-cv-25046-RNS (S.D. Fla. Sept. 7, 2022), ECF No. 636; Paperless Order Granting Receiver's Mot., *id.* at ECF No. 637.)

### C.    The Receiver's Complaint

On August 16, 2022, the Receiver filed this action alleging one count of legal malpractice stemming from the Defendants' work for Katz and On Point before On Point was placed into receivership.  (Compl. ¶¶ 1, 73-77.)  Notably, Katz and Levison are the only officers and/or directors of On Point reflected in the Complaint.  Both were found to be integral players in On Point's deceptive scheme.

The Receiver alleges that On Point's damages include an as-yet undetermined amount of contempt damages "not to exceed $102,768,235.47," presumably to be paid by On Point as opposed to its co-defendants.  (*Id.* ¶ 78.)  The Receiver also claims unspecified "millions of dollars in attorneys' fees and costs" incurred by On Point in defending the Enforcement Action, and "fees and costs of the Receiver and her attorneys in carrying out the Receiver's duties."  (*Id.*)

## **ARGUMENT**

### I.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE RECEIVER FAILS TO PLEAD FACTS SUFFICIENT TO SHOW BOTH INJURY-IN-FACT AND A RIPE DISPUTE

### A.    Legal Standard

A federal court cannot exercise subject matter jurisdiction over a case where constitutional requirements of standing and ripeness are not satisfied.  *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  Standing is a question of whether the plaintiff is the "proper *part[y]* to bring the suit," whereas ripeness is a question of "whether this is the correct *time* for the complainant to bring the action."  *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1174

(11th Cir. 2006) (quotations omitted) (emphasis in original). The plaintiff must plead facts sufficient to establish federal subject matter jurisdiction. *Elend*, 471 F.3d at 1206.

A motion to dismiss under Rule 12(b)(1) "may challenge the court's subject matter jurisdiction based on the face of the pleadings or based on the actual substantive facts of the case." *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1284 (S.D. Fla. 2007), *aff'd as modified by* 281 F. App'x 853 (11th Cir. 2008). Facial challenges, such as Crowell's, "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true." *Lawrence*, 919 F.2d at 1529 (quotations omitted).

### B.   The Receiver Fails to Plead an Injury-in-Fact

The Complaint is facially deficient because the Receiver fails to plead that On Point had at least one "innocent officer or director." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020) (citing *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 551 (Fla. 2d Dist. Ct. App. 2003)). Absent such an allegation, the Receiver lacks standing.

To have Article III standing to bring suit in federal court, a plaintiff must establish that it has suffered an "injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Because "a receiver obtains only the rights of action and remedies that were possessed by the . . . corporation in receivership," *Isaiah*, 960 F.3d at 1306, for the Receiver to have standing here, On Point itself must have standing to bring a malpractice claim against Crowell. *See Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 904 (11th Cir. 2022). The Receiver has not alleged facts sufficient to provide On Point, and thus the Receiver, with standing.

A corporation "whose primary existence was as a perpetrator of [the relevant] scheme, cannot be said to have suffered injury from the scheme it perpetrated." *Isaiah*, 960 F.3d at 1306 (quotations omitted). Thus, absent "any allegation in the complaint that the Receivership

7

Entities had at least one innocent officer or director and were thus honest corporations injured by the actions of a few corrupt employees," the Receiver lacks standing.  *Id.* at 1308.

Nowhere in the Complaint does the Receiver allege the existence of any innocent officers or directors of On Point.  Instead, the Receiver's allegations focus almost exclusively on Katz, who "formed and operated" On Point.  (*See, e.g.*, Compl. ¶¶ 30, 45, 50.)  As the Receiver's allegations make clear, Katz's and On Point's wrongful conduct are inextricably intertwined such that On Point "cannot be said to have suffered any injury" from its own deceptive practices. *Isaiah*, 960 F.3d at 1307.  For example, in describing the Contempt Proceeding, the Receiver alleges that "Katz and On Point Global, LLC . . . used deceptive websites to lure consumers into giving up money and personal information," and that Katz "played an active role at On Point Global, LLC and, as such, he had sufficient management and control or power to prevent the [On Point] Entities from making [] false or misleading material representations."  (Compl. ¶¶ 58, 61.) Moreover, as further set forth in the Complaint, the court in the Contempt Proceeding found On Point "acted in active concert or participation with Katz as each entity had a specific role in assisting Katz [to] carry out the deceptive scheme."  (*Id.* ¶ 62.)

The Eleventh Circuit's recent decision in *Perlman v. PNC Bank, N.A.*, 38 F.4th 899 (11th Cir. 2022) is instructive.  There, the FTC brought an enforcement action against an individual who operated a nationwide, 85-entity enterprise in a debt relief scam that deceived tens of thousands of consumers.  *Id.* at 902.  In *Perlman*, as here, the court appointed a receiver to oversee the entities' assets.  *Id.*  That receiver then brought tort claims against a third party, PNC Bank, alleging that PNC Bank provided bank accounts for the receivership entities despite having notice of the entities' scheme.  *Id.* at 902-903.  Like this case, the receiver in *Perlman* did not allege the existence of any innocent director or stockholder of the receivership companies.

