## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO:  1-22-cv-22606-JLK

MELANIE E. DAMIAN, as
Receiver for On Point Global LLC, *et. al*.,

       Plaintiff,

v.

HOLLY MELTON, BAKER & HOSTETLER LLP,
and CROWELL & MORING LLP,

       Defendants.

_____/

### DEFENDANT BAKER & HOSTETLER LLP'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2), 12(B)(1), AND 12(B)(6), MEMORANDUM OF LAW IN SUPPORT, AND REQUEST FOR JUDICIAL NOTICE

DAVID R. ATKINSON
Florida Bar No.:  767239
datkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
STEPHEN C. RICHMAN
Florida Bar No.: 1015692
srichman@gunster.com
jfirogenis@gunster.com
ARON U. RASKAS
Florida Bar No.: 1022416
araskas@gunster.com
mmotola@gunster.com

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677

*Counsel for Defendant Baker & Hostetler LLP*

Defendant Baker & Hostetler LLP ("**BakerHostetler**") moves to dismiss the Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.[1]

## I. Introduction

The Plaintiff sues BakerHostetler in a single count of legal malpractice, seeking damages arising from adverse findings in an FTC enforcement action against certain former clients of BakerHostetler. The Plaintiff alleges she has the authority to act on behalf of those former clients and that the adverse findings were somehow the result of BakerHostetler's negligent legal advice.

The Complaint should be dismissed on several independent grounds. First, the Complaint fails to establish that BakerHostetler is subject to personal jurisdiction. The Plaintiff asserts specific jurisdiction, claiming the cause of action arises from BakerHostetler committing a tortious act in Florida. The Plaintiff does not allege that any BakerHostetler lawyer provided the legal services in question while physically present in Florida. Further, the majority of jurisdictional allegations are so vague, conclusory, and generic that they fail to establish a prima facie case of jurisdiction and fail to satisfy federal pleading standards and constitutional due process concerns.

The few specific communications, from BakerHostetler to the former clients, that the Complaint implies were sent into Florida are: (1) not tortious in and of themselves; and (2) wholly lack the required "connexity" (or relatedness) to the Plaintiff's claim. Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

Second, subject matter jurisdiction is lacking. This case involves purely state law tort claims. The only alleged basis for federal jurisdiction is that the Plaintiff claims to have standing as receiver for On Point Global LLC, *et. al*, and points to her appointment as receiver in Case No. 19-cv-25046-RNS; *FTC v. On Point Global LLC, et al.* (S. D. Fla.) (the "**2019 FTC Enforcement Action**"). The Eleventh Circuit, however, found the Receivership, in that case, was "unsupported by law" and vacated the orders appointing the Plaintiff. Thus, the Plaintiff lacks standing to bring

---

[1] BakerHostetler further requests judicial notice of certain publicly filed court documents from the 2019 FTC Enforcement Action and an Eleventh Circuit decision, which are attached hereto as Exhibits C-H. Fed. R. Evid. 201(b); *see Access Pictures, LLC v. Sony Pictures Home Entertainment Inc.*, 2019 WL 12536021, at *2 (S.D. Fla. Nov 19, 2019) (finding judicial notice proper for "pleadings, orders and other documents from a prior action"); *see Horne v. Potter*, 392 F. App'x. 800, 802 (11th Cir. 2010) (unpublished); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

the Complaint.  Additionally, the Plaintiff has no standing because she failed to plead the existence of an innocent director or stockholder – a required allegation under Eleventh Circuit precedent to confer standing to assert common law tort claims.  The Plaintiff's claims also are not ripe.

Finally, the Complaint is subject to dismissal for a myriad of pleading deficiencies.  The Plaintiff does not plead facts in support of causation or any theory of causation – a required element for legal malpractice.  The Complaint is also an improper shotgun pleading and fails to plead any claims or facts to support an award of damages for breach of fiduciary duty and breach of contract.[2]

For any one of these reasons, the Complaint should be dismissed.[3]

## II.   <u>Factual Allegations</u>[4]

With respect to the legal work allegedly performed by BakerHostetler that is the subject of this legal malpractice action, the Plaintiff alleges:

- In or about May 2017, On Point Global LLC, MBL Media Ltd., PBJ Media LLC, Rogue Media Services LLC, and Direct Market LLC (the "**OPG Entities**") retained Holly Melton ("**Melton**") and BakerHostetler "to conduct a compliance analysis and assess the legal risks of the [OPG Entities'] business models and websites."  Compl. ¶ 37.

- In or about May 2017, BakerHostetler "conducted a legal compliance analysis" and "failed to raise any substantive concerns regarding the business model."  *Id.* at ¶ 38.

- Throughout May and June 2017, BakerHostetler "prepared numerous correspondence on Baker letterhead" which assessed "the legal risk of a new business model," which would "provide online 'concierge services' to residents of certain enumerated states."  *Id.* at ¶ 39.

---

[2] While the Complaint purports to state only a single claim for "legal malpractice," the Plaintiff baselessly requests damages resulting from supposed, yet unspecified, "breaches of fiduciary duty, and breaches of contract."

[3] BakerHostetler adopts Defendant Crowell & Moring LLP's legal arguments in its Motion to Dismiss.  *See* ECF No. 21.

[4] Recognizing that, for purposes of this motion, the Court must accept the well-pled allegations in the Complaint as true, BakerHostetler includes relevant factual allegations as alleged in the Complaint. BakerHostetler does not, in recounting these allegations, concede or admit their veracity and reserves all rights to contest the Complaint's allegations should that ever become necessary at the appropriate time.

