# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

MELANIE E. DAMIAN, as Receiver for On Point Global LLC, *et. al.*,

       *Plaintiff*,

- against -

HOLLY MELTON, BAKER & HOSTETLER LLP, and CROWELL & MORING LLP,

       *Defendants.*

Case. No. 1:22-cv-22606-JLK

## DEFENDANT HOLLY MELTON'S MOTION TO DISMISS AND TO STRIKE AND INCORPORATED MEMORANDUM OF LAW

Isaac J. Mitrani (No. 348538)
Daniel S. Bitran (No. 124041)
MITRANI, RYNOR, ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida 33140
Tel: (305) 358-0050
*imitrani@mitrani.com*
*dbitran@mitrani.com*

Frederick B. Warder III (*pro hac vice*)
Alejandro H. Cruz (*pro hac vice*)
Dakotah M. Burns (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
*fbwarder@pbwt.com*
*acruz@pbwt.com*
*dburns@pbwt.com*

*Attorneys for Defendant Holly Melton*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ..............................................................................................................................7

I.   FLORIDA'S CORPORATE SHIELD DOCTRINE PRECLUDES THIS
     COURT FROM EXERCISING PERSONAL JURISDICTION OVER MS.
     MELTON .........................................................................................................................7

II.  EXERCISING PERSONAL JURISDICTION OVER MS. MELTON
     WOULD VIOLATE DUE PROCESS.............................................................................14

CONCLUSION ..........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrew v. Radiancy, Inc.*,
    No. 16-cv-1061, 2017 WL 2692840 (M.D. Fla. June 22, 2017) .......................................13, 14

*Bernardele v. Bonorino*,
    608 F. Supp. 2d 1313 (S.D. Fla. 2009) ....................................................................................13

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
    902 F.2d 829 (11th Cir. 1990) ............................................................................................9, 12

*Canadian Steel Fabricators, Ltd. v. Garner*,
    No. 11-20039-CV, 2011 WL 4424431 (S.D. Fla. Sept. 22, 2011) ...........................................9

*Catalyst Pharms., Inc. v. Fullerton*,
    748 F. App'x 944 (11th Cir. 2018) .....................................................................................8, 12

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) ......................................................................................14, 15

*Dingle v. Dellinger*,
    134 So. 3d 484 (Fla. 5th DCA 2014) ......................................................................................13

*Doe v. Thompson*,
    620 So. 2d 1004 (Fla. 1993).....................................................................................................10

*Fla. Power & Light Co. v. Lixi, Inc.*,
    No. 11-80847-CIV, 2012 WL 12868740 (S.D. Fla. July 12, 2012) ...........................................8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)...............................................................................................................14

*Kitroser v. Hurt*,
    85 So. 3d 1084 (Fla. 2012)..........................................................................................................8

*Kline v. Byrd*,
    No. 21-21125-CIV, 2021 WL 4225774 (S.D. Fla. Sept. 16, 2021)............................................8

*L.O.T.I. Grp. Prods. v. Lund*,
    907 F. Supp. 1528 (S.D. Fla. 1995) .......................................................................................13

*LaFreniere v. Craig-Myers*,
    264 So. 3d 232 (Fla. 1st DCA 2018) .................................................................................8, 13

*Lane v. XYZ Venture Partners, L.L.C.*,
    322 F. App'x 675 (11th Cir. 2009) .....................................................................................9, 10

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) ...................................................................7

*Renda v. Peoples Fed. Sav. & Loan Ass'n of Tarentym, P.A.*,
    538 So.2d 860 (Fla. 1st DCA 1988) .......................................................................8

*Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*,
    No. 21-CV-22001, 2022 WL 681398 (S.D. Fla. Mar. 8, 2022)................................7

*Estate of Scutieri v. Chambers*,
    386 F. App'x 951 (11th Cir. 2010) ..................................................................12, 13

*Sims v. O'Leary*,
    933 So. 2d 1214 (Fla. 4th DCA 2006) ....................................................................8

*State, Office of Att'y Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*,
    869 So.2d 592 (Fla. 1st DCA 2004) ........................................................................9

*Thomas v. Brown*,
    No. 11-62261-CIV, 2012 WL 987760 (S.D. Fla. Mar. 22, 2012), *aff'd,* 504 F.
    App'x 845 (11th Cir. 2013) ...................................................................................15

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018) ..............................................................................7

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*,
    546 F. Supp. 3d 1192 (S.D. Fla. 2021) .........................................................7, 8, 12

**Statutes & Rules**

Florida Statutes § 48.193(1)(a)(2)...................................................................................6

15 U.S.C. § 45................................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................................1

Defendant Holly Melton, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(f), moves to dismiss the claims against her in the First Amended Complaint ("FAC"), and to strike the Plaintiff's requests for attorneys' fees and costs.

