**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| MELANIE E. DAMIAN, as Receiver for On Point Global LLC, *et. al.*,<br><br>*Plaintiff*,<br><br>- against -<br><br>HOLLY MELTON, BAKER & HOSTETLER LLP, and CROWELL & MORING LLP,<br><br>*Defendants.* | Case. No. 1:22-cv-22606-JLK |

**DEFENDANT CROWELL & MORING LLP'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND TO STRIKE THE RECEIVER'S REQUESTS FOR ATTORNEYS'
<u>FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW</u>**

Isaac J. Mitrani (No. 348538)
Daniel S. Bitran (No. 124041)
MITRANI, RYNOR, ADAMSKY &
TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida 33140
Tel: (305) 358-0050
*imitrani@mitrani.com*
*dbitran@mitrani.com*

Frederick B. Warder III (*pro hac vice*)
Alejandro H. Cruz (*pro hac vice*)
Dakotah M. Burns (*pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
*fbwarder@pbwt.com*
*acruz@pbwt.com*
*dburns@pbwt.com*

*Attorneys for Defendant
Crowell & Moring LLP*

# **TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ..................................................................................................1

**FACTUAL BACKGROUND**........................................................................................................2

      A.     **Crowell's Representation of On Point** ...................................................................2

      B.     **The FTC Sues On Point**.........................................................................................4

      C.     **The Receiver's Amended Complaint** ...................................................................6

**ARGUMENT** .................................................................................................................................7

I.     **THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE RECEIVER FAILS TO PLEAD FACTS SUFFICIENT TO SHOW A RIPE DISPUTE**.................................................................................................................. 7

      A.     **Legal Standard** ......................................................................................................7

      B.     **The Receiver's Claims Are Not Ripe** ...................................................................8

II.    **THE RECEIVER FAILS TO PLEAD A BASIS TO RECOVER ATTORNEYS' FEES AND COSTS**............................................................................... 11

**CONCLUSION** ...........................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baker v. Sepich*,
  No. 18-cv-81595, 2021 WL 5768069 (S.D. Fla. Oct. 28, 2021), *aff'd,* 2022
  WL 4594318 (11th Cir. Sept. 30, 2022) ..................................................................................4

*Blumberg v. USAA Cas. Ins. Co.*,
  790 So. 2d 1061 (Fla. 2001)..................................................................................................9

*Dawson v. York Specialized Loss Adjusting Div. of York Risk Servs. Grp., Inc.*,
  No. 20-60065-civ, 2020 WL 13016824 (S.D. Fla. Nov. 25, 2020) .......................................11

*Deltoro v. Fresh Mkt., Inc.*,
  No. 14-61210-civ, 2014 WL 11776942 (S.D. Fla. Nov. 25, 2014) .......................................11

*Digital Props., Inc. v. City of Plantation*,
  121 F.3d 586 (11th Cir. 1997) ............................................................................................7, 8

*Elend v. Basham*,
  471 F.3d 1199 (11th Cir. 2006) ...............................................................................................7

*FTC v. Acquinity Interactive, LLC*,
  No. 14-60166-Civ-Scola, 2021 WL 4840585 (S.D. Fla. Sept. 29, 2021).................................5

*Gibraltar Secs. v. Bitter*,
  No. 97-1587-civ, 1997 WL 728089 (M.D. Fla. Oct. 24, 1997)..............................................12

*Grasso v. Grasso*,
  131 F. Supp. 3d 1303 (M.D. Fla. 2015)..................................................................................12

*Hames v. City of Miami*,
  479 F. Supp. 2d 1276 (S.D. Fla. 2007), *aff'd as modified by* 281 F. App'x 853
  (11th Cir. 2008)........................................................................................................................8

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) ...............................................................................................8

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
  501 F.3d 1244 (11th Cir. 2007) ...............................................................................................2

*Ouachita Watch League v. Jacobs*,
  463 F.3d 1163 (11th Cir. 2006) ............................................................................................7, 8

*Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*,
  790 So. 2d 1051 (Fla. 2001)................................................................................................9, 12

*Porter v. Ogden, Newell & Welch*,
    241 F.3d 1334 (11th Cir. 2001) ....................................................................................9, 10