*Id.* at 904.  The district court granted PNC Bank's motion to dismiss for lack of subject matter jurisdiction, and the Eleventh Circuit affirmed.  *Id.* at 904-905.  As the Eleventh Circuit explained, if "there is no innocent director or stockholder in th[e] Receivership Entities, then the wrongful acts of [the individual] cannot be separated from the Receivership Entities" such that "the Receivership Entities cannot be said to have suffered an injury for purposes of common law tort claims against third parties."  *Id.* at 904-905.

The same is true here.  The Receiver's failure to allege the existence of any innocent directors or officers of On Point requires dismissal of the Complaint for lack of subject matter jurisdiction.

### C.    The Receiver's Claims Are Not Ripe

The Receiver's claims are also not ripe for judicial review under Article III.  "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review."  *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  As with the Receiver's standing, ripeness also "goes to whether the district court [has] subject matter jurisdiction to hear the case."  *Id.* at 591 (quotations omitted).

To determine whether a plaintiff's claims are ripe, courts "must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court."  *Id.* at 589 (quotations omitted).  Where, as here, a plaintiff's claims have not accrued, they are not ripe for judicial determination.  *See, e.g.*, *Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*, No. 17-cv-81290, 2018 WL 10152613, at *2-3 (S.D. Fla. June 18, 2018) (insured's negligence claim had not accrued, and thus was not cognizable).  Moreover, claims are unripe for adjudication where they seek relief for an

9

"uncertain sanction," and a "district court has not ordered a specific amount to be recovered." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (removed receiver sought premature adjudication where "[t]he amount of fees, if any, to be recovered from her by the new receiver is yet unknown . . . .  It is well settled that this kind of uncertain sanction is not ripe for our judicial review.").

Under Florida law, a negligence claim "does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1338 (11th Cir. 2001) (quotations omitted).  "Instead of setting a fine-line, Florida courts hold that a malpractice action accrues when it is reasonably clear that the client has actually suffered some damage from legal advice or services." *Id.* at 1339 (quotations omitted).  The Florida Supreme Court has held that a transactional "negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings." *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061, 1065 (Fla. 2001); *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So.2d 1051, 1054 (Fla. 2001) (applying *Blumberg* to transactional legal malpractice action).

Here, the judicial proceedings underlying the Receiver's purported claims—the FTC actions before Judge Scola—remain pending, and a specific amount of damages (if any) has not yet been determined or entered as part of a final judgment.  As alleged in the Complaint, the court in the Contempt Proceeding concluded that contempt damages are "not to exceed $102,768,235.47," but the calculation of any potential exposure remains subject to the ongoing claims process administered by the Receiver.  (Compl. ¶¶ 16, 64, 78.)

Indeed, that process is driven by claims ***actually submitted*** by On Point's victims and, according to the Receiver's submissions, those consumers had until recently—October 18, 2022—to file their claims.  (Receiver's Mot. for Extension of Claims Bar Date at 3 n.1, ECF No. 636; Paperless Order Granting Receiver's Mot., ECF No. 637.)  The alleged damages arising from this claims process cannot and will not be ascertainable until after the Receiver determines which claims to approve or deny, and submits a report to Judge Scola.  (Claims Process Schedule, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Feb. 4, 2022), ECF No. 605-3; Claims Process Order at 3.)

Accordingly, here, "no concrete injury [will arise] until a final court decision" terminating the claims process and crystallizing On Point's injury.  *Porter*, 241 F.3d at 1339. This case is thus distinguishable from circumstances like those addressed by the Eleventh Circuit in *Porter*, where the plaintiff suffered a concrete injury by taking "steps to cure the potential problem" before "any court determination."  *Id.*  There, the trustee-plaintiffs took affirmative steps to remedy potential legal malpractice before relying on a will and deed of trust that they believed, as drafted, harmed the interests of the estate they represented.  *See id.* at 1337-38. Those ameliorative steps included hiring another law firm, lobbying for a change in Florida law, and obtaining private-letter rulings from the IRS.  *Id.*  The court concluded that the trustees "suffered a concrete injury as to the expenses they incurred to remedy the alleged malpractice." *Id.* at 1339.

By contrast, the Receiver here makes no such allegations of reasonably calculable harm to date, and therefore fails to allege facts showing that On Point's injury has accrued.  Indeed, because Judge Scola "has not ordered a specific amount to be recovered," the Receiver's claims sound in the kind of "uncertain sanction" that the Eleventh Circuit has found unripe for review.

*Rivera*, 613 F.3d at 1050.  Therefore, the Receiver's claims are not ripe and, accordingly, cannot support subject matter jurisdiction in this case.