- Melton concluded that her "legal research did not uncover any legal challenges to this type of business model" and that the business model "presents a 'low legal risk,' if certain disclosures were made on the websites." *Id.* at ¶ 40.

- In September 2017, Charlie Eissa requested that Melton and BakerHostetler conduct a "'thorough legal and compliance review'" of the "entire business models and websites" to "'ensure total compliance.'" *Id.* at ¶ 41.

- Melton and BakerHostetler "were asked to and agreed to review 16 website properties and marketing processes for website disclaimers, data collection, landing pages site content, the Guide, text communications, and e-mail communications." *Id.* at ¶ 42. The "Freemium and paid-guide websites were provided for review in substantially the form found non-compliant by the Court in the FTC Enforcement Action." *Id.*

- After Melton left BakerHostetler in late 2018, an attorney employed by BakerHostetler advised Brent Levison regarding the "'onpoint global site' and California law concerning online privacy and the collection of personal information." *Id.* at ¶ 43.

- Neither Melton nor BakerHostetler raised concerns about the OPG Entities' business model including the "'Freemium or paid guide' business." *Id.* at ¶ 44.

- Melton and BakerHostetler had "actual knowledge" of a 2014 Permanent Injunction and did not "acknowledge or alert the OPG Entities or explain the increased risks and scrutiny attendant to the 2014 Permanent Injunction which applied to and imposed restrictions on Katz as well as the OPG Entities . . . or otherwise include in their advice compliance counseling as it related to the 2014 Permanent Injunction." *Id.* at ¶ 45.

With respect to the 2019 FTC Enforcement Action, the Plaintiff's appointment as receiver, and the claims and damages sought in this case, the Plaintiff alleges:

- The FTC sued the OPG Entities in 2019 for violating the FTC Act. *Id.* at ¶¶ 47 & 51.[5]

- The court issued orders appointing the Plaintiff on December 13, 2019 and January 14, 2020 (the "**Receivership Orders**"). *Id.* at ¶ 8.[6]

---

[5] Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the Complaint in the 2019 FTC Enforcement Action, ECF No. 1, hereinafter "**2019 FTC Complaint**") and attached hereto as Exhibit C.

[6] The Plaintiff mistakenly pleads that the *Order Granting Motion for Preliminary Injunction* was issued on January 14, 2019. Compl., at ¶ 8. Under the authority cited in Footnote 1, above,

- On September 29, 2021, the court found that the "paid guide" and "Freemium" websites violated the FTC Act. *Id.* at ¶ 5.[7] Specifically, the court found that the statements "Renew your License" and "Renew Car Registration" violated the FTC Act because the statements "could lead a reasonably prudent consumer to believe that they were going to renew their license and car registration on these websites.  But consumers did not receive these services." *Id.* at ¶ 53.

- On November 16, 2021, the court entered its *Verdict and Order Following Non-Jury Trial* wherein the court ordered the implementation of a claims process and distribution plan and entered "a civil contempt sanction of more than $102 million against, among others, the OPG Entities." *Id.* at ¶ 10.[8]

- The Plaintiff sues BakerHostetler for legal malpractice for failing to advise the OPG Entities that their businesses violated the FTC Act and the 2014 Permanent Injunction. *Id.* at ¶¶ 76-78.  The Plaintiff seeks "compensatory contempt sanctions not to exceed $102,768,235.47 (the final amount to be determined by a claims process) . . . together with millions of dollars in attorneys' fees and costs to defend the OPG Entities." *Id.* at ¶ 78.

With respect to subject matter jurisdiction and personal jurisdiction, the Plaintiff alleges:

- The Court has subject matter jurisdiction "pursuant to Title 28, United States Code, Section 754, and the principles of ancillary and supplemental jurisdiction under Title 28, United States Code, Section 1367." *Id.* at ¶ 17.

- The Court has personal jurisdiction under Florida's Long Arm Statute because BakerHostetler "committed tortious acts within the jurisdiction, including providing legal

---

BakerHostetler requests that the Court take judicial notice of the Receivership Orders, attached hereto as Exhibits D and E.

[7] Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the September 29, 2021 summary judgment order in the 2019 FTC Enforcement Action, ECF No. 528, hereinafter the "**2019 FTC Summary Judgment Order**") and attached hereto as Exhibit F.

[8] Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the November 16, 2021 verdict in the 2019 FTC Enforcement Action, ECF No. 579, hereinafter "**Verdict**") and attached hereto as Exhibit G.

advice in Florida" and received transfers of funds from the OPG Entities operating in the Southern District of Florida.[9]  *Id.* at ¶ 19.

- BakerHostetler has sufficient minimum contacts with Florida to satisfy Constitutional due process requirements because Melton provided "legal advice directly to individuals and entities in South Florida," the legal advice contributed to violations of the FTC Act in Florida, and the legal advice contributed to the substantial judgment and resulting damages to the OPG Entities as ordered by the Southern District of Florida.  *Id.* at ¶ 20.

- BakerHostetler further has sufficient minimum contacts because it has "numerous partners who are members of the Florida Bar," has litigated numerous significant lawsuits in South Florida, and acted through Melton.  *Id.* at ¶ 21.