## PRELIMINARY STATEMENT

This is a legal malpractice action brought by the court-appointed receiver (the "Receiver") of On Point Global LLC and its affiliates ("On Point"), a group of defunct web-based businesses previously found liable for deceiving thousands of consumers through a host of misleading websites. The FAC is the Receiver's second attempt to plead claims to recover an as-yet unknown amount of damages from On Point's former lawyers, Defendants Crowell & Moring LLP ("Crowell"), Baker & Hostetler LLP ("Baker"), and attorney Holly Melton.

The Receiver's purported claims principally arise from a 2019 enforcement action brought by the Federal Trade Commission (the "FTC") against On Point, wherein the FTC alleged that On Point violated Section 5(a) of the FTC Act, 15 U.S.C. § 45, by misrepresenting to consumers that certain of On Point's websites offered government-related services, such as renewing drivers' licenses and car registrations (the "Enforcement Action"). In 2021, the court in the Enforcement Action held On Point (and its principals) liable for deceptive business practices in violation of Section 5(a). The Receiver now claims that Defendants, including Ms. Melton, should have known that On Point's business practices violated Section 5(a), and that they negligently failed to advise On Point to change those practices.

As with her original complaint, the Receiver's claims against Ms. Melton in the FAC are meritless, but they also suffer from a more fundamental flaw—the Receiver has failed to plead facts sufficient to establish personal jurisdiction over Ms. Melton. Specifically, under Florida's "corporate shield" doctrine, the conduct of an employee acting on behalf of her employer cannot form the basis for personal jurisdiction over that employee in her individual capacity, unless the

employee (i) committed an act essential to the alleged tort while physically present in Florida; or (ii) committed an intentional tort.

Although the Receiver's FAC includes a handful of new allegations in an apparent attempt to evade the corporate shield doctrine, the core facts of this case remain the same, and they support the application of the doctrine here.  The Receiver admits that Ms. Melton acted on her employer's behalf at all relevant times—first as a partner at Baker, and then as a partner at Crowell.  And the Receiver cannot allege that Ms. Melton committed any acts essential to the Receiver's malpractice claim while physically present in Florida, much less that she committed an intentional tort.  For those reasons, this Court cannot exercise *in personam* jurisdiction over Ms. Melton, and the claims against her should be dismissed.[1]

## FACTUAL BACKGROUND

### A.   Ms. Melton's Prior Representation of On Point

The Receiver alleges that her claims relate to Ms. Melton's representation of On Point and/or Burton Katz, On Point's founder and chief executive officer, at various points between 2014 and 2019.  The Receiver claims that in 2014, Ms. Melton—who was then an attorney at Manatt Phelps & Phillips ("Manatt")—represented Katz in connection with a lawsuit brought by the FTC against Katz's former company, Acquinity Interactive, LLC (the "Acquinity Matter").  (FAC ¶¶ 64-65.)  In the Acquinity Matter, the FTC alleged that Katz, together with other companies and individuals, violated Section 5(a) of the FTC Act, 15 U.S.C. § 45, by engaging in a deceptive scheme to place unauthorized charges on consumers' mobile phone bills.  (*Id.* ¶ 64.)  Katz ultimately entered into a stipulated final judgment in the Acquinity Matter, which enjoined

---

[1] Crowell has filed a separate motion to dismiss the Receiver's Amended Complaint.  The bases for Crowell's motion to dismiss apply equally to the Receiver's claims against Ms. Melton, and Ms. Melton joins Crowell's arguments and incorporates each of them by reference here.

him from engaging in false or misleading practices in connection with the sale of "any product or service" in the future (the "2014 Permanent Injunction").  (*Id.* ¶¶ 66-67.)