*Queen for a Day, LLC v. J. Milton & Assocs., Inc.*,
    No. 19-cv-24308, 2020 WL 12188440 (S.D. Fla. Aug. 20, 2020) ..........................................11

*Taracido v. Perez-Abreu, Zamora & De La Fe, P.A.*,
    705 So. 2d 41 (Fla. 3d DCA 1997), *aff'd*, 790 So. 2d 1051 (Fla. 2001)....................................9

*Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*,
    No. 17-cv-81290, 2018 WL 10152613 (S.D. Fla. June 18, 2018)............................................8

*United States v. Rivera*,
    613 F.3d 1046 (11th Cir. 2010) ....................................................................................8, 11

**Statutes and Rules**

15 U.S.C. § 45............................................................................................................1, 4, 5

Fed. R. Civ. P. 12 ............................................................................................................ *passim*

Defendant Crowell & Moring LLP ("Crowell"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(f), moves to dismiss the First Amended Complaint ("FAC") of Receiver Melanie E. Damian (the "Receiver") and to strike the Receiver's requests for attorneys' fees and costs.

## PRELIMINARY STATEMENT

The FAC is the Receiver's second attempt to plead claims of legal malpractice on behalf of On Point Global LLC and its affiliated entities ("On Point"). On Point operated a network of websites that deceived consumers into thinking they were purchasing government-related services. According to the FAC, Defendants Crowell, Baker & Hostetler LLP ("Baker"), and Holly Melton (collectively, the "Defendants") previously represented On Point, as well as its CEO and founder, Burton Katz. The Receiver now seeks to recover from Defendants an as-yet undetermined amount of damages.

Between January 2017 and December 2019, On Point operated "paid guide" websites that provided consumers—for a fee—with electronic files collating publicly available information. In 2019, the Federal Trade Commission ("FTC") brought an enforcement action against On Point, alleging that On Point's websites were deceptive within the meaning of Section 5(a) of the FTC Act, 15 U.S.C. § 45 (the "Enforcement Action"). The court found On Point liable for engaging in deceptive business practices in violation of the FTC Act by suggesting to consumers that they could obtain government-like services, such as renewals of drivers' licenses and car registrations. In this case, the Receiver alleges that On Point's ultimate liability to consumers following the Enforcement Action resulted from Defendants' purportedly negligent failure to advise On Point that its business practices may have run afoul of the FTC Act.

Despite the Receiver's revisions to the claims alleged in her initial complaint, the FAC remains defective for at least two reasons.

As in the Receiver's original complaint, the constitutional requirement of ripeness remains unsatisfied. The Receiver's malpractice claims are not ripe for adjudication because they have not accrued. Under Florida law, transactional legal malpractice actions accrue when a client incurs damages at the conclusion of the related or underlying judicial proceedings. Because the judicial proceedings underlying the Receiver's claims remain pending, and damages are uncertain until the conclusion of the ongoing claims process, the Receiver's malpractice claims against Defendants are not ripe for adjudication by a federal court. As a result, the Court lacks subject matter jurisdiction over this action.

Independent of the jurisdictional requirements that the Receiver fails to meet, the Court should also strike the Receiver's requests for attorneys' fees and costs for failure to plead a basis on which to recover such damages here.

## FACTUAL BACKGROUND

### A. Crowell's Representation of On Point

Defendant Crowell is an international law firm. (*See* FAC ¶ 31).[1] Defendant Holly Melton is a partner currently practicing in Crowell's New York office. (*Id.* ¶ 32.) Ms. Melton previously practiced as an attorney at Manatt, Phelps & Phillips, LLP ("Manatt"), and then at Baker. (*Id.* ¶¶ 32, 65, 68.) The Receiver alleges that her claims relate to Defendants' prior

---

[1] The facts herein are taken from the Receiver's FAC, and must be accepted as true in the context of a facial challenge to the Court's subject matter jurisdiction pursuant to Rule 12(b)(1). *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Crowell's recounting of these allegations is not an admission of their truth.

representations of On Point and Burton Katz, On Point's founder, at various points between 2017 and 2019. (*Id.* ¶ 1.)