## II.   THE RECEIVER FAILS TO PLEAD A BASIS TO RECOVER ATTORNEYS' FEES AND COSTS

Independent of the Court's decision as to subject matter jurisdiction, the Court should strike the Receiver's demand for attorneys' fees and costs for failure to plead a basis to recover such damages.  Federal Rule of Civil Procedure 12(f) permits courts to "strike from a pleading an . . . immaterial [or] impertinent . . . matter."  Fed. R. Civ. P. 12(f).  Courts have "broad discretion" to decide motions to strike, *see Deltoro v. Fresh Mkt., Inc.*, No. 14-61210-civ, 2014 WL 11776942, at *2 (S.D. Fla. Nov. 25, 2014) (quotations omitted), and courts in this district grant motions to strike requests for attorneys' fees where, as here, the claimant fails to state a valid basis to recover such fees.  *Queen for a Day, LLC v. J. Milton & Assocs, Inc.*, No. 19-cv-24308, 2020 WL 12188440, at *1 (S.D. Fla. Aug. 20, 2020); *Deltoro*, 2014 WL 11776942, at *2 (granting motion to strike request for attorneys' fees); *see also Dawson v. York Specialized Loss Adjusting Div. of York Risk Servs. Grp., Inc.*, No. 20-60065-civ, 2020 WL 13016824, at *2-3 (S.D. Fla. Nov. 25, 2020) (same).

Florida follows the "American Rule" on attorneys' fees: that is, absent a statute or agreement of the parties authorizing otherwise, each party pays its own fees.  *See, e.g.*, *Perez-Abreu*, 790 So.2d at 1054; *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015) (citing *Trytek v. Gale Indus. Inc.*, 3 So. 3d 1194, 1198 (Fla. 2009)).  The Receiver purports to seek recovery of unspecified "millions of dollars in attorneys' fees and costs" incurred by On Point in defending the Enforcement Action, plus "fees and costs of the Receiver and her attorneys in carrying out the Receiver's duties."  (Compl. ¶ 78.)  But the Receiver fails to plead the existence of any applicable statute or contract authorizing her entitlement to fee shifting.

12

Courts may "not infer grounds for attorneys' fees" where none is pleaded.  *Gibraltar Secs. v. Bitter*, No. 97-1587-civ, 1997 WL 728089, at *5 (M.D. Fla. Oct. 24, 1997).  The Court should strike the Receiver's request for these special damages.

## CONCLUSION

For the foregoing reasons, Crowell respectfully requests that the Court dismiss the Receiver's Complaint in its entirety for lack of subject matter jurisdiction, and strike the Receiver's requests for attorneys' fees and costs.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Crowell respectfully requests that the Court hold a hearing on this and Defendant Melton's contemporaneously filed motions to dismiss.  A hearing will assist the Court in understanding the factual and legal deficiencies of the Receiver's Complaint and the complexities of the ongoing, underlying FTC actions.  A hearing will also assist the Court in resolving the jurisdictional challenges raised herein.  In light of the multiple Defendants in this action, Crowell estimates that one (1) hour would be appropriate for the Court to hear the movants' arguments on both motions, and the Receiver's opposition thereto.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Crowell certify that they conferred via telephone with counsel for the Receiver on October 20, 2022, in connection with this and Ms. Melton's contemporaneously filed motions to dismiss.  Counsel for the Receiver confirmed that the Receiver will oppose these motions.

Dated: October 24, 2022

Respectfully submitted,

By: */s/ Isaac J. Mitrani*
Isaac J. Mitrani (No. 348538)
Daniel S. Bitran (No. 124041)
MITRANI, RYNOR, ADAMSKY &
TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida  33140
Tel:  (305) 358-0050
*imitrani@mitrani.com*
*dbitran@mitrani.com*


Frederick B. Warder III (*pro hac vice*)
Alejandro H. Cruz (*pro hac vice*)
Dakotah M. Burns (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel:  (212) 336-2000
*fbwarder@pbwt.com*
*acruz@pbwt.com*
*dburns@pbwt.com*

*Attorneys for Defendant*
*Crowell & Moring LLP*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed and served via the CM/ECF filing system on October 24, 2022, upon:

Kenneth D. Murena, Esq.
DAMIAN & VALORI LLP
1000 Brickell Avenue
Suite 1020
Miami, FL 33131
kmurena@dvllp.com

Aaron Uri Raskas, Eq.
GUNSTER, YOAKLEY, STEWART, P.A.
600 Brickell Avenue
Suite 3500
Miami, FL 33131
araskas@gunster.com
avalido@gunster.com
eservice@gunster.com

David Richardson Atkinson, Jr., Esq.
Stephen Carli Richman, Esq.
GUNSTER, YOAKLEY, STEWART, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL 33401
datkinson@gunster.com
srichman@gunster.com
mmargolese@gunster.com
jfirogenis@gunster.com

*/s/ Isaac J. Mitrani*