## III.  Arguments & Authorities[10]

### A.  The Court Lacks Personal Jurisdiction Over BakerHostetler Under Rule 12(b)(2)

Federal courts sitting by supplemental jurisdiction[11] apply the substantive law of the state, but procedural matters are governed by federal law.  *Jones v. United Space Alliance, L.L.C.,* 494 F.3d 1306, 1309 (11th Cir. 2007); *see also Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d

---

[9] The Plaintiff only seeks to establish specific jurisdiction over BakerHostetler under Fla. Stat. § 48.193(1)(a)(2) a/k/a "committing a tortious act within this state." Compl., at ¶ 19.  The Plaintiff errs in citing to Fla. Stat. § 48.193(1)(b), a provision of the long arm statute addressing a court's jurisdiction to enforce orders issued in a state other than Florida.  *Id.*

[10] BakerHostetler believes New York substantive law governs the state law claims at issue in this lawsuit.  Determination of the application of foreign law is a "comprehensive," issue-by-issue analysis, not to be raised until there is a true conflict between the forum law and the proposed foreign law.  *Doe v. Roe*, 2022 WL 1447378, at *3 (11th Cir. May 9, 2022); *Judge v. Am. Motor Corp.*, 908 F. 2d 1565, 1568 (11th Cir. 1990); *see also Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000).  Nor should choice of law be raised before the summary judgment stage and in the absence of a developed factual record.  *Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, 505 F.Supp. 3d 1293, 1303 (M.D. Fla. 2020) (citing 11th Circuit precedent); *AXA Pac. Ins. Co. v. Piper Aircraft Corp. Irrevocable Tr.*, 2017 WL 1439936, at *1 (S.D. Fla. Jan. 25, 2017).  Accordingly, BakerHostetler is not waiving, and expressly preserves, its rights to raise choice of law and seek the application of New York law at the appropriate time.

[11] Though the Plaintiff pleads that this Court has ancillary or supplemental jurisdiction to hear this case, it does not for the reasons set forth in Section III(B), below. Compl., at ¶ 17.  The Plaintiff does not plead any other basis for subject matter jurisdiction and cannot do so as the only claim alleged is a state law tort claim.  *Id.*, at ¶¶ 73-78.

1245, 1259 (11th Cir. 2015).  Accordingly, the Court must apply Florida substantive law and federal procedural law to determine whether the Court has personal jurisdiction over BakerHostetler.

To establish personal jurisdiction a plaintiff must allege facts sufficient to establish that: (1) jurisdiction exists under Florida's long arm statute; and (2) the nonresident defendant has sufficient minimum contacts with Florida to satisfy due process concerns. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Personal jurisdiction can be either general, providing jurisdiction over any claims regardless of a connection between the claims and the nonresident defendant's contacts with Florida, or specific, only allowing jurisdiction over claims arising from the nonresident defendant's particular contacts with the state. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (the term "arising from" creates a predicate "connexity requirement," requiring a causal connection between the nonresident defendant's activities in Florida and the plaintiff's cause of action).

The Plaintiff does not attempt to plead general jurisdiction.[12]  The allegations of the Complaint focus on a single prong of the specific jurisdiction section of the Florida Long Arm Statute by alleging BakerHostetler "commit[ed] a tortious act within the state."  Compl. at ¶ 19. *See* Fla. Stat. § 48.193(1)(a)(2).[13]  That statute provides for personal jurisdiction over "any causes of action arising from…committing a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2).

There are no allegations that any BakerHostetler lawyer was ever physically in Florida when providing the legal services that are the subject of the Complaint.   Florida law, however, recognizes limited circumstances where a tort can be deemed committed "within" Florida, without the tortfeasor being physically in the state.   One such example is where a defamatory communication is sent from another state into Florida.  *Acquandro v. Bergeron*, 778 So. 2d 1034,

---

[12] General jurisdiction, even if pled, could not exist in this case.  BakerHostetler was formed in Ohio and Ohio is where its headquarters and principal place of business are located.  *See* J. Parker Declaration, Exhibit B.  In the absence of exceptional circumstances (not present here), general jurisdiction, over an entity, only exists where the entity was formed or has its principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[13] To support personal jurisdiction for "committing a tortious act within the state," the Plaintiff cites to 48.193(1)(b) of the Florida Long Arm Statute.  Compl., at ¶ 19.  This prong of the statute has since been renumbered to 48.193(1)(a)(2).

1035 (Fla. 4th DCA 2001).  For this limited exception to the physical presence requirement to apply, however, the plaintiff must identify a specific communication that was sent into Florida that was "tortious in and of itself."  *Reiss v. Ocean World, S.A.*, 11 So. 3d 404, 406 (Fla. 4th DCA 2009); *Koock v. Sugar & Felsenthal LLP*, 2010 WL 1223794, at *4-5 (M.D. Fla. March 25, 2010) (no specific jurisdiction over Illinois law firm based on alleged involvement in Florida Ponzi scheme when lawyers never traveled to Florida for representation and communications directed into Florida were not tortious acts in themselves).

Significantly, the above analysis does not focus on whether the plaintiff ultimately sustained damages in Florida.  *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013).  Personal jurisdiction also does not exist merely because a Florida resident suffers damages in Florida due to the alleged tortious conduct.  *Metnick & Levy*, 123 So. 3d at 645; *see Korman v. Kent*, 821 So. 2d 408, 411 (Fla. 4th DCA 2002).  What matters is whether the Plaintiff has pled that a tort was committed "within" Florida.

Federal courts have also repeatedly held that the long arm statute must be "strictly construed" and that "any doubts about applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists."  *In re Takata Airbag Prods. Liab. Litig.*, 396 F.Supp. 3d 1101, 1140 (S.D. Fla. 2019) (citing *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1352 n.2 (S.D. Fla. 2007)).