According to the Receiver, Katz began operating On Point's websites in or around January 2017.  (*Id.* ¶ 57.)  The FAC alleges that Ms. Melton left Manatt and began working for Baker in March 2017.  (*Id.* ¶ 68.)  The Receiver further alleges that, during her time at Baker, Ms. Melton was physically present in Florida on a single occasion, when she provided "legal compliance training" at On Point's offices only a few days after joining Baker in March 2017.  (*Id.* ¶ 45.)  The Receiver admits in the FAC, however, that this training occurred two months *before* On Point "retained" Baker in May 2017 to "conduct a compliance analysis and assess the legal risks of [On Point's] business models and websites to determine whether they complied with applicable laws."  (*Id.* ¶ 71.)  Indeed, the Receiver alleges elsewhere in her FAC that Ms. Melton's relevant conduct did not begin until On Point retained Baker to perform this compliance analysis in May 2017.  (*See id.* ¶ 33 ("At all material times between May 2017 and the present, Defendant Melton and several other associates and partners identified below who performed services for and provided legal counsel to the OPG Entities were acting within the course and scope of their duties . . . ."))  Moreover, the FAC does not allege to whom this "training" was provided or what it entailed, aside from vague references to unspecified "policies and procedures concerning misleading and deceptive advertising practices and Section 5 of the FTC Act."  (*Id.* ¶ 45.)  The Receiver conclusory claims that this "training and advice is the subject of this legal malpractice lawsuit," but fails to identify *any* legal advice that Ms. Melton actually gave at the training that was allegedly incorrect or deficient.  (*Id.*)

Other than this single occasion, all of the Receiver's remaining allegations about Ms. Melton's time at Baker concern alleged legal advice she provided from outside of Florida.

3

The Receiver, alleges, for example, that Ms. Melton emailed a "training deck" to an On Point officer located in Florida, mailed a letter to On Point's offices in Florida, sent certain emails to On Point employees that concerned "a large-scale compliance review" of On Point's business practices, and submitted a memorandum to On Point "that outlined the changes suggested to bring [certain] sites into compliance."  (*Id.* ¶ 44-48.)  The Receiver does not allege that Ms. Melton undertook any of these activities while in Florida.

The Receiver next claims that after "[Ms.] Melton moved from Baker to Crowell in 2018," she "continued to provide FTC Act compliance work," as well as data collection, security and online privacy advice.  (*Id.* ¶¶ 77, 82.)  Once again, the Receiver cites only one occasion in which Ms. Melton was physically present in Florida during her time at Crowell, when she purportedly gave an "in-person legal training" to some On Point employees in March 2019.  (*Id.* ¶ 53.)  And, once again, the Receiver admits that this training occurred *before* On Point asked Crowell to conduct an "extensive compliance review" of On Point's business model "in April and May 2019."  (*Id.* ¶¶ 77, 80-81.)  The Receiver provides no information about the recipients or content of this training or its relevance to her claims, and instead relies on the conclusory allegation that Ms. Melton "fail[ed] to provide an appropriate compliance analysis as contained in the training deck."  (*Id.* ¶ 53.)  The Receiver alleges nothing to connect this alleged "failure" to her claims or alleged damages.

As with her allegations about Ms. Melton's time at Baker, all of the Receiver's remaining claims about Ms. Melton's time at Crowell concern alleged legal advice she provided while outside of Florida.  The Receiver alleges, for example, that Ms. Melton sent an engagement letter to On Point's offices in Florida, submitted a memorandum "that outlined the scope of the continuous compliance review" allegedly undertaken by Ms. Melton and Crowell, sent an email

with "a chart containing Crowell's review of" certain websites, and sent an additional email that concerned "third-party data sharing" in connection with those sites.  (*Id.* ¶¶ 49-52.)  As above, the Receiver does not allege that Ms. Melton undertook any of these activities while in Florida.