Beginning in or around July 2014, Ms. Melton, who was then employed by Manatt, was allegedly involved in representing Katz in a prior FTC action related to Katz's previous businesses (the "Acquinity Matter"). (*See id.* ¶¶ 64-69.) Katz and his former businesses were accused of "trick[ing] consumers into signing up for costly phone bill subscriptions through websites that offered free merchandise in exchange for consumers' phone numbers." (*Id.* ¶ 64.) To resolve the Acquinity Matter, Katz entered into a stipulated final judgment and permanent injunction order that prohibited him from engaging in false or misleading practices in connection with the sale of "any product or service" in the future (the "2014 Permanent Injunction"). (*Id.* ¶¶ 66-67.)

According to the FAC, Katz "formed and operated" On Point beginning in or around January 2017. (*Id.* ¶¶ 57, 79, 84.) The Receiver alleges that between "approximately January 2017 and December 2019, among other lines of business not relevant to the [the Receiver's] claims," On Point "created and operated approximately ninety-seven (97) 'paid guide' businesses via certain 'portal sites' and approximately one hundred and four (104) 'transaction sites.'"[2] (*Id.* ¶ 57.) Consumers were directed to these "paid guide" sites when searching for "information on how to obtain government services, such as to renew a driver's license or similar state-provided services." (*Id.* ¶ 58.) In reality, however, consumers could not "obtain the advertised services, as advertised" on On Point's paid guide sites. (*Id.* ¶ 61.) Instead, in exchange for payment,

---

[2] Notably, in the FAC, the Receiver does not identify any of these dozens of alleged paid guide sites by name or URL.

consumers received electronic "guides" compiling publicly available information.[3] (*Id.* ¶¶ 59-61, 87.)

The Receiver asserts that beginning in or around May 2017, Ms. Melton, who was then an attorney at Baker, advised On Point with respect to certain of its "business models and websites to determine whether they complied with applicable laws," including the FTC Act. (*Id.* ¶¶ 34, 71.) The Receiver further alleges that in or around October 2018, Ms. Melton left Baker and became a partner at Crowell, where she and others continued to provide compliance-related advice to On Point. (*Id.* ¶¶ 77-78.)

### B. The FTC Sues On Point

In 2019, the FTC brought an enforcement action against On Point, alleging that On Point engaged in deceptive acts or practices within the meaning of Section 5(a) of the FTC Act, 15 U.S.C. § 45 (the "Enforcement Action"). (*Id.* ¶¶ 7-8, 85; *see* Complaint, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Dec. 9, 2019), ECF No. 1.)[4] In the Enforcement

---

[3] The Receiver's definition of "paid guide" site is a moving target, and one that appears to shift at the Receiver's convenience. In one part of the FAC, the Receiver defines "paid guide" sites to include On Point's sites that "purported to provide concierge services for government agencies." (FAC ¶ 57.) But elsewhere—including in the FAC itself—the Receiver draws clear distinctions between On Point's paid guide sites, which the Receiver discontinued, and its concierge sites, which the Receiver determined could continue to operate with certain modifications. (*See, e.g.*, *id.* ¶ 11 (Receiver "discontinued all paid guide websites and corrected the non-compliant websites, including concierge services and Freemium sites"); Receiver's Mot. to Approve Modified Templates for Entity Defendants' Websites at 2 n.1, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Mar. 13, 2020), ECF No. 169 (noting that Receiver discontinued On Point's paid guide sites); *id.* at 2 (On Point's concierge "pay-for-services sites could be operated nondeceptively, otherwise legally and profitably."); *id.* at 5 (discussing On Point's "e-Commerce sites, which provide concierge assistance to a user for a fee."); *see also* Report Regarding Proposed Modified Websites and Practices at 7-9, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Mar. 13, 2020) (hereinafter, "Website Report"), ECF No. 169-10 (detailing proposed modifications to concierge sites).)