The procedure for evaluating specific jurisdiction begins with the requirement that a plaintiff present enough evidence to withstand a directed verdict, i.e., to establish a prima facie case.  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Madara*, 916 F.2d at 1514.  In the event "jurisdiction has been challenged by affidavit or other competent evidence, the plaintiff must sustain its claim by affidavit or other proof and not by mere reiteration of the allegations of the complaint."  *FVD-USA, LLC v. Fabiani*, 2007 WL 9684283, at *3 (S.D. Fla. July 26, 2007) (citing *Dublin v. Peninsular Supply Co.*, 309 So. 2d 207, 208-09 (Fla. 4th DCA 1975)).  If the district court cannot "reconcile" the affidavits, it should hold an evidentiary hearing on the jurisdictional issue.  *Abramson v. Walt Disney Co.*, 132 F. App'x. 273, 275 (11th Cir. 2005).

BakerHostetler submits the following declarations in support of this Motion.  Declaration of Jonathan B. New, Exhibit A;[14] Declaration of John D. Parker, Exhibit B.

### i.   The Plaintiff's Allegations Are Vague And Conclusory, And Do Not Meet The Pleading Standards To Establish Personal Jurisdiction

The Eleventh Circuit has repeatedly held that "vague and conclusory" allegations do not establish a prima facie case of personal jurisdiction and may be attacked facially.  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *see also Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x. 944, 946 (11th Cir. 2018).  Similarly, under Florida substantive law, citation to generic communications as the basis for personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2) is insufficient.  *Koock*, 2010 WL 1223794, at *4-5.

Here, the Plaintiff's allegations are vague and conclusory and fail to identify any specific communications sent into Florida that were tortious in and of themselves.  Under the most favorable reading of the Complaint, the Plaintiff's jurisdictional allegations can be found in the following Paragraphs: 19, 20, 21, 38, 39, 40, 41, 42, 43, 44 & 45.  In each of these paragraphs, however, the Plaintiff fails to plead the specific details of BakerHostetler's alleged communications and, thus, allegedly tortious acts.  As demonstrated below, the Plaintiff does not plead any communications by specific date (MM/DD/YYYY), nor does the Plaintiff specifically plead that the alleged communications were actually sent into Florida, how they were sent (email, fax, U.S. mail), or that they were tortious in and of themselves.  Paragraphs 19, 20, and 21 generically state that BakerHostetler communicated into Florida without identifying any specific communications.  Simply alleging that BakerHostetler sent legal advice into Florida is insufficient to make out a prima facie case for personal jurisdiction.

Also, Paragraphs 38, 42, 44, and 45 do not allege any tortious communication into Florida. There is nothing for the Court to evaluate to show the direction and receipt of a communication into Florida that was tortious in and of itself.

---

[14] BakerHostetler will be moving the Court, pursuant to Local Rule 5.4(b)(1), for leave to file Exhibits A-1 and A-2, attached to the J. New Declaration, under seal (for reasons stated in that motion). Therefore, as further provided in Local Rule 5.4(b)(1), those exhibits have been redacted from the public filing of the Motion to Dismiss.

Further, Paragraphs 39, 40, 41, and 43 both fail to specifically identify the alleged communications by date and format and fail to establish the required connexity and relatedness for the reasons explained in Section III(A)(ii), below.

Because these communications fail to give rise to personal jurisdiction, the Complaint should be dismissed.

### ii. The Only Specific Legal Work Identified In The Complaint Is Unrelated To The Claims And Damages Alleged In This Case

The only contacts with Florida that are relevant to the specific jurisdiction analysis are those contacts that BakerHostetler had with Florida that have a direct connection to the claims in this lawsuit. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (the term "arising from" [in Fla. Stat. 193.1(a)(2)] creates a "connexity requirement," requiring a causal connection between the nonresident defendant's activities in Florida and the plaintiff's cause of action). There are no such contacts alleged in the Complaint. Additionally, where, as here, a plaintiff relies on communications sent into Florida rather than physical presence in the state, the communications must be tortious in and of themselves. *Koock*, 2010 WL 1223794 at *4-5; *Reiss*, 11 So. 3d at 406. Again, the Complaint alleges no such thing.

The Plaintiff, likely aware that her vague and conclusory allegations were not sufficient to establish jurisdiction, referred to particular advice memos that BakerHostetler provided to ███ ████████████████████ with certain of the OPG Entities, in May and June 2017. Compl., at ¶¶ 37-40. The Plaintiff alleges these memos concluded that "legal research did not uncover any legal challenges to this type of business model, either in connection with private legal actions or with governmental enforcement actions" and that BakerHostetler opined that the business model presented a "low legal risk." *Id.* at ¶¶ 39-40.

It is telling that the Plaintiff does not attach these memos as exhibits to the complaint, does not expressly allege these memos were sent to Florida (although that could be inferred from other allegations) and does not allege that the memos are related to the business models that were the subject of the 2019 FTC Enforcement Action, nor does she allege that these memos caused any damages. Thus, facially these allegations do not establish personal jurisdiction.

If, however, the Court concludes these allegations facially satisfy the "committed a tort within the state" prong of the Florida Long Arm Statute, BakerHostetler challenges these

allegations by Declarations, contesting the jurisdictional allegations. *See, FVD-USA, LLC v. Fabiani*, 2007 WL 9684283, at *3 (S.D. Fla. July 26, 2007); J. New Declaration, Exhibit A.

To attempt to support specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2), the Plaintiff references the specific legal advice given by BakerHostetler in the May and June 2017 communications but does not expressly allege the predicate "connexity" necessary to show that her cause of action arose from that advice. The allegations cherry-pick language from the memos, without telling the Court that the legal advice provided in the memos has nothing to do with the independent business practices that were found to violate the FTC Act and resulted in the alleged damages for which the Plaintiff seeks redress through her legal malpractice claim. Compl., at ¶¶ 10, 39-40, and 76-78.