**B.   The FTC's Enforcement Action**

The FTC filed the Enforcement Action in December 2019, alleging that On Point and certain of its officers violated Section 5(a) of the FTC Act by misrepresenting to consumers that On Point's websites were affiliated with certain state and local governments, and failing to provide consumers with services that were promised on those websites, such as renewals for drivers' licenses and car registrations.  (*Id.* ¶¶ 8, 57-58.)  Shortly thereafter, in February 2020, the FTC also "filed a Motion for an Order to Show Cause Why Katz and [On Point] Should Not Be Held in Contempt" in the Acquinity Matter.  (*Id.* ¶ 91.)  In that motion, the FTC claimed that On Point "operated a deceptive business" in violation of the terms of the 2014 Permanent Injunction.  (*Id.* ¶ 92.)

In September 2021, the court determined that certain of On Point's "websites violated Section 5(a) of the FTC Act."  (*Id.* ¶ 14.)  In November 2021, following a bench trial, the court further held that, by virtue of these violations of Section 5(a), Katz, On Point, and other On Point officers were in contempt of the 2014 Permanent Injunction issued in the Acquinity Matter, which forbade Katz (and entities affiliated with him) from violating Section 5(a) in future business endeavors.  (*Id.* ¶ 17.)  On that basis, the court found Katz, On Point, and certain other officers "jointly and severally liable for compensatory contempt damages," with a "final amount to be determined by" an ongoing claims process, but that is "not to exceed $102,768,235.47." (*Id.* ¶¶ 17, 98.)

### C.  The Receiver's Complaint

On August 16, 2022, the Receiver filed this action against Crowell and Baker, as well as Ms. Melton individually.  ECF No. 1.  After Crowell, Baker, and Ms. Melton moved to dismiss her complaint, including on the grounds that the Court is precluded by the corporate shield doctrine from exercising personal jurisdiction over Ms. Melton, *see infra*, the Receiver filed the FAC.  The FAC alleges that "[t]he Defendants knew or should have known that the [On Point] Entities' business models and websites as then operating contravened federal consumer protection laws, including the FTC Act, and they negligently failed to warn the [On Point] Entities that they should make changes and/or modify their business practices to be in compliance with" those laws.  (*Id*. ¶ 3.)  The Receiver also claims that, "despite Melton and Baker's actual knowledge of the 2014 Permanent Injunction and the restrictions it imposed . . ., at no time did Melton or Baker acknowledge or alert the [On Point] Entities" to the risk that they were in violation of the 2014 Permanent Injunction.  (*Id*. ¶ 79.)

In the FAC, the Receiver claims that Ms. Melton is subject to the personal jurisdiction of this court "pursuant to Section 48.193(1)(a)(2), Florida Statutes, which provides for jurisdiction over a nonresident who 'commit[s] a tortious act within [Florida].'"  (*Id*. ¶ 37.)  She alleges that such "tortious act[s]" occurred because the "Defendants committed tortious acts of legal malpractice in Florida via interstate communications and personal visits to Florida."  (*Id*.)  The Receiver also claims that "each of the Defendants received transfers of funds, either directly or indirectly, from the OPG Entities, which were operating, conducting, engaging in, and carrying on business operations or business ventures in, among other locations, the Southern District of Florida."  (*Id*. ¶ 38.)  As described herein, the Receiver's conclusory allegations concerning Ms. Melton's limited physical presence in Florida appeared for the first time in the FAC.

## ARGUMENT

I.   **FLORIDA'S CORPORATE SHIELD DOCTRINE PRECLUDES THIS COURT FROM EXERCISING PERSONAL JURISDICTION OVER MS. MELTON**

    **A.   Legal Standard**

        *i.   Personal Jurisdiction Generally*

To establish personal jurisdiction over a nonresident defendant, a plaintiff must (i) allege sufficient facts to bring the defendant's conduct within the ambit of Florida's long-arm statute; and (ii) demonstrate that the defendant has sufficient minimum contacts with Florida to satisfy the Due Process Clause of the U.S. Constitution. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).  At the pleadings stage, a "'plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'" *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, No. 21-CV-22001, 2022 WL 681398, at *1 (S.D. Fla. Mar. 8, 2022) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)).