[4] The Court may take judicial notice of the filings in the related FTC actions. *See, e.g.*, *Baker v. Sepich*, No. 18-cv-81595, 2021 WL 5768069, at *3 (S.D. Fla. Oct. 28, 2021) ("As a general matter, courts routinely take judicial notice of public records, including court filings."), *aff'd,* 2022 WL

Action, the court held that On Point's websites were deceptive within the meaning of Section 5(a). (FAC ¶¶ 86-89.) Specifically, in its summary judgment decision and order, the court found that the representations on On Point's websites "could lead a reasonably prudent consumer to believe that they were going to renew their license or car registration on these websites. But consumers did not receive these services. Rather, for nearly $30 each, consumers received a pdf guide with information that could otherwise be accessed for free from the government." (*Id.* ¶ 87.)

In February 2020, the FTC also initiated a contempt action against Katz and several related On Point entities in the Acquinity Matter (the "Contempt Proceeding"). (*Id.* ¶¶ 91-92; *see* Order to Show Cause, *FTC v. Acquinity Interactive, LLC*, No. 14-cv-60166 (RNS) (S.D. Fla. Feb. 14, 2020), ECF No. 136.) As set forth in the FAC, the FTC alleged in the Contempt Proceeding that Katz and On Point "operated a deceptive business that . . . used deceptive websites to lure consumers into giving up money and personal information in direct violations of the terms of the" 2014 Permanent Injunction. (FAC ¶ 92.) In the Contempt Proceeding, the court ultimately entered a summary contempt order against Katz, On Point, and Brent Levison, On Point's Chief Administrative Officer and Senior Vice President of Products. (*Id.* ¶ 96; *FTC v. Acquinity Interactive, LLC*, No. 14-60166-Civ-Scola, 2021 WL 4840585, at *4 (S.D. Fla. Sept. 29, 2021).) The court concluded that these individuals and entities "had actual notice" of the 2014 Permanent Injunction and "acted in active concert or participation . . . in assisting Katz [to] carry out the deceptive scheme." (FAC ¶ 96.)

---

4594318 (11th Cir. Sept. 30, 2022). The FTC's Enforcement Action and the Acquinity Matter both remain pending in this district before the Hon. Robert N. Scola.

In November 2021, the court held a contemporaneous bench trial and show-cause hearing in the Enforcement Action and Contempt Proceeding, respectively, on the claims remaining after the summary judgment and summary contempt orders. (*See id.* ¶¶ 17, 98; Verdict and Order Following Non-Jury Trial, *FTC v. On Point Global, LLC*, No. 19-cv-25046-RNS (S.D. Fla. Nov. 16, 2021) (hereinafter, "Verdict and Order"), ECF No. 579.) In its verdict and order following those proceedings, the court found On Point and certain principals jointly and severally liable for contempt damages. (Verdict and Order at 2-3.)

Instead of finding a definite amount of damages, however, the court held those defendants jointly and severally liable for an as-yet undetermined amount of damages "not to exceed $102,768,235.47." (*Id.* at 2; FAC ¶ 17.) The final amount of damages will be—though, to date, has not been—determined by a claims process implemented by the Receiver, whereby dissatisfied On Point customers submit, and the Receiver must approve or deny, claims for reimbursement. (FAC ¶¶ 21-23.) That claims process began in or around February 2022 and remains ongoing. (*See* Order Granting Receiver's Mot. to Approve (A) Noticing & Claims Admin. Process & (B) Plan of Distribution, *FTC v. On Point Global LLC*, No. 19-cv-25046-RNS (S.D. Fla. Feb. 10, 2022) (hereinafter, "Claims Process Order"), ECF No. 607.) A "reconsideration process for claimants with disallowed claims" and FTC audit remain pending steps in that continuing process. (*Id.* ¶¶ 22-23.) The Receiver asserts that while she "initially determined that the total amount of allowed claims . . . is $8,471,711.74," the final amount of damages remains "to be determined by the Claims Process." (*Id.* ¶¶ 23, 114, 130.) The Receiver provides no date for the conclusion of the claims process.

### C. The Receiver's Amended Complaint

On August 16, 2022, the Receiver filed this action alleging one count of legal malpractice stemming from the Defendants' work for Katz and On Point before On Point was placed into

6

receivership.  (*See* ECF No. 1.)  After the Defendants moved to dismiss the Receiver's original complaint, the Receiver filed the FAC.  In the FAC, the Receiver alleges that "Defendants knew or should have known that the [On Point] Entities' business models and websites as then operating contravened federal consumer protection laws, including the FTC Act, and they negligently failed to warn the [On Point] Entities that they should make changes and/or modify their business practices to be in compliance with" those laws.  (FAC ¶ 3.)