The May and June 2017 communications alleged in the Complaint concerned a proposed concierge services business model completely distinguishable from the practices the court found deceptive in the 2019 FTC Enforcement Action. *Id*., at ¶¶ 39-40; *compare* J. New Declaration, Exhibit A *with* 2019 FTC Summary Judgment Order, Exhibit F. Perhaps this is why the Plaintiff did not attach the communications to the Complaint. The May and June 2017 legal advice about a proposed concierge services business model cannot satisfy the requirement of a communication sent into Florida that was tortious in and of itself because: a) that business model was not the subject of the 2019 FTC Enforcement Action; b) the advice is not alleged to be wrong advice; and c) that advice did not cause any alleged damages. *Wendt*, 822 So. 2d at 1260; *Koock*, 2010 WL 1223794 at *4-5. Accordingly, jurisdiction is lacking.

So that the Court may have the benefit of reviewing the May and June 2017 communications referenced in the Complaint, BakerHostetler attaches them to the Declaration of Jonathan B. New, to wit:

- A May 15, 2017 letter from BakerHostetler; and
- A June 15, 2017 letter from BakerHostetler.

J. New Declaration, Exhibit A. In the May 15, 2017 communication, BakerHostetler opined on the legal risk of a concierge services business model . *Id.* Significantly, in this business model, and ██████████████████████████████████████████, as well as provide a host of other benefits. *See id.*

The OPG Entities' concierge services business models were not at issue in the 2019 FTC Enforcement Action.  *Id.*; 2019 FTC Complaint, Exhibit C; 2019 FTC Summary Judgment Order, Exhibit F.  The FTC did not sue the OPG Entities over the proposed concierge services business models and the court did not find that online statements made in support of those business models violated the FTC Act.  *Id.*

Rather, in the 2019 FTC Enforcement Action, the court evaluated the "paid-guide" business model, where, in exchange for a fee, the company sold consumers "a pdf guide with information that could otherwise be accessed for free from the government," **but did not actually process the vehicle registration, or obtain the state driving records**.  2019 FTC Summary Judgment Order, Exhibit F.  Regarding the "paid-guide" business, the court found that statements on company websites "could lead a reasonably prudent consumer to believe that they were going to renew their license or car registration. . . . But consumers did not receive these services." *Id.* at p. 13.  In other words, because the websites suggested that the companies would actually process the renewals or obtain the records, when they did not, the court found the practices violated the FTC Act.  In contrast, the May and June 2017 memos addressed a concierge services business model that would ███████████████████████████████████████████.  Because the Plaintiff fails to plead that BakerHostetler directed tortious communications into Florida concerning the "paid-guide" business, the Plaintiff cannot satisfy the connexity requirement of Fla. Stat. § 48.193(1)(a)(2).

In the June 15, 2017 communication, BakerHostetler opined on the legal risk of a concierge services business model ██████████████████████ in certain jurisdictions.  *Id.* Significantly, in this business model, ████████████████████████████████████████ ████████████████████, as well as provide a host of other benefits.  *Id.*

This business model was not at issue in the 2019 FTC Enforcement Action.  2019 FTC Complaint, Exhibit C; 2019 FTC Summary Judgment Order, Exhibit F.  The FTC did not sue the OPG Entities in the 2019 FTC Enforcement Action over the ██████████████████ business model, and the court did not find that said business model violated the FTC Act or find damages against the OPG Entities because of said business model.  *Id.*; Verdict, Exhibit G.  In its *Order on Cross Motions for Summary Judgment*, the court found that "[t]he FTC contends that two of On Point's practices—the "paid guide" business and the "freemium" business are deceptive."  *Id.* at

11

p. 12.  Accordingly, none of these communications can serve as the basis for personal jurisdiction over BakerHostetler in this case.

With respect to the allegations pled in Paragraph 41 of the Complaint, they show that Charlie Eissa requested certain legal advice regarding compliance issues, but do not allege the delivery of legal advice by BakerHostetler, let alone tortious or negligent legal advice sent into Florida.  The Plaintiff never alleges in the Complaint any specific communications into Florida where BakerHostetler negligently opined on the subject matter of the Eissa emails.  *See* Compl. Accordingly, none of these communications can serve as the basis for personal jurisdiction over BakerHostetler in this case.

With respect to the allegations pled in Paragraph 43 of the Complaint, nothing about the OPG Entities' privacy policies relating to the collection of data from Californians was at issue in the 2019 FTC Enforcement Action.  2019 Summary Judgment Order, Exhibit F.  Nor did the court find that any of the OPG Entities' privacy policies regarding the collection of data from Californians violated the FTC Act or gave rise to the damages imposed on the OPG Entities by the Court in its *Verdict and Order Following Non-Jury Trial*. *Id.*; Verdict, Exhibit G.  The allegation in Paragraph 43 is yet another completely unrelated and irrelevant communication to the Plaintiff's claim and cannot serve as the basis for a finding of personal jurisdiction.

Lastly, the Plaintiff's allegation that the OPG Entities "transferred funds" from Florida to BakerHostetler is insufficient to confer personal jurisdiction.  *See Am. Torch Tip Co. v. Dykema Gossett PLLC*, 2011 WL 3171811, at *6 (M.D. Fla. July 8, 2011), *report and recommendation adopted*, 2011 WL 3170282 (M.D. Fla. July 27, 2011).  In *Torch Tip*, the court rejected precisely such an argument and declined to exercise personal jurisdiction, holding that "to justify jurisdiction based on a Florida client's payment of fees for a nonresident attorney in an out-of-state matter would overextend the reach of section 1(b)"); *see Hirsch v. Weitz*, 16 So. 3d 148, 151 (Fla. 4th DCA 2009).  Because the Plaintiff never alleges that BakerHostetler performed the legal work at issue while physically in Florida, nor that the attorneys involved ever traveled to Florida in connection with the work, BakerHostetler's receipt of attorneys' fees from Florida is no basis to establish personal jurisdiction.