To make a *prima facie* case for personal jurisdiction based on a nonresident defendant's minimum contacts with Florida,[2] the plaintiff must plead enough facts "to withstand a motion for directed verdict." *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1192, 1200–01 (S.D. Fla. 2021).  Although the plaintiff's non-conclusory allegations are accepted as true, "[n]on-specific statements providing 'labels and conclusions' or 'a formulaic recitation of the elements of [jurisdiction]' are not accepted as true and are insufficient to establish a prima facie

---

[2] The Receiver makes no claim that the Court has general jurisdiction over Ms. Melton, nor could she.  Courts recognize "**only** [three] scenarios" where general jurisdiction over an individual defendant is constitutionally proper: (1) where the forum state "is the individual's domicile"; (2) "where the individual consents to the forum's jurisdiction"; and/or (3) "where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1349–50 (S.D. Fla. 2017) (emphasis in original). None of those circumstances is present here.

case of jurisdiction." *Id.*; *see also Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 946 (11th Cir. 2018) ("To establish personal jurisdiction over a nonresident defendant, a plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.  Vague and conclusory allegations do not satisfy this burden." (quotations omitted)).

ii.     *Corporate Shield Doctrine*

Claims brought against nonresident individuals acting on behalf of their employers are also subject to Florida's "corporate shield" doctrine.  Under Florida law, "personal jurisdiction cannot be exercised over a nonresident corporate employee sued individually for acts performed in a corporate capacity." *LaFreniere v. Craig-Myers*, 264 So. 3d 232, 237 (Fla. 1st DCA 2018).  The doctrine applies not only to corporations, but also to any other legally recognized entity. *See, e.g.*, *Sims v. O'Leary*, 933 So. 2d 1214, 1215 (Fla. 4th DCA 2006) (applying doctrine to limited liability company); *Renda v. Peoples Fed. Sav. & Loan Ass'n of Tarentym, P.A.*, 538 So.2d 860, 863 (Fla. 1st DCA 1988) (same with respect to limited partnership).  "The rationale of the doctrine is the notion that it is unfair to force an individual to defend a suit brought against [her] personally in a forum with which [her] only relevant contacts are acts performed not for [her] own benefit but for the benefit of [her] employers." *Fla. Power & Light Co. v. Lixi, Inc.*, No. 11-80847-CIV, 2012 WL 12868740, at *6 (S.D. Fla. July 12, 2012) (quotations omitted).

Florida courts recognize only two exceptions to the corporate shield doctrine.  *First*, the doctrine does not preclude long-arm jurisdiction if the plaintiff alleges that "the individual employees committed negligent acts while personally present in Florida." *Kitroser v. Hurt*, 85 So. 3d 1084, 1086 (Fla. 2012); *see also, e.g.*, *Kline v. Byrd*, No. 21-21125-CIV, 2021 WL 4225774, at *4 (S.D. Fla. Sept. 16, 2021) (explaining that "this exception to the corporate shield doctrine . . . generally requires a defendant's physical presence" in the state (quotations

omitted)).  An employee's mere physical presence in the state during the relevant period is not, however, enough to confer personal jurisdiction.  Rather, to show that the employee "committed [the] negligent acts" at issue while in Florida, the plaintiff must plausibly allege that "a substantial aspect of the alleged tort" occurred while the employee was present in the state. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990).  A plaintiff makes this showing "by establishing that [her] activities in Florida [were] ***essential to the success of the tort***."  *Id.* (emphasis added); *see also Canadian Steel Fabricators, Ltd. v. Garner*, No. 11-20039-CV, 2011 WL 4424431, at *4 (S.D. Fla. Sept. 22, 2011) ("[F]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long arm statute, the Plaintiff must demonstrate that the nonresident Defendants 'committed a substantial aspect of the alleged torts in Florida' by establishing that the activities in Florida were 'essential to the success of the tort.'" (citation omitted)).

*Second*, if a substantial aspect of the alleged tort did not occur while the employee was physically present in Florida, then the corporate shield doctrine applies unless she committed "intentional tortious acts expressly aimed at the forum state."  *See State, Office of Att'y Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So.2d 592, 597 (Fla. 1st DCA 2004) (quotations omitted).  Absent these two exceptions, the doctrine "precludes a Florida Court from exercising personal jurisdiction . . . under the Florida long-arm statute."  *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 679 (11th Cir. 2009).

As demonstrated below, the Receiver fails to allege that any conduct by Ms. Melton while physically present in Florida was a "substantial aspect" of the purported malpractice, such that it was "essential to the success of the tort."  *Cable/Home Commc'n Corp.*, 902 F.2d at 857.