The Receiver alleges that On Point's damages include an as-yet undetermined amount of contempt damages of "at least $19,268,579.26," presumably to be paid by On Point as opposed to its co-defendants in the Contempt Proceeding.  (*Id.* ¶ 25.)  The Receiver also claims that On Point is entitled to recover "at least $3,106,753" of unspecified "professionals' fees and costs," which appear to include, but may not be limited to, "the Receivership fees and costs incurred and attorneys' fees and costs incurred to defend the [On Point] Entities in the FTC Enforcement Action and the Acquinity Matter."  (*Id.* ¶¶ 26, 114, 130.)

## ARGUMENT

**I.     THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE RECEIVER FAILS TO PLEAD FACTS SUFFICIENT TO SHOW A RIPE DISPUTE**

**A.     Legal Standard**

"Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  A federal court cannot exercise subject matter jurisdiction over a case where the constitutional requirement of ripeness is not satisfied.  *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  Ripeness is a question of "whether this is the correct *time* for the complainant to bring the action." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1174 (11th Cir. 2006) (quotations omitted) (emphasis in

original). "To decide whether an issue is ripe for judicial review, courts will examine both the fitness of the issue for judicial decision and the hardship on the parties if a court withholds consideration." *Id.*

A motion to dismiss under Rule 12(b)(1) "may challenge the court's subject matter jurisdiction based on the face of the pleadings or based on the actual substantive facts of the case." *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1284 (S.D. Fla. 2007), *aff'd as modified by* 281 F. App'x 853 (11th Cir. 2008). Facial challenges, such as Crowell's, "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotations omitted).

### B. The Receiver's Claims Are Not Ripe

The Receiver's claims are not ripe for judicial review under Article III. As a result, the Court lacks subject matter jurisdiction. *Digital Props., Inc.*, 121 F.3d at 591.

To determine whether a plaintiff's claims are ripe, courts "must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* at 589 (quotations omitted). Where, as here, a plaintiff's claims have not accrued, they are not ripe for judicial determination. *See, e.g.*, *Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*, No. 17-cv-81290, 2018 WL 10152613, at *2-3 (S.D. Fla. June 18, 2018) (insured's negligence claim had not accrued, and thus was not cognizable). Moreover, claims are unripe for adjudication where they seek relief for an "uncertain sanction," and a "district court has not ordered a specific amount to be recovered." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (removed receiver sought premature adjudication where "[t]he amount of fees, if any, to be recovered from her by the new

8

receiver is yet unknown . . . . It is well settled that this kind of uncertain sanction is not ripe for our judicial review.").

Under Florida law, a negligence claim "does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1338 (11th Cir. 2001) (quotations omitted). "Instead of setting a fine-line, Florida courts hold that a malpractice action accrues when it is reasonably clear that the client has actually suffered some damage from legal advice or services." *Id.* at 1339 (quotations omitted). The Florida Supreme Court has held that a transactional "negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings." *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001); *Perez-Abreu, Zamora & De La Fe, P.A. v. Taracido*, 790 So. 2d 1051, 1054 (Fla. 2001) (applying *Blumberg* to transactional legal malpractice action). Moreover, "[k]nowledge of potential harm from malpractice is not sufficient to begin the limitations period." *Taracido v. Perez-Abreu, Zamora & De La Fe, P.A.*, 705 So. 2d 41, 42 (Fla. 3d DCA 1997), *aff'd*, 790 So. 2d 1051 (Fla. 2001).