### iii. BakerHostetler Did Not Purposefully Avail Itself Of Florida's Jurisdiction

With respect to constitutional due process, the rationale is similar to that articulated in Section III(B)(ii), *supra*, and the conclusion is the same – no jurisdiction.  The contacts pled in the Complaint do not relate to the Plaintiff's legal malpractice claim.  The concierge services business models on which BakerHostetler opined were not at issue in the 2019 FTC Enforcement Action, nor were they found deceptive by the court.  *See* 2019 FTC Summary Judgment Order, Exhibit F. Accordingly, there is no purposeful availment arising from those contacts and the connection between the Plaintiff's claims and BakerHostetler's activities is tenuous at best – and certainly far from "strong."  *Schrier*, 2022 WL 4598630, at *18.  Under all three *Burger King* factors, the Complaint fails to establish specific jurisdiction.

### B.  The Court Lacks Subject Matter Jurisdiction Under Rule 12(b)(1)

The Plaintiff pleads her authority to pursue this action by alleging her appointment under Receivership Orders of December 13, 2019 and January 14, 2020 in the 2019 FTC Enforcement Action.  Compl. ¶ 8.  But those Receivership Orders were subsequently the subject of an appeal to the Eleventh Circuit, which held the Receivership was "unsupported by law" and vacated the Plaintiff's appointment as to the defendants which pursued the appeal.  *See FTC v. On Point Capital Partners LLC*, 17 F. 4th 1066 (11th Cir. 2021).[15]  Because the Plaintiff has alleged no other extant basis for her authority, the Court lacks subject matter jurisdiction over these purely state law tort claims.

### i.  The Legal Standard

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id*. (quotation omitted).  "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id*.

---

[15] Under the authority cited in Footnote 1, BakerHostetler requests that the Court take judicial notice of this opinion, attached hereto as Exhibit H.

"On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "But when the attack is factual, 'the trial court may proceed as it never could under 12(b) (6) or Fed. R. Civ. P. 56.'" *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### ii. The 11th Circuit Vacated The Order Appointing The Plaintiff, And The Plaintiff Pleads No Other Basis For Her Appointment As Receiver

It is axiomatic that without subject matter jurisdiction, a federal court cannot hear a dispute. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105 (1933); *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). In fact, safeguarding the limited jurisdiction of the federal courts is of such paramount importance that "federal courts are duty bound 'to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.'" *Simon v. Gov't of Haiti*, 2022 WL 2276652, at *1 (S.D. Fla. Feb. 4, 2022) (citing *Univ. of S. Ala.*, 168 F.3d at 410). This is also why the parties to a dispute cannot consent to subject matter jurisdiction or waive a challenge to subject matter jurisdiction. *See Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). As a further backstop, the law places the burden of proving subject matter jurisdiction, by a preponderance of the evidence, on the plaintiff. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

In 2019, the FTC sued the OPG Entities for violation of Section 13(b) of the FTC Act, 15 U.S. C. § 53(b), and sought restitution and disgorgement, among other forms of relief. Following a preliminary injunction hearing, the court entered an asset freeze against the entity-defendants and appointed the Plaintiff as an "equity receiver". *See On Point Capital Partners LLC*, 17 F. 4th at 1071. The OPG Entities appealed. *Id*.

In 2021, the United States Supreme Court issued *AMG Cap. Mgmt., LLC v. FTC*, --- U.S. ---, 141 S. Ct. 1341 (2021), finding that Section 13(b) of the FTC Act does not permit the FTC to

seek an award of "equitable monetary relief such as restitution or disgorgement." Some of the OPG Entities voluntarily dismissed their appeals to seek relief in the district court, while others did not. *Id.*

On November 4, 2021, relying upon the *AMG* opinion, the Eleventh Circuit vacated portions of the preliminary injunction order as to the remaining appellants. *Id.* The court specifically vacated those portions of the order that appointed the Plaintiff and established the Receivership. *Id.* at 1071, n.4. The appellate court found that, considering *AMG*, the FTC Court's entry of an asset freeze and appointment of a receiver were "unsupported by law." *Id.*

The Plaintiff pleads no facts establishing any standing or authority to pursue this action following the Eleventh Circuit's decision in *On Point Capital Partners*, which vacated the Receivership Orders.[16] This is fatal to the Plaintiff's claim of subject matter jurisdiction. Without such authority, she lacks standing to pursue this action.

### iii. Law Of The Case Further Bars The Receivership And Defeats The Plaintiff's Standing

Further, the Eleventh Circuit's decision in *On Point Capital Partners* should be construed as law of the case that the receivership, as established in the orders cited by the Plaintiff in the Complaint, was "unsupported by law" and cannot now exist to provide this Court with subject matter jurisdiction. The law of the case doctrine bars district courts from revisiting issues that were previously decided by an appellate court in the same case. *See Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018). In the Eleventh Circuit, the law of the case is a rule of practice:

---

[16] In response to the Eleventh Circuit's opinion, the court presiding over a 2014 action, styled Case No. 14-CV-60166-RNS; *Federal Trade Commission, v. Acquinity Interactive, LLC, et al.*, S.D. Fla.) (the "**2014 FTC Enforcement Action**"), entered an order attempting to "reconstitute" the Receivership under the caption of a separate 2014 action. In its November 8, 2022 *Order* (ECF No. 238), it is clear the court believed the Receivership, as established in Receivership Orders, no longer existed following the *On Point Capital Partners* decision and for this reason and by agreement of the parties to that action attempted to "reconstitute" it. In any event, the Complaint alleges none of this. And we question whether, even if pled, this Court would have subject matter jurisdiction to hear purely state law tort claims, simply by virtue of parties to another action agreeing to a receivership that the Eleventh Circuit found "unsupported by law." If parties can, by agreement, create a federal receivership, they are essentially creating subject matter jurisdiction for the "receiver" to bring state law claims against third parties in federal court. The law, however, makes no allowance for that.

under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but (also) establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case."