And the Receiver does not claim that Ms. Melton committed an intentional tort.  The corporate shield doctrine therefore bars the assertion of personal jurisdiction over Ms. Melton.

### B. The Corporate Shield Doctrine Bars this Court from Exercising Personal Jurisdiction Over Ms. Melton

> i. *Ms. Melton Acted at All Relevant Times in Her Capacity as an Employee of Baker and Crowell*

The Receiver does not and cannot allege any relevant conduct by Ms. Melton in her individual capacity.  The corporate shield doctrine applies to any employee who acts "on behalf of" her employer, rather than "on [her] own."  *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993).  Here, the Receiver concedes in the Complaint that "[a]t all material times between May 2017 and the present, Defendant Melton and several other associates . . . were acting within the course and scope of their duties and responsibilities as partner and associate level attorneys employed by Baker and Crowell respectively and were acting with Baker and Crowell's respective approval and consent."  (FAC ¶ 33).  Indeed, all of the Receiver's allegations regarding Ms. Melton's conduct relate to the course of her work for On Point, and there is no dispute that such work was done on behalf of and for the benefit of first, Baker, and then, Crowell.  (*See, e.g.*, *id.* ¶¶ 73-75 (alleging that Ms. Melton sent letters to On Point "on Baker letterhead" and conducted a "legal and compliance review" for On Point along with other Baker attorneys); ¶¶ 77-80 (claiming that Ms. Melton "continued to provide FTC Act compliance work" after joining Crowell, including a "compliance monitoring program" and "compliance counseling").)  Accordingly, the FAC is clear that Ms. Melton acted "on behalf of" her employer within the meaning of the corporate shield doctrine.  *Doe*, 620 So. 2d at 1006.  On their face, the Receiver's allegations regarding Ms. Melton preclude this Court from exercising jurisdiction over her.  *See Lane*, 322 F. App'x at 679.

ii.    *The Receiver Fails to Allege Any Relevant Conduct By Ms. Melton While Physically Present in Florida*

The Receiver also fails to allege any plausible facts to support either of the two limited exceptions to Florida's corporate shield doctrine.  With regard to the location of Ms. Melton's conduct, the FAC contains no allegations that Ms. Melton committed any acts essential to the Receiver's malpractice claims while physically present in Florida.  Instead, she conclusorily alleges that Ms. Melton was present in Florida for two unspecified "trainings" (that is, not the provision of specific legal advice) provided to unidentified individuals at On Point in March 2017, during her time at Baker, and in March 2019, during her time at Crowell.  Notably, however, the Receiver is silent as to the recipients and content of either training, nor does the Receiver plead that such "training" was a "substantial aspect" and "essential to the success" of the alleged malpractice.

With respect to the training provided in March 2017, the Receiver admits that this training occurred two months *before* On Point "retained" Baker in May 2017 to "conduct a compliance analysis and assess the legal risks of [On Point's] business models and websites to determine whether they complied with applicable laws."  (FAC ¶ 71.)  Moreover, she provides no information whatsoever about the content of this training, other than to vaguely allege that it concerned "policies and procedures" that related to "misleading and deceptive advertising practices and Section 5 of the FTC Act."  (*Id.* ¶ 45.)  The Receiver declares that this "training and advice is the subject of this legal malpractice lawsuit" (*id.*), but ignores that the training took place before On Point retained Baker to conduct the compliance analysis in question, and otherwise fails to identify any legal advice that Ms. Melton actually provided at the training, or explain how the "training" relates to the malpractice claims at issue.  Likewise, with respect to the March 2019 training, the Receiver admits that this training occurred *before* On Point asked

11

Crowell to conduct an "extensive compliance review" of On Point's business model "in April and May 2019." (*Id.* ¶¶ 77, 80-81.)  Additionally, the Receiver *pleads no facts whatsoever* about the content of Ms. Melton's presentation.  Instead, she concludes—without any supporting allegation—that Ms. Melton "fail[ed] to provide an appropriate compliance analysis as contained in the training deck." (*Id.* ¶ 53.)