Here, the judicial proceedings underlying the Receiver's purported claims—the FTC actions before Judge Scola—remain pending, and a specific amount of damages has not yet been determined or entered as part of a final judgment. As alleged in the FAC, the court in the Contempt Proceeding concluded that contempt damages were "not to exceed $102,768,235.47," but the calculation of any potential exposure remains subject to the ongoing claims process administered by the Receiver. (FAC ¶¶ 17, 21, 98.) Indeed, to date, the claims process administered by the Receiver has reduced the potential amount of On Point's contempt damages by over 80%, to approximately $19 million. (*Id.* ¶¶ 25, 114, 130.) But as the Receiver

9

acknowledges, this is not a final damages figure; it remains subject to the "disallowed claims reconsideration process and FTC audit." (*Id.* ¶ 23.) The alleged contempt damages therefore cannot and will not be ascertainable until after those processes conclude.

Accordingly, here, "no concrete injury [will arise] until a final court decision" terminating the claims process and crystallizing On Point's injury. *Porter*, 241 F.3d at 1339. This case is thus distinguishable from circumstances like those addressed by the Eleventh Circuit in *Porter*, where the plaintiff suffered a concrete injury by taking "steps to cure the potential problem" before "any court determination." *Id.* There, the trustee-plaintiffs took affirmative steps to remedy potential legal malpractice before relying on a will and deed of trust that they believed, as drafted, harmed the interests of the estate they represented. *See id.* at 1337-38. Those ameliorative steps included hiring another law firm, lobbying for a change in Florida law, and obtaining private-letter rulings from the IRS. *Id.* The court concluded that the trustees "suffered a concrete injury as to the expenses they incurred to remedy the alleged malpractice." *Id.* at 1339.

By contrast, the Receiver here makes no such allegations of concretely calculable harm to date, and therefore fails to allege facts showing that On Point's injury has accrued. To the contrary, the Receiver expressly states that the contempt damages alleged in the FAC remain in flux. As set forth in the FAC, while the Receiver "initially determined" a total amount of allowed claims during the claims process, she reiterates that the final amount of damages remains "to be determined by the Claims Process," (FAC ¶¶ 114, 130), and that the damages "will increase upon the conclusion of the disallowed claims reconsideration process and FTC audit." (*Id.* ¶ 23.) The Receiver does not state when those processes might conclude, nor does she even estimate what additional damages amounts could result. Indeed, because Judge Scola

10

"has not ordered a specific amount to be recovered," the Receiver's claims sound in the kind of "uncertain sanction" that the Eleventh Circuit has found unripe for review. *Rivera*, 613 F.3d at 1050. Therefore, the Receiver's claims are not ripe and, accordingly, cannot support subject matter jurisdiction in this case.

## II. THE RECEIVER FAILS TO PLEAD A BASIS TO RECOVER ATTORNEYS' FEES AND COSTS

The Receiver alleges that On Point has incurred over $3 million of unspecified "professionals' fees and costs." (FAC ¶ 26.) These fees and costs allegedly include "the Receivership fees and costs and attorneys' fees and costs incurred to defend the [On Point] Entities in the FTC Enforcement Action and the Acquinity Matter." (*Id.* ¶¶ 114, 130.) The Court should strike the Receiver's demands for attorneys' fees and costs for failure to plead a basis to recover such damages. Notably, the Receiver has been on notice of this deficiency since Crowell filed its original motion to dismiss, and fails to cure it in the FAC.

Federal Rule of Civil Procedure 12(f) permits courts to "strike from a pleading an . . . immaterial [or] impertinent . . . matter." Fed. R. Civ. P. 12(f). Courts have "broad discretion" to decide motions to strike, *see Deltoro v. Fresh Mkt., Inc.*, No. 14-61210-civ, 2014 WL 11776942, at *2 (S.D. Fla. Nov. 25, 2014) (quotations omitted), and courts in this district grant motions to strike requests for attorneys' fees where, as here, the claimant fails to state a valid basis to recover such fees. *Queen for a Day, LLC v. J. Milton & Assocs., Inc.*, No. 19-cv-24308, 2020 WL 12188440, at *1 (S.D. Fla. Aug. 20, 2020); *Deltoro*, 2014 WL 11776942, at *2 (granting motion to strike request for attorneys' fees); *see also Dawson v. York Specialized Loss Adjusting Div. of York Risk Servs. Grp., Inc.*, No. 20-60065-civ, 2020 WL 13016824, at *2-3 (S.D. Fla. Nov. 25, 2020) (same).