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (quoting *Morrow v. Dillard,* 580 F.2d 1284, 1289 (5th Cir. 1978)).  The law of the case doctrine further extends to issues that were decided by necessary implication.  *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990).  Finally, under the mandate rule of the law of the case doctrine, a district court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces."  *See Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018).

Cases brought by a receiver arise out of the action in which the receiver is appointed.  *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir.1981); *see Damian v. Massaro*, No. 10–23987–CIV, 2011 WL 3678680, at *2 (S.D. Fla. Aug. 22, 2011).  A court often has subject matter jurisdiction over an action subsequently filed by a receiver due to ancillary or supplemental jurisdiction.  *Riehle v. Margolies*, 279 U.S. 218, 223 (1929); *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899); 28 U.S.C. § 1367.  This is because the receiver's subsequently filed action is essentially part of the main action.  *See Haile*, 657 F. 2d at 822 ("[w]e begin with the undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit"); *see Damian*, 2011 WL 3678680, at *2.

In *Warfield v. Alaniz*, a receiver for an investment company sued transferees for violation of the federal securities laws.  453 F.Supp. 2d 1118, 1121 (D. Ariz. 2006).  The receiver had been appointed in connection with an SEC enforcement action against the investment company.  *Id.* at 1122.  In the SEC action, the court had found that certain investments issued by the investment company were securities under the federal securities law.  *Id.*

In the third-party action, the defendants, who were not parties to the SEC action, moved for summary judgment on the grounds that the securities at issue were excluded from the definition of "security" under both state and federal laws.  In rejecting this challenge, the court cited to law of the case and the SEC court's prior determination that the investments at issue were "securities."  Specifically, the court explained "[d]ue to the ancillary nature of these proceedings, this Court's

16

decision not to revisit this purely legal issue is also consistent with the 'law of the case' doctrine." *Id.* at 1123 n.2.

Here, the Plaintiff pleads that her authority to bring this suit arises from the 2019 FTC Enforcement Action   But in the 2019 FTC Enforcement Action, the Eleventh Circuit found the Receivership unsupported by law. Under the law of the case, the Receivership does not exist, and the Plaintiff cannot bring this action in federal court.

### iv.   The Plaintiff Fails To Plead An Alleged Innocent Director/Stockholder

A receiver "obtains only the rights of action and remedies that were possessed by the person or corporation in receivership." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020). In other words, a receiver stands in the shoes of the entities in receivership and the conduct of the receivership entities, and their principles, can be imputed to the receiver. *See id.*; *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 551 (Fla. 2d DCA 2003).

For a receiver to have standing to sue a third-party for common law tort claims, the receiver must allege that the receivership entities had at least one innocent director or stockholder. *Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 905 (11th Cir. 2022); *Isaiah*, 960 F.3d at 1308.

Here, the Complaint is devoid of allegations that there were any innocent directors or stockholders at the OPG Entities. For this reason, and under binding, and recent, 11th Circuit precedent, the Complaint must be dismissed.

### v.   The Plaintiff's Claims Are Not Ripe

The Plaintiff's claims also fail because they are not ripe for judicial review under Article III of the United States Constitution. *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). To determine ripeness, courts look to whether a plaintiff's claims have accrued. *Id.* Moreover, claims are unripe for adjudication where they seek relief for an "uncertain sanction," and a "district court has not ordered a specific amount to be recovered." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010).

In Florida, a negligence claim does not accrue "until the existence of a redressable harm." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1338 (11th Cir. 2001) (quotations omitted). In New York, a negligence claim does not accrue until "all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *McCoy v. Feinman*, 99 N.Y.2d 295, 301 (N.Y. 2002).

Here, the judicial proceedings underlying the Plaintiff's claims—the 2019 FTC Enforcement Action—remain pending, and a specific number of damages (if any) has not yet been determined or entered as part of a final judgment. *See* Verdict, at pp. 2-3, Exhibit G; *see also* Compl., at ¶ 78. As noted, this process is driven by claims actually submitted by the OPG Entities' alleged victims and, according to the Plaintiff's submissions, those consumers had until recently—October 18, 2022—to file their claims. ECF No. 636, at p. 3 n.1; see ECF No. 637. The alleged damages arising from this claims process cannot and will not be ascertainable until after the Plaintiff determines which claims to approve or deny and submits a report to the 2019 FTC Court.

Accordingly, "no concrete injury [will arise] until a final court decision" terminating the claims process and crystallizing the OPG Entities' alleged injuries. *Porter*, 241 F.3d at 1339.

### C. The Complaint Is Further Subject To Dismissal Under Rule 12(b)(6)

#### i. The Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

A court may consider documents outside the pleadings without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. The document must be: a) referenced in the complaint; b) attached to a motion to dismiss; c) central to the plaintiff's claims; and d) of undisputed authenticity. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see SFM Holdings, Ltd. v. Banc of Am. Sec., LLC* 600 F.3d 1334, 1337 (11th Cir. 2010).