These "non-specific statements" are facially insufficient to satisfy the Receiver's "'initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *In re: Zantac*, 546 F. Supp. 3d at 1201; *Catalyst Pharms.,* 748 F. App'x at 946 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)); *see also id.* ("Vague and conclusory allegations do not satisfy this burden.").  The Receiver's scant allegations establish, at best, that Ms. Melton provided generalized compliance training to someone at On Point while present in Florida on two occasions.  But the Receiver fails to explain what, if any, aspects of that training constituted legal advice to On Point regarding identifiable issues on which On Point relied, nor why any such legal advice allegedly fell below the standard of care—much less that this advice was "essential to the success of the tort." *Cable/Home Commc'n Corp.*, 902 F.2d at 857 (quotations omitted).

Courts routinely dismiss complaints for lack of personal jurisdiction where the plaintiff fails to plead specific, non-conclusory facts to demonstrate that the defendant's in-state activities were "essential to" the plaintiff's claims.  For example, in *Estate of Scutieri v. Chambers*, the plaintiff accused the defendant of misappropriating the assets of a jointly owned company, and she further alleged that the defendant "flew to Florida a number of times to meet with [her] about the dispute" concerning her ownership interest in the business.  386 F. App'x 951, 954 n.6 (11th Cir. 2010).  But the Eleventh Circuit held that these trips to Florida were insufficient to establish

personal jurisdiction because the plaintiff had failed to plead specific "information connecting [these] allegations to" her claims, and thus the defendant's activities were not "essential to the success of the tort." *Id.* Other courts have reached similar conclusions. *See, e.g.*, *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1325 n.10 (S.D. Fla. 2009) (defendants' attendance at meeting in Miami was not "essential to" plaintiff's claims because defendants' other alleged actions would have been "tortious regardless of whether" the meeting took place); *L.O.T.I. Grp. Prods. v. Lund*, 907 F. Supp. 1528, 1532 (S.D. Fla. 1995) (no personal jurisdiction in copyright action, even though defendant delivered the copyrighted videos while present in Florida, because "[s]uch isolated contact does not rise to the level of [being a] 'substantial part' of the tortious activities"). The Receiver's claims against Ms. Melton should be dismissed for the same reason.

       iii.    *The Receiver Fails to Allege that Ms. Melton Committed an Intentional Tort*

The only other exception to the corporate shield doctrine is reserved for instances in which an employee commits an intentional tort in Florida. *See LaFreniere*, 264 So. 3d at 238. The Receiver's only claim against Ms. Melton is legal malpractice, which sounds in negligence, and is not an intentional tort. *Dingle v. Dellinger*, 134 So. 3d 484, 487 (Fla. 5th DCA 2014). For this reason, the intentional tort exception to the corporate shield doctrine cannot apply. *See Andrew v. Radiancy, Inc.*, No. 16-cv-1061, 2017 WL 2692840, at *5–6 (M.D. Fla. June 22, 2017) (rejecting "Plaintiff's attempt to equate her [negligence] claims to intentionally tortious conduct" for purposes of the corporate shield doctrine, and emphasizing that "[n]egligence" claims "are not intentional torts").

In sum, the Receiver concedes that Ms. Melton acted in her capacity as an employee of Baker or Crowell, and fails to allege any facts implicating either exception to the corporate shield doctrine. For those reasons, Florida law precludes this Court from exercising *in personam*

jurisdiction over Ms. Melton under Florida's long-arm statute. *See id.* (dismissing claims for lack of personal jurisdiction where plaintiff failed to plead that defendant committed an intentional tort, and holding that "[s]uch circumstances *are required* before courts will exercise personal jurisdiction over [an individual employee] who commits a tort while physically outside of Florida." (emphasis added)).

## II.   EXERCISING PERSONAL JURISDICTION OVER MS. MELTON WOULD VIOLATE DUE PROCESS

Exercising personal jurisdiction over Ms. Melton under Florida's long-arm statute would also violate Due Process under the U.S. Constitution. This is an independent basis for dismissal of the Receiver's claims against Ms. Melton.

The Fourteenth Amendment "require[s] that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("[A] tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" (citations omitted)). Courts may only exercise *in personam* jurisdiction over a nonresident defendant "where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Consol. Dev.*, 216 F.3d at 1291 (citation omitted). This requirement "assures that 'the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).