11

Florida follows the "American Rule" on attorneys' fees: absent a statute or agreement of the parties authorizing otherwise, each party pays its own fees. *See, e.g.*, *Perez-Abreu*, 790 So. 2d at 1054; *Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1309 (M.D. Fla. 2015) (citing *Trytek v. Gale Indus. Inc.*, 3 So. 3d 1194, 1198 (Fla. 2009)). The Receiver purports to seek recovery of "attorneys' fees and costs" incurred by On Point in defending the Enforcement Action and the Acquinity Matter, "Receivership fees and costs," and other unspecified "professionals' fees and costs." (FAC ¶¶ 26, 114, 130.) But the Receiver still fails in the FAC to plead the existence of any statute or contract authorizing her entitlement to fee shifting. Courts may "not infer grounds for attorneys' fees" where none is pleaded. *Gibraltar Secs. v. Bitter*, No. 97-1587-civ, 1997 WL 728089, at *5 (M.D. Fla. Oct. 24, 1997). The Court should strike the Receiver's requests for these special damages.

## CONCLUSION

For the foregoing reasons, Crowell respectfully requests that the Court dismiss the Receiver's FAC in its entirety for lack of subject matter jurisdiction. Crowell also respectfully requests that the Court strike the Receiver's requests for attorneys' fees and costs.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Crowell respectfully requests that the Court hold a hearing on this and Defendant Melton's contemporaneously filed motions to dismiss. A hearing will assist the Court in understanding the factual and legal deficiencies of the Receiver's FAC and the complexities of the ongoing, underlying FTC actions. A hearing will also assist the Court in resolving the jurisdictional challenge raised herein. In light of the multiple Defendants in this action, Crowell estimates that one (1) hour would be appropriate for the Court to hear the movants' arguments on both motions, and the Receiver's opposition thereto.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

Counsel for Crowell certify that Alejandro H. Cruz, Crowell's counsel, and Tom Culmo, the Receiver's counsel, conferred via email on January 9 and 10, 2023, in connection with this and Ms. Melton's contemporaneously filed motions to dismiss. Counsel for the Receiver confirmed that the Receiver will oppose these motions.

Dated: January 10, 2023

                Respectfully submitted,

                By: */s/ Daniel S. Bitran*
                Isaac J. Mitrani (No. 348538)
                Daniel S. Bitran (No. 124041)
                MITRANI, RYNOR, ADAMSKY &
                TOLAND, P.A.
                301 Arthur Godfrey Road, Penthouse
                Miami Beach, Florida 33140
                Tel: (305) 358-0050
                *imitrani@mitrani.com*
                *dbitran@mitrani.com*

                Frederick B. Warder III (*pro hac vice*)
                Alejandro H. Cruz (*pro hac vice*)
                Dakotah M. Burns (*pro hac vice*)
                PATTERSON BELKNAP WEBB & TYLER LLP
                1133 Avenue of the Americas
                New York, NY 10036
                Tel: (212) 336-2000
                *fbwarder@pbwt.com*
                *acruz@pbwt.com*
                *dburns@pbwt.com*

                *Attorneys for Defendant*
                *Crowell & Moring LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed and served via the CM/ECF filing system on January 10, 2023 upon:

Thomas A. Culmo, Esq.
Kenneth D. Murena, Esq.
DAMIAN & VALORI LLP | CULMO TRIAL ATTORNEYS, P.A.
1000 Brickell Avenue
Suite 1020
Miami, FL 33131
tom@culmolaw.com
kmurena@dvllp.com

Aaron Uri Raskas, Eq.
GUNSTER, YOAKLEY, STEWART, P.A.
600 Brickell Avenue
Suite 3500
Miami, FL 33131
araskas@gunster.com
avalido@gunster.com
eservice@gunster.com

David Richardson Atkinson, Jr., Esq.
Stephen Carli Richman, Esq.
GUNSTER, YOAKLEY, STEWART, P.A.
777 S. Flagler Drive
Suite 500 East
West Palm Beach, FL 33401
datkinson@gunster.com
srichman@gunster.com
mmargolese@gunster.com
jfirogenis@gunster.com

*/s/ Daniel S. Bitran*