#### ii. The Plaintiff Fails To Allege Plausible Causation

Causation is a necessary element of legal malpractice.[17] *Conley v. Shutts & Bowen, P.A.*, 616 So. 2d 523, 524-25 (Fla. 3d DCA 1993); *Riker v. Premier Capital, LLC*, 2016 WL 5334980,

---

[17] Causation is also a necessary element of breach of fiduciary duty and this argument also defeats such a claim to the extent the Court construes the Complaint to assert such a claim. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Weil, Gotshal & Manges v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004).

at *9-10 (S.D.N.Y. Sept. 21, 2016); *Preferred Fragrance, Inc. v. Buchanan Ingersoll & Rooney PC,* 2015 WL 6143612, at *3 (E.D.N.Y. Oct. 18, 2015). A plaintiff must allege how the lawyer's alleged breach of duties caused the plaintiff damage. This is referred to as the "but for" test. Further, under *Iqbal* and *Twombly*, a plaintiff must plausibly allege causation to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S at 678; *Twombly*, 550 U.S. at 570.

The Complaint fails to allege causation. In fact, conclusory or otherwise, the Plaintiff never pleads how "but for" BakerHostetler's alleged breach of duties, the OPG Entities would not have suffered damages. There are no facts pled regarding what would have happened, or how the OPG Entities would have avoided suffering damages, had BakerHostetler satisfied its duties. Instead, the Plaintiff asks the Court to assume this would have occurred, based on 20/20 hindsight, and without alleging any facts or causation theories. Because such an allegation is essential to pleading and maintaining a claim for legal malpractice, and the Plaintiff pleads none, dismissal is warranted.

### iii. The Complaint Is An Improper "Shotgun" Pleading

Rules 8 and 10 of the Federal Rules of Civil Procedure require the Plaintiff to plead claims against Defendants in separate counts. *See Lane v. Capital Acquisitions & Mgmt. Co.*, 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the . . . Complaint fails to satisfy the minimum standard of Rule 8."); Fed. R. Civ. P. 10(b). The requirement exists "so that [Defendants] can discern what [the Plaintiff] is claiming and frame a responsive pleading." *Washington v. Bauer*, 149 F. App'x. 867, 869 (11th Cir. 2005) (quoting *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996)). It also "allow[s] the court to determine which facts support[] which claims and whether the plaintiff [states] any claims upon which relief can be granted." *Id.* at 869-70.

The Complaint does not comply with this requirement. Instead, its single claim for legal malpractice incorporates 72 paragraphs of prior allegations, many of which largely refer to "Defendants" collectively and fail to specify or distinguish between the acts for which each Defendant is allegedly responsible. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). And because many of those generalized allegations also lack any temporal limitation, it is impossible to determine against which defendant law firm each allegation is being lodged. Thus, the Complaint fails to "give the [D]efendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* Considering this failure, the Court

should dismiss the Complaint as a shotgun pleading. *See Lane*, 2006 WL 4590705, at \*5; *Scott v. Yellon*, 2:13-CV-157-FTM-38, 2013 WL 3802797, at \*1 (M.D. Fla. July 11, 2013) (dismissing complaint as shotgun pleading and requiring plaintiff "to replead to separate each defendant and the allegations against each of them under each separate Count").

### iv. The Complaint Only Pleads Legal Malpractice, But If It Asserts Breach Of Fiduciary Duty And Breach Of Contract, Those Claims Also Fail

The Plaintiff pleads only a single count of "Legal Malpractice." Compl., at p. 18. Yet, in her claim for relief, the Plaintiff "demands judgment against the Defendants for the total amount of damages resulting from the legal malpractice, *breaches of fiduciary duty, and breaches of contract* by the Defendants." Compl., at p. 20 (emphasis added). To the extent the Court construes the Complaint to also allege claims for breach of fiduciary duty and breach of contract, those claims fail for the reasons argued above.

Further, nowhere in the Complaint does the Plaintiff allege the existence of a contract, identify the contract, identify the terms of the contract, or identify how that contract was allegedly breached and the damages flowing therefrom. *Smith v. United States*, 873 F.3d 1348, 1350 (11th Cir. 2017) (affirming dismissal for failure to allege all the necessary elements of a claim); *Feldman v. American Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017); *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (stating elements of breach of contract claim). This is fatal to a breach of contract claim.

## IV. <u>Conclusion</u>

For the reasons argued herein, all claims should be dismissed, and the Court should take judicial notice of Exhibits C through H.

## V. <u>Request for Hearing</u>

Pursuant to Local Rule 7.1(b)(2), BakerHostetler respectfully requests that the Court hold a hearing on BakerHostetler's Motion to Dismiss. Oral argument will assist the Court in understanding the impact of the 2019 FTC Enforcement Action on this lawsuit and navigate the intricacies of BakerHostetler's multiple challenges to jurisdiction. Oral argument will further assist the Court in addressing the Complaint's vague and conclusory allegations, including the impact of those allegations on the larger jurisdictional challenges. BakerHostetler estimates that ninety (90) minutes would be an appropriate time for argument on all the defendants' motions to dismiss and the Plaintiff's opposition thereto.

Respectfully submitted,

*/s/ David R. Atkinson*
DAVID R. ATKINSON
Florida Bar No.:  767239
datkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
STEPHEN C. RICHMAN
Florida Bar No.: 1015692
srichman@gunster.com
jfirogenis@gunster.com
ARON U. RASKAS
Florida Bar No.: 1022416
araskas@gunster.com
mmotola@gunster.com

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 650-0595
Facsimile: (561) 655-5677

**Counsel for Defendant Baker & Hostetler LLP**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2022 a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.

*/s/ David R. Atkinson*
David R. Atkinson
Stephen C. Richman

ACTIVE:16238467.6