Here, the Receiver does not allege that Ms. Melton has an office in Florida, has a Florida bar license, provided any legal advice essential to the malpractice claims while present in Florida, or otherwise took any action calculated to avail herself of the benefits of Florida's laws. Indeed, the Receiver alleges no facts that would have given Ms. Melton any basis to "reasonably anticipate being haled into court" in Florida.  *Id.* (citation omitted); *see also Thomas v. Brown*, No. 11-62261-CIV, 2012 WL 987760, at *8 (S.D. Fla. Mar. 22, 2012), *aff'd,* 504 F. App'x 845 (11th Cir. 2013) (finding attorneys could not have "reasonably anticipate[d] being ha[]led into court" where they had "no offices" in Florida and their "few contacts" with Florida included "telephone and electronic communications" sent from their offices in a different state).  The Receiver's claims against Ms. Melton should be dismissed for this additional reason.

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in Crowell's motion to dismiss filed simultaneously herewith (which arguments are incorporated herein by reference), Ms. Melton respectfully requests that the Court dismiss the Receiver's claims against her for lack of personal jurisdiction, lack of subject matter jurisdiction (as set forth in Crowell's motion to dismiss), and to strike the Receiver's requests for attorneys' fees and costs (as set forth in Crowell's motion to dismiss).

<u>**REQUEST FOR HEARING**</u>

Pursuant to Local Rule 7.1(b)(2), Ms. Melton respectfully requests that the Court hold a hearing on this and Defendant Crowell's contemporaneously filed motions to dismiss.  A hearing will assist the Court in understanding the factual and legal deficiencies of the Receiver's FAC and the complexities of the ongoing, underlying FTC actions.  A hearing will also assist the Court in resolving the jurisdictional challenges raised in these motions.  In light of the multiple

Defendants in this action, Ms. Melton estimates that one (1) hour would be appropriate for the Court to hear the movants' arguments on both motions, and the Receiver's opposition thereto.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Ms. Melton certify that Alejandro H. Cruz, Ms. Melton's counsel, and Tom Culmo, the Receiver's counsel, conferred via email on January 9 and 10, 2023, in connection with this and Crowell's contemporaneously filed motions to dismiss.  Counsel for the Receiver confirmed that the Receiver will oppose these motions.

Dated: January 10, 2023

                    Respectfully submitted,


                    By:  */s/ Daniel S. Bitran*

                    Isaac J. Mitrani (No. 348538)
                    Daniel S. Bitran (No. 124041)
                    MITRANI, RYNOR, ADAMSKY & TOLAND, P.A.
                    301 Arthur Godfrey Road, Penthouse
                    Miami Beach, Florida  33140
                    Tel:  (305) 358-0050
                    *imitrani@mitrani.com*
                    *dbitran@mitrani.com*

                    Frederick B. Warder III (*pro hac vice*)
                    Alejandro H. Cruz (*pro hac vice*)
                    Dakotah M. Burns (*pro hac vice*)
                    PATTERSON BELKNAP WEBB & TYLER LLP
                    1133 Avenue of the Americas
                    New York, NY 10036
                    Tel:  (212) 336-2000
                    *fbwarder@pbwt.com*
                    *acruz@pbwt.com*
                    *dburns@pbwt.com*

                    *Attorneys for Defendant Holly Melton*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed and served via the CM/ECF filing system on January 10, 2023, upon:

Kenneth D. Murena, Esq.
DAMIAN & VALORI LLP
1000 Brickell Avenue
Suite 1020
Miami, FL 33131
kmurena@dvllp.com

Thomas A. Culmo
CULMO TRIAL ATTORNEYS
4090 Laguna Street
Coral Gables, FL 33146
tom@culmotrialattorneys.com

Aaron Uri Raskas, Eq.
GUNSTER, YOAKLEY, STEWART, P.A.
600 Brickell Avenue
Suite 3500
Miami, FL 33131
araskas@gunster.com
avalido@gunster.com
eservice@gunster.com

David Richardson Atkinson, Jr., Esq.
Stephen Carli Richman, Esq.
GUNSTER, YOAKLEY, STEWART, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL 33401
datkinson@gunster.com
srichman@gunster.com
mmargolese@gunster.com
jfirogenis@gunster.com

*/s/ Daniel S. Bitran*