## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1-22-cv-22606-JLK

MELANIE E. DAMIAN, as
Receiver for On Point Global LLC, *et. al*.,

      Plaintiff,

v.

HOLLY MELTON, BAKER & HOSTETLER LLP,
and CROWELL & MORING LLP,

      Defendants.

_____/

## DEFENDANT BAKER & HOSTETLER LLP'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6), MEMORANDUM OF LAW IN SUPPORT, AND REQUEST FOR JUDICIAL NOTICE

DAVID R. ATKINSON
Florida Bar No.: 767239
datkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
STEPHEN C. RICHMAN
Florida Bar No.: 1015692
srichman@gunster.com
jfirogenis@gunster.com
ARON U. RASKAS
Florida Bar No.: 1022416
araskas@gunster.com
mmotola@gunster.com

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677

*Counsel for Defendant*
*Baker & Hostetler, LLP*

Defendant Baker & Hostetler LLP ("**BakerHostetler**") moves to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## I.     INTRODUCTION

The Plaintiff sues BakerHostetler for legal malpractice, on behalf of On Point Global LLC and its affiliated entities (the "**OPG Entities**"), seeking damages arising from adverse findings in a 2019 enforcement action brought by the Federal Trade Commission (the "**FTC**"). The OPG Entities operated a network of websites, which the court presiding over the 2019 enforcement action found deceived consumers into thinking they were purchasing government-related services. The Plaintiff alleges these adverse findings, and the imposition of alleged compensatory sanctions, were somehow the result of BakerHostetler's negligent legal advice.

Between January 2017 and December 2019, the OPG Entities operated numerous "paid guide" websites. These websites suggested to consumers that they could obtain government-like services, such as renewals of drivers' licenses and car registrations, in exchange for a fee. In most cases, however, consumers who paid the fee were merely provided an electronic file collating publicly available information. In 2019, the FTC brought an enforcement action against the OPG Entities, alleging that certain of its websites were deceptive within the meaning of Section 5(a) of the FTC Act, 15 U.S.C. § 45. The court found the OPG Entities liable for engaging in deceptive business practices in violation of the FTC Act.

The Amended Complaint should be dismissed on several independent grounds. First, the Amended Complaint fails to establish that BakerHostetler is subject to personal jurisdiction in Florida.[1] Specific jurisdiction is lacking because none of the alleged acts and communications with a connection to Florida have the required nexus to the claims alleged in the Amended Complaint. Merely alleging acts in Florida or communications into Florida that do not directly relate to the cause of action asserted does not establish specific jurisdiction. The Plaintiff's remaining

---

[1]     To allow the Court to properly evaluate this challenge, BakerHostetler requests judicial notice of certain publicly filed court documents from the 2019 FTC Enforcement Action, which are attached hereto as Exhibits C-E. Fed. R. Evid. 201(b); *see Access Pictures, LLC v. Sony Pictures Home Entertainment Inc.*, 2019 WL 12536021, at *2 (S.D. Fla. Nov 19, 2019) (finding judicial notice proper for "pleadings, orders and other documents from a prior action"); *see Horne v. Potter*, 392 F. App'x. 800, 802 (11th Cir. 2010) (unpublished); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

jurisdictional allegations are so vague, conclusory, and generic that they fail to establish a prima facie case of jurisdiction, fail to meet federal pleading standards, and implicate constitutional due process concerns. General jurisdiction is lacking because the Plaintiff fails to plead that BakerHostetler is "at home" in Florida and the evidence BakerHostetler attaches to this Motion confirms that BakerHostetler is not "at home" in Florida, as required to establish general jurisdiction.

Second, the Amended Complaint is subject to dismissal for a myriad of pleading deficiencies. The Plaintiff's claim is not ripe. The Plaintiff also fails to plead any theory of causation, a required element of legal malpractice. Finally, the Plaintiff fails to plead any claims or facts to support an award of damages for breach of fiduciary duty and breach of contract.[2]

For any one of these reasons, the Amended Complaint should be dismissed.[3]

## II.    FACTUAL ALLEGATIONS[4]

With respect to the legal work allegedly performed by BakerHostetler that is the subject of this legal malpractice action, the Plaintiff alleges:

- On March 20, 2017, Holly Melton ("**Melton**"), while employed by BakerHostetler, "emailed a training deck for Direct Market, LLC to Brent Levison . . . concerning compliance with Section 5 of the FTC Act with respect to disclosures and deceptive practices, among other compliance issues." Amended Compl. ¶ 44.

- On March 21, 2017, Melton "traveled to South Florida to the OPG Entities' offices . . . and provided legal compliance training." *Id.* at ¶ 45.

- In or about May 2017, the OPG Entities retained Melton and BakerHostetler "to conduct a compliance analysis and assess the legal risks of the [OPG Entities'] business models and websites to determine whether they complied with applicable laws." *Id.* at ¶ 71.

---

[2]    While the Amended Complaint purports to state only a single claim for "legal malpractice," the Plaintiff baselessly requests damages resulting from supposed, yet unspecified, "breaches of fiduciary duty, and breaches of contract."

[3]    BakerHostetler adopts Defendant Crowell & Moring LLP's legal arguments in Section II of its Motion to Dismiss. *See* ECF No. 37.

[4]    Recognizing that, for purposes of this Motion, the Court must accept the well-pled allegations in the Amended Complaint as true, BakerHostetler includes relevant factual allegations as alleged in the Amended Complaint. BakerHostetler does not, in recounting these allegations, concede or admit their veracity and reserves all rights to contest the Amended Complaint's allegations should that ever become necessary at the appropriate time.

- On May 15, 2017, Melton "mailed a letter to Direct Market, LLC . . . wherein Melton discusses her analysis of the OPG Entities' new business model offering services regarding processing of vehicle registration renewals . . ." *Id.* at ¶ 46.

- In or about May 2017, BakerHostetler "conducted a legal compliance analysis" and "failed to raise any substantive concerns regarding the business model." *Id.* at ¶ 72.

- Throughout May and June 2017, Melton, while employed at BakerHostetler "prepared numerous correspondence on Baker letterhead" which assessed "the legal risk of a new business model," which would "provide online 'concierge services' to residents of certain enumerated states." *Id.* at ¶ 73.

- Melton concluded that her "legal research did not uncover any legal challenges to this type of business model" and that the business model "presents a 'low legal risk,' if certain disclosures were made on the websites." *Id.* at ¶ 74.

- In September 2017, Charlie Eissa requested that Melton and BakerHostetler conduct a "'thorough legal and compliance review'" of the "entire business models and websites" to "'ensure total compliance.'" *Id.* at ¶ 75. Melton and BakerHostetler "were asked to and agreed to review 16 website properties and marketing processes for website disclaimers, data collection, landing pages site content, the Guide, text communications, and e-mail communications." *Id.* at ¶ 76.  The "Freemium and paid-guide websites were provided for review in substantially the form found non-compliant by the Court in the FTC Enforcement Action." *Id.*

- On October 4, 2017, Melton "sent an email to Charlie Eissa . . . assuring him that Baker was performing a large-scale review of the OPG Entities . . ." *Id.* at ¶ 47.

- On October 19, 2017, Melton emailed Brent Levison "a Memorandum that outlined the changes suggested to bring the Freemium sites into compliance." *Id.* at ¶ 48.

With respect to the 2019 FTC Enforcement Action and the claims and damages sought in this case, the Plaintiff alleges:

- The FTC sued the OPG Entities in 2019 for violating the FTC Act. *Id.* at ¶¶ 81 & 85.[5]

---

[5]     Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the Complaint in the 2019 FTC Enforcement Action, ECF No. 1, (the "**2019 FTC Complaint**") and attached hereto as Exhibit C.

- The court issued orders appointing the Plaintiff Melanie E. Damian as receiver (the "**Plaintiff**") on December 13, 2019 and January 14, 2020. *Id.* at ¶¶ 9 &10.

- On September 29, 2021, the court found that the "paid guide" and "Freemium" websites violated the FTC Act. *Id.* at ¶ 14.[6] Specifically, the court found that the statements "Renew your License" and "Renew Car Registration" violated the FTC Act because the statements "could lead a reasonably prudent consumer to believe that they were going to renew their license and car registration on these websites. But consumers did not receive these services." *Id.* at ¶ 87.

- On November 16, 2021, the court entered its Verdict and Order Following Non-Jury Trial wherein the court ordered the implementation of a claims process and distribution plan and held "certain of the OPG Entities" jointly and severally liable for compensatory contempt damages" and determined that the appropriate measure of damages for the OPG Entities contempt was "the maximum of $102,768,235.47." *Id.* at ¶¶ 17 & 21.[7]

- The Plaintiff sues BakerHostetler for legal malpractice for failing to advise the OPG Entities that their businesses violated the FTC Act and the 2014 Permanent Injunction. *Id.* at ¶¶ 118-122. The Plaintiff seeks "compensatory contempt sanctions which have already totaled over $19 million . . . together with Receivership fees and costs incurred and attorney's fees and costs incurred to defend the OPG Entities in the FTC Enforcement Action and the Acquinity Matter." *Id.* at ¶ 122.

With respect to personal jurisdiction, the Plaintiff alleges:

- The Court has personal jurisdiction under Florida's Long Arm Statute because BakerHostetler "committed tortious acts of legal malpractice in Florida via interstate communications and personal visits to Florida" including providing "legal advice in Florida" and receiving transfers of funds from the OPG Entities operating in the Southern District of Florida. *Id.* at ¶¶ 37 & 38.

---

[6]     Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the September 29, 2021 summary judgment order in the 2019 FTC Enforcement Action, ECF No. 528, (the "**2019 FTC Summary Judgment Order**") and attached hereto as Exhibit D.

[7]     Under the authority cited in Footnote 1, above, BakerHostetler requests that the Court take judicial notice of the November 16, 2021 verdict in the 2019 FTC Enforcement Action, ECF No. 579, (the "**Verdict**") and attached hereto as Exhibit E.

- BakerHostetler has sufficient minimum contacts with Florida to satisfy Constitutional due process requirements because Melton provided "legal advice directly to individuals and entities in South Florida," the legal advice contributed to violations of the FTC Act in Florida, and the legal advice contributed to the substantial judgment and resulting damages to the OPG Entities as ordered by the Southern District of Florida. *Id.* at ¶ 39.

- BakerHostetler has "numerous partners who are members of the Florida Bar," has filed, litigated, and defended numerous significant lawsuits in South Florida, and acted through Melton. *Id.* at ¶ 41.

- BakerHostetler is an "international law firm with an office in Orlando, Florida . . ." and thus "regularly conducts business in Florida." *Id.* at ¶ 41, n.4.

- BakerHostetler commenced its "business relationship with the OPG Entities pursuant to retainer agreements that were signed by the OPG Entities in Miami, Florida" and "sent the OPG Entities invoices for services rendered to the OPG Entities in Miami, Florida and those invoices were paid from accounts held in Miami, Florida." *Id.* at ¶ 42.

## III.   ARGUMENTS & AUTHORITIES[8]

### A.  The Court Lacks Personal Jurisdiction Over BakerHostetler Under Rule 12(b)(2)

Federal courts sitting by supplemental jurisdiction apply the substantive law of the state, but procedural matters are governed by federal law. *Jones v. United Space Alliance, L.L.C.,* 494 F.3d 1306, 1309 (11th Cir. 2007); *see also Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1259 (11th Cir. 2015). Accordingly, the Court must apply Florida substantive law and federal procedural law to evaluate personal jurisdiction.

---

[8]     BakerHostetler believes New York substantive law likely governs the state law claims at issue in this lawsuit. Determination of the application of foreign law is a "comprehensive," issue-by-issue analysis, not to be raised until there is a true conflict between the forum law and the proposed foreign law. *Doe v. Roe*, 2022 WL 1447378, at *3 (11th Cir. May 9, 2022); *Judge v. Am. Motor Corp.*, 908 F. 2d 1565, 1568 (11th Cir. 1990); *see also Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000). Nor should choice of law be raised before the summary judgment stage and in the absence of a developed factual record. *Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, 505 F.Supp. 3d 1293, 1303 (M.D. Fla. 2020) (citing 11th Circuit precedent); *AXA Pac. Ins. Co. v. Piper Aircraft Corp. Irrevocable Tr.*, 2017 WL 1439936, at *1 (S.D. Fla. Jan. 25, 2017). Accordingly, BakerHostetler is not waiving, and expressly preserves, its rights to raise choice of law and seek the application of New York law at the appropriate time.

To establish personal jurisdiction a plaintiff must allege facts sufficient to establish that: (1) jurisdiction exists under Florida's Long Arm Statute; and (2) the nonresident defendant has sufficient minimum contacts with Florida to satisfy due process concerns. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Personal jurisdiction can be either general, providing jurisdiction over any claims regardless of a connection between the claims and the nonresident defendant's contacts with Florida, or specific, only allowing jurisdiction over claims arising from the nonresident defendant's particular contacts with the state. *See* Fla. Stat. § 48.193; *see Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (the term "arising from" creates a predicate "connexity requirement," requiring a causal connection between the nonresident defendant's activities in Florida and the plaintiff's cause of action). Thus, for specific jurisdiction, the only contacts with Florida that are relevant are those contacts that have a direct connection to the claims in the lawsuit. *Id.*

As a threshold matter, and before evaluating whether the non-resident defendant's communications into Florida establish specific jurisdiction under § 48.193(1)(a)(2), the court must determine whether the allegations of the complaint state a cause of action. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010); *see Wendt*, 822 So. 2d at 1260; s*ee Hvide v. Holt Fin. Ltd.*, 2021 WL 8154846, at *8 (S.D. Fla. Sept. 13, 2021).

The Plaintiff does not plead general jurisdiction.[9] Rather, the allegations in the Amended Complaint focus on a single prong of the specific jurisdiction section of the Florida Long Arm Statute by alleging that BakerHostetler "committed tortious acts of legal malpractice in Florida via interstate communications and personal visits to Florida." Amended Compl. at ¶ 37.

Florida law recognizes limited circumstances where a tort can be deemed committed "within" Florida, without the tortfeasor being physically in the state. One such example is where a defamatory communication is sent from another state into Florida. *Acquandro v. Bergeron*, 778 So. 2d 1034, 1035 (Fla. 4th DCA 2001). For this limited exception to the physical presence requirement to apply, however, the plaintiff must identify a specific communication that was sent into Florida that was "tortious in and of itself." *Reiss v. Ocean World, S.A.*, 11 So. 3d 404, 406 (Fla. 4th DCA 2009); *Koock v. Sugar & Felsenthal LLP*, 2010 WL 1223794, at *4-5 (M.D. Fla. March 25, 2010) (no specific jurisdiction over Illinois law firm based on alleged involvement in

---

[9] *See* Section III(A)(iv), *infra*.

Florida Ponzi scheme when lawyers never traveled to Florida for representation and communications directed into Florida were not tortious acts in themselves).

Significantly, the above analysis does not focus on whether the plaintiff ultimately sustained damages in Florida. *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013). Personal jurisdiction also does not exist merely because a Florida resident suffers damages in Florida due to the alleged tortious conduct. *Metnick & Levy*, 123 So. 3d at 645; *see Korman v. Kent*, 821 So. 2d 408, 411 (Fla. 4th DCA 2002). What matters is whether the Plaintiff has pled that a tort was committed "within" Florida.

Federal courts have repeatedly held that the long arm statute must be "strictly construed" and that "any doubts about applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *In re Takata Airbag Prods. Liab. Litig.*, 396 F.Supp. 3d 1101, 1140 (S.D. Fla. 2019) (citing *Keston v. FirstCollect, Inc.*, 523 Supp. 2d 1348, 1352 n.2 (S.D. Fla. 2007)).

If a complaint states a cause of action, the procedure for evaluating specific jurisdiction begins with the requirement that a plaintiff present enough evidence to withstand a directed verdict, i.e., to establish a prima facie case. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Madara*, 916 F.2d at 1514. In the event "jurisdiction has been challenged by affidavit or other competent evidence, the plaintiff must sustain its claim by affidavit or other proof and not by mere reiteration of the allegations of the complaint." *FVD-USA, LLC v. Fabiani*, 2007 WL 9684283, at *3 (S.D. Fla. July 26, 2007) (citing *Dublin v. Peninsular Supply Co.*, 309 So. 2d 207, 208-09 (Fla. 4th DCA 1975)). If the district court cannot "reconcile" the affidavits, it should hold an evidentiary hearing on the jurisdictional issue. *Abramson v. Walt Disney Co.*, 132 F. App'x. 273, 275 (11th Cir. 2005). If the Florida Long Arm Statute is satisfied, the court must then determine whether the defendant possesses sufficient minimum contacts in Florida to satisfy the due process requirements of the Fourteenth Amendment. *See Trustees of Columbia Univ. in City of N.Y. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th DCA 2009).

BakerHostetler submits the following declarations in support of this Motion. Declaration of Jonathan B. New, Exhibit A;[10] Declaration of John D. Parker, Exhibit B.

---

[10]      BakerHostetler will be moving the Court, pursuant to Local Rule 5.4(b)(1), for leave to file the redacted language herein and Exhibits A-1 through A-4, attached to the J. New Declaration,

### i.  The Only Alleged Specific Legal Work, with a Connection to Florida, Is Unrelated to the Claims and Damages Alleged in this Case

The only contacts with Florida that are relevant to the specific jurisdiction analysis are those contacts that BakerHostetler had with Florida that have a direct connection to the claims in this lawsuit. *Wendt*, 822 So. 2d at 1260 (Fla. 2002). Additionally, where, as here, the Plaintiff relies on communications allegedly sent into Florida, the communications must be tortious in and of themselves. *Koock*, 2010 WL 1223794 at *4-5; *Reiss*, 11 So. 3d at 406. As shown below, none of the specifically alleged BakerHostetler contacts or communications with Florida constitute a cause of action in and of themselves and thus cannot be considered in accessing specific jurisdiction. *Id.*

In the Amended Complaint, the Plaintiff identified six specific contacts or communications by BakerHostetler with or into Florida as the basis for specific jurisdiction:

1. a March 20, 2017 email from BakerHostetler to Brent Levison, attaching an FTC compliance training deck (Amended Compl. at ¶ 44);

2. a March 21, 2017 visit by Melton to the OPG Entities' office in Florida to provide compliance training to certain OPG Entities using the above-referenced training deck (*Id.* at ¶ 45);

3. a May 15, 2017 advice memo BakerHostetler provided to Brent Levison (*Id.* at ¶¶ 46 & 73-74);

4. a June 15, 2017 advice memo BakerHostetler provided to Brent Levison (*Id.* at ¶¶ 73-74);

5. an October 4, 2017 email from Melton to Charlie Eissa acknowledging his prior request that BakerHostetler perform certain legal work (*Id.* at ¶¶ 47 & 75); and

6. an October 19, 2017 email from Melton to Brent Levison attaching an advice memo (*Id.* at ¶ 48).

It is telling the Plaintiff does not attach any of the above-described communications or documents as exhibits to the Amended Complaint. Undoubtedly, that is because a review of these documents shows they do not have a connection to the alleged tort or they negate the existence of a cause of action. *See, PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010); *see Wendt*, 822 So. 2d at 1260; s*ee Hvide v. Holt Fin. Ltd.*, 2021 WL 8154846,

---

under seal (for reasons stated in that motion). Therefore, as further provided in Local Rule 5.4(b)(1), the language and those exhibits have been redacted from the public filing.

at *8 (S.D. Fla. Sept. 13, 2021).This is because they: a) do not relate to the business models found to be deficient in the 2019 FTC Enforcement Action; or b) show that BakerHostetler gave the OPG Entities the correct legal advice concerning the Freemium websites' compliance with the FTC Act, which the OPG Entities ignored. *See* J. New Declaration, Exhibit A; *see FVD-USA, LLC v. Fabiani*, 2007 WL 9684283, at *3 (S.D. Fla. July 26, 2007).

### a. The Alleged March 2017 Contacts/Communications

The Plaintiff alleges that on March 20, 2017, Melton emailed Levison a training deck, which discussed a basic overview of consumer protection principles, .com disclosures, TCPA compliance and developments, FTC lead generation issues, CAN-SPAM, and data security. Amended Compl., at ¶ 44. The Plaintiff further alleges that the next day, March 21, 2017, Melton traveled into Miami to perform the compliance training contained in the training deck. *Id.* at ¶ 45.

While the Plaintiff generally alleges that Melton's "failure to provide an appropriate compliance analysis as contained in the training deck and as presented to the OPG Entities constitutes legal malpractice that led to the entry of the Verdict in the FTC Enforcement Action and the Acquinity Matter contempt sanctions for these Entities," there is nothing in the training deck connecting it to the conduct found to be in violation of the FTC Act in the 2019 FTC Enforcement Action. *Id.* at ¶ 44; *see* Training Deck, Exhibit A-1; *see* J. New Declaration, Exhibit A; *see* 2019 Summary Judgment Order, Exhibit D.

Based on the Plaintiff's judicial admission that the OPG Entities did not retain BakerHostetler until May 2017, *see* Amended Compl. at ¶ 71, none of the March 2017 contacts or communications may be used to establish specific jurisdiction. *E.g. Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla. 4th DCA 2003) (finding lack of personal jurisdiction based on communications where "[n]one of the alleged causes of action would depend upon proof of either the existence or the content of any of the communications … into Florida"); *Canale v. Rubin*, 20 So. 3d 463, 469 (Fla. 2d DCA 2009); *Consol. Energy Inc. v. Strumor*, 920 So. 2d 829, 832 (Fla. 4th DCA 2006). Further, the training deck alleged to be tortious legal advice explicitly includes a ███████████████████████, which states:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████

9

Training Deck, Exhibit A-1. Thus, these contacts and communications fail to state a cause of action and provide no basis for the Court to exercise specific jurisdiction over BakerHostetler.

### b.  The Alleged May/June 2017 Communications

The Plaintiff again references specific legal advice given by BakerHostetler in the May and June 2017 advice memos as a basis for specific jurisdiction. Amended Comp., at ¶¶ 46 & 73-74. However, as previously established, the May and June 2017 advice memos concerned a proposed business model completely distinguishable from the practices the court found deceptive in the 2019 FTC Enforcement Action. *See* J. New Declaration, Exhibit A; *see* 2019 FTC Summary Judgment Order, Exhibit D. These communications cannot satisfy the requirement of a communication sent into Florida that was tortious in and of itself because: a) that business model was not the subject of the 2019 FTC Enforcement Action; b) the advice is not alleged to be wrong advice; and c) that advice did not cause any alleged damages. *Wendt*, 822 So. 2d at 1260; *Koock*, 2010 WL 1223794 at *4-5. So that the Court may have the benefit of reviewing these communications, BakerHostetler attaches them to the Declaration of Jonathan B. New, to wit:

- A May 15, 2017 letter from BakerHostetler; and
- A June 15, 2017 letter from BakerHostetler.

J. New Declaration, Exhibit A. In the May 15, 2017 communication, BakerHostetler opined on the legal risk of a business model



. *Id.* Significantly, in this business model, and

, as well as provide a host of other benefits. *See id.*

This business model was not at issue in the 2019 FTC Enforcement Action. *Id.*; 2019 FTC Complaint, Exhibit C; 2019 FTC Summary Judgment Order, Exhibit D. The FTC did not sue the OPG Entities over the business models discussed in Exhibits A-2 and A-3, and the court did not find that online statements made in support of those business models violated the FTC Act. *Id.*

Rather, in the 2019 FTC Enforcement Action, the court evaluated the "paid-guide" business model, where, in exchange for a fee, the company sold consumers "a pdf guide with information that could otherwise be accessed for free from the government," **but did not actually process the vehicle registration, or obtain the state driving records**. 2019 FTC Summary Judgment Order, Exhibit D. Regarding the "paid-guide" business, the court found that statements on company websites "could lead a reasonably prudent consumer to believe that they were going

to renew their license or car registration. . . .  But consumers did not receive these services." *Id*. at p. 13. In other words, because the websites suggested that the companies would actually process the renewals or obtain the records, when the companies did not, the court found the practices violated the FTC Act. In contrast, the May and June 2017 memos addressed a business model under which the companies would ███████████████████████████████████████████████████ ███████. Because the Plaintiff fails to plead that BakerHostetler directed tortious communications into Florida concerning the "paid-guide" business, the Plaintiff cannot satisfy the connexity requirement of Fla. Stat. § 48.193(1)(a)(2).

In the June 15, 2017 communication, BakerHostetler opined on the legal risk of a business model ████████████████████████████ in certain jurisdictions. *Id*.  Significantly, in this business model, ███████████████████████████████████████████████████████████ ███████████, as well as provide a host of other benefits. *Id*.

This business model was not at issue in the 2019 FTC Enforcement Action. 2019 FTC Complaint, Exhibit C; 2019 FTC Summary Judgment Order, Exhibit D. The FTC did not sue the OPG Entities in the 2019 FTC Enforcement Action over the online vital records retrieval business model, and the court did not find that said business model violated the FTC Act or find damages against the OPG Entities because of said business model.  *Id*.; Verdict, Exhibit E.  In its *Order on Cross Motions for Summary Judgment*, the court found that "[t]he FTC contends that two of On Point's practices—the "paid guide" business and the "freemium" business are deceptive."  *Id*. at p. 12.  Accordingly, none of these communications state a cause of action or can serve as the basis for personal jurisdiction over BakerHostetler.

### c.  The Alleged October 2017 Communications

At the outset, the Plaintiff does not plead that legal advice was given in the October 4, 2017 email from Melton to Charlie Eissa.  Rather, the Plaintiff merely recounts that Melton stated she was working on a review of the requested websites. Because this communication is not tortious in and of itself, it cannot serve as a basis for specific jurisdiction under Florida law.

Next, the Plaintiff alleges that an October 19, 2017 email from Melton to Brent Levison, attached a memorandum with legal advice that "fell below the standard of care . . ." Amended Compl., at ¶ 48. Regarding this communication, the Plaintiff further alleges that "Melton and Baker's failure to provide an accurate compliance review of the Freemium sites, in breach of their duty of care to the OPG Entities, led to the entry of the Verdict in the FTC Enforcement Action

and the Acquinity Matter contempt sanctions against those Entities." *Id*. The Plaintiff further alleges that BakerHostetler "should have warned the OPG Entities that they could not continue to operate under their then-current business model without running afoul of the law or major redesign of the websites." *Id*. at ¶ 120. But the document referenced in the Amended Complaint – which the Plaintiff chose not to include, but which is now attached hereto – establishes the opposite. This is significant because if "an attached document negates a pleader's cause of action, the plain language of the document will control . . ." *Ship Const. & Funding Servs. (USA), Inc. v. Star Cruises PLC*, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) (J. King).

The October 19, 2017 memorandum demonstrates that the advice offered by BakerHostetler directly contradicts the Plaintiff's allegations that no such advice was given. In fact, it appears the OPG Entities ignored BakerHostetler's advice and that is why they were found to be in violation of the FTC Act – not because BakerHostetler gave incorrect advice.



In the October 2017 memorandum, BakerHostetler specifically advised the ███████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████. October 2017 Memo., Exhibit A-4. This is true for a whole host of so-called "Freemium" websites, including the ████████ websites, the ████████ websites, and ███████████████ websites. *Id.*; Amended Compl., at ¶ 52. BakerHostetler specifically advised the ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████." *Id.* (emphasis added). October 2017 Memo., Exhibit A-4. BakerHostetler further advised the ██████████████████████████████████████████████ ████████████████████████████████████████████████████. *Id.* Again, it appears the OPG Entities ignored this advice.

Accordingly, none of these communications state a cause of action, as they are contradicted by the documents themselves, nor do they establish personal jurisdiction over BakerHostetler.

ii.   **The Plaintiff's Remaining Allegations Are Vague, Conclusory, and Generic, they Do Not State a Claim, and Do Not Meet the Pleading Standards to Establish Personal Jurisdiction**

The Eleventh Circuit has repeatedly held that "vague and conclusory" allegations do not establish a prima facie case of personal jurisdiction and may be attacked facially. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *see also Catalyst Pharm., Inc. v. Fullerton*, 748 F.

App'x. 944, 946 (11th Cir. 2018). Similarly, under Florida substantive law, citation to generic communications as the basis for personal jurisdiction under Fla. Stat. § 48.193(1)(a)(2) is insufficient. *Koock*, 2010 WL 1223794, at \*4-5.

Here, *other than six specifically identified contacts and communications attributed to BakerHostetler in the Amended Complaint*, the Plaintiff's allegations are so vague, conclusory, and generic, and fail to identify any specific conduct or communications sent into Florida that were tortious in and of themselves, that they fail to state a claim and fail under federal pleading standards. These insufficient allegations are found in the following paragraphs: 37, 38, 39, 54, 99, 100, 101 and 102. Simply alleging that BakerHostetler sent legal advice into Florida is insufficient to both state a claim and establish a prima facie case for personal jurisdiction. *Wendt*, 822 So. 2d at 1260; *Arch Aluminum & Glass Co., Inc. v. Haney*, 964 So. 2d 228, 236-37 (Fla. 4th DCA 2007); *Carlyle*, 842 So. 2d at 1017; *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1380 (S.D. Fla. 2012).

Lastly, the Plaintiff alleges that "each of the Defendants received transfers of funds" from the OPG Entities "which were operating . . . and carrying on business operations or ventures in, among other locations, the Southern District of Florida." Amended Compl. at ¶ 38. This is insufficient to confer specific jurisdiction. *See Am. Torch Tip Co. v. Dykema Gossett PLLC*, 2011 WL 3171811, at \*6 (M.D. Fla. July 8, 2011), *report and recommendation adopted*, 2011 WL 3170282 (M.D. Fla. July 27, 2011). In *Torch Tip*, the court rejected precisely such an argument and declined to exercise personal jurisdiction, holding that the "Plaintiff has not shown that payment was the direct result of [the lawyer's] alleged negligence" and that "to justify jurisdiction based on a Florida client's payment of fees for a nonresident attorney in an out-of-state matter would overextend the reach of section 1(b)").

### iii.   BakerHostetler Did Not Purposefully Avail Itself of Jurisdiction in Florida

Three requirements must be met for a non-resident defendant to have constitutionally sufficient minimum contacts with the forum state: (1) the contacts must be related to the cause of action or have given rise to it; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protection of its laws; and (3) the defendant's contacts in the forum state must be such that he should reasonably anticipate being haled into court into court there." *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631. (11th Cir. 1996); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

For the same reasons discussed in Section III(A)(i), *supra*, the identified contacts and communications alleged in the Amended Complaint do not relate to the Plaintiff's legal malpractice claim. Melton's March 2017 communication and personal visit to Florida did not concern or provide any information found to be deceptive in the 2019 FTC Enforcement Action; the business models on which BakerHostetler opined in May and June of 2017 were not at issue in the 2019 FTC Enforcement Action, nor were they found deceptive; the October 4, 2017 communications did not contain any legal advice and thus could not be related to the 2019 FTC Enforcement Action; and the October 19, 2017 communication did not provide any information found to be deceptive in the 2019 FTC Enforcement Action. *See* 2019 FTC Summary Judgment Order, Exhibit D. Accordingly, there is no purposeful availment arising from those contacts and the connection between the Plaintiff's claims and BakerHostetler's activities is tenuous at best – and certainly far from "strong." *Schrier*, 2022 WL 4598630, at *18. Under all three *Burger King* factors, the Complaint fails to establish specific jurisdiction.

Even if the Court were to find sufficient minimum contacts with the state of Florida, its exercise of jurisdiction in this matter would nevertheless offend "traditional notions of fair play and substantial justice." *Carib-USA Ship Lines Bahamas Ltd. v. Dorsett*, 935 So. 2d 1272, 1275 (Fla. 4th DCA 2006) (citations omitted).

As set forth in the Declaration of John D. Parker, BakerHostetler has a principal place of business in Ohio. *See* J. Parker Declaration, Exhibit B. Also, none of the BakerHostetler lawyers who provided the legal advice alleged to be at issue in this lawsuit was or is based in BakerHostetler's Orlando, Florida office. Finally, the Plaintiff seeks to hold BakerHostetler liable for Melton's alleged negligent conduct but pleads that BakerHostetler has an office in New York and that Melton is an attorney licensed to practice law in New York. Amended Compl. at ¶¶ 30, 32-33 & 41. Requiring BakerHostetler to litigate this matter in Florida, under these circumstances, would prejudice BakerHostetler. *See Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1339 (M.D. Fla., 2002).

Further, New York has a strong interest in adjudicating this dispute, as the legal advice underlying Plaintiff's claim arose from a New York licensed lawyer, practicing law in New York. *See Reichard v. Henderson Covington Messenger Newman & Thomas Co.*, 779 F. App'x. 665, 668 (11th Cir. 2019) (holding, in the context of a choice of law analysis, "[p]redictability and uniformity would favor choosing Ohio law to govern Ohio lawyers . . ."); *see also Reichard v.*

*Henderson, Covington, Messenger, Newman & Thompson Co., L.P.A.*, 2018 WL 5016285, at *4-6 (S.D. Fla. Oct. 16, 2018).

Finally, the judicial system's interest in resolving the dispute does not considerably affect the outcome. Dismissing this case does not deprive Plaintiff of a remedy for a meritorious claim, and New York courts would have jurisdiction to hear such claims and award damages to the Plaintiff, if she prevailed. For these reasons as well, the Court should decline the exercise of personal jurisdiction.

### iv.     The Plaintiff Fails to Adequately Allege General Jurisdiction

Under Florida's Long-Arm Statute, Section 48.193(2), a "defendant who is engaged in substantial and not isolated activity within this state . . . is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." General jurisdiction cannot be exercised unless there are continuous and systematic contacts between the nonresident defendant and the State of Florida, such that the nonresident defendant is "essentially at home" in the State of Florida. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "at home" in the corporation's state of incorporation and the state of its principal place of business. *Daimler*, 571 U.S. at 137. Courts have applied *Daimler* to entities other than corporations, including limited liability partnerships, such as BakerHostetler. *See, e.g.*, *Rowe v. Gary, Williams, Parteni, Watson and Gary, P.L.L.C.*, 723 F. App'x. 871, 874 (11th Cir. 2018) (applying *Daimler* to Florida law firm and affirming order granting motion to dismiss for lack of personal jurisdiction); *see, e.g., Statek Corp, v, Coudert Bros, LLP*, 2018 WL 834227, at *12-13 (D. Conn. Feb. 12, 2018) (applying *Daimler* to New York law firm and granting motion to dismiss for lack of personal jurisdiction).

In only "exceptional case[s]" may the court exercise general jurisdiction over a nonresident defendant entity that is neither incorporated in the forum nor has its principal place of business in the forum. *Rowe*, 723 F. App'x. at 875; *see, e.g., Perkins v. Benguet Consol. Mining Co.* 342 U.S. 437 (1952) (court found general jurisdiction over a Philippines formed and based corporation, which ceased doing business in the Philippines during the Japanese occupation during World War II and moved its operations temporarily to Ohio).

Here, the Plaintiff fails to plead general jurisdiction and the case law and evidence show that general jurisdiction over BakerHostetler in Florida is improper. First, the Amended Complaint fails to include even conclusory allegations that general jurisdiction is proper. The Amended

Complaint does not allege BakerHostetler was engaged in "substantial and not isolated activity within this state"; the phrase "personal jurisdiction" does not appear in the Amended Complaint; and the Plaintiff fails to cite to the general jurisdiction prong of the Florida Long Arm Statute.

Second, the Plaintiff incorrectly suggests that because BakerHostetler has "an office in Orlando, Florida with at least 58 attorneys practicing law," provides "legal services in Florida," "regularly conducts business in Florida," is "one of the nation's largest law firms," has "numerous partners who are members of the Florida Bar," has "litigated, and defended numerous significant lawsuits in South Florida," and has "acted through Defendant Melton," that jurisdiction is proper. This is incorrect under binding United States Supreme Court precedent, which, absent extraordinary circumstances that are not present here, only allows a court to exercise general jurisdiction in the state where the entity is incorporated or has its principal place of business. *See Daimler*, 571 U.S. at 127; *see Goodyear Dunlop*, 564 U.S. at 919; *see BSNF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (declining to exercise general jurisdiction over railroad company with 2,000 miles of railroad track and 2,000 employees in Montana because company was not incorporated in Montana and not so "heavily engaged in activity in Montana 'as to render [it] essentially at home'" in Montana).

Third, BakerHostetler attaches evidence that shows that it is not "at home" in Florida. Absent exceptional cases (not present here), general jurisdiction does not exist in a state other than the state of incorporation/formation or the state of the principal place of business. *Daimler*, 571 U.S. at 137. For BakerHostetler, as established by the Declaration of John D. Parker, neither is Florida. *See* Parker Declaration, Exhibit B. BakerHostetler was formed in Ohio, and Florida is not BakerHostetler's principal place of business. *Id.*

Finally, as established by the Declaration of John D. Parker, no BakerHostetler partner from its Orlando, Florida office provided the legal advice that is at issue in this lawsuit. *Id.*

Accordingly, this Court may not exercise general jurisdiction over BakerHostetler.

**B.  The Plaintiff's Claims Are Not Ripe**

The Plaintiff's claims also fail because they are not ripe for judicial review under Article III of the United States Constitution. *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). To determine ripeness, courts look to whether a plaintiff's claims have accrued. *Id.* Moreover, claims are unripe for adjudication where they seek relief for an "uncertain sanction,"

and a "district court has not ordered a specific amount to be recovered." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010).

In Florida, a negligence claim does not accrue "until the existence of a redressable harm." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1338 (11th Cir. 2001) (quotations omitted). In New York, a negligence claim does not accrue until "all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *McCoy v. Feinman*, 99 N.Y.2d 295, 301 (N.Y. 2002).

Here, the judicial proceedings underlying the Plaintiff's claims—the 2019 FTC Enforcement Action—remain pending, and a specific number of damages (if any) has not yet been determined or entered as part of a final judgment. *See* Verdict, at pp. 2-3, Exhibit E; *see also* Amended Compl., at ¶ 114. The reason is that this process is driven by claims actually submitted by the OPG Entities' alleged victims and, according to the Plaintiff's submissions, those consumers had until recently— October 18, 2022—to file their claims. ECF No. 636, at p. 3 n.1; *see* ECF No. 637. The alleged damages arising from this claims process will not be ascertainable until after the Plaintiff determines which claims to approve or deny and submits her final report.

Accordingly, "no concrete injury [will arise] until a final court decision" terminating the claims process and crystallizing the OPG Entities' alleged injuries. *Porter*, 241 F.3d at 1339.

### C.  The Amended Complaint Is Further Subject To Dismissal Under Rule 12(b)(6)[11]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted). Courts have held vague allegations of malpractice to be insufficient to survive a motion to dismiss. *E.g.,*

---

[11] BakerHostetler incorporates its argument, as stated above, that none of the communications alleged by the Plaintiff as a basis to establish personal jurisdiction over BakerHostetler under § 48.193(1)(a)(2) state a cause of action, and thus the Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6).

*Rios v. McDermott, Will & Emery,* 613 So. 2d 544, 545 (Fla. 3d DCA 1993) (affirming dismissal of complaint where plaintiff did not "illuminate any of the specifics of the alleged malpractice").

A court may consider documents outside the pleadings without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. The document must be: a) referenced in the complaint; b) attached to a motion to dismiss; c) central to the plaintiff's claims; and d) of undisputed authenticity. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *see SFM Holdings, Ltd. v. Banc of Am. Sec., LLC* 600 F.3d 1334, 1337 (11th Cir. 2010).

### i.   The Amended Complaint Fails to Plausibly Allege a Duty between BakerHostetler and the OPG Entities Existing in March 2017

"A cause of action for legal malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of loss to the client." *Kates v. Robinson,* 786 So. 2d 61, 64 (Fla. 4th DCA 2001) (per curiam). See also, *Wexler v. Shea & Gould,* 211 A.D.2d 450, 621 N.Y.S.2d 858 (1st Dept. 1995) "With respect to establishing the first element [the attorney's employment], it is not sufficient merely to show that an attorney-client relationship existed between the parties, it is essential that the plaintiff show that the relationship existed with respect to the acts or omissions upon which the malpractice claim is based." *Lane v. Cold*, 882 So. 2d 436, 438 (Fla. 1st DCA 2004)*, e.g.*, *Kates v. Robinson* at 64-65 (affirming dismissal of legal malpractice action for failure to state a cause of action where plaintiff failed to allege that the attorney-client relationship "existed between the parties with respect to the acts or omissions upon which the malpractice claim is based"); *Maillard v. Dowdell*, 528 So. 2d 512 (Fla. 3d DCA 1988) (same).

Here, the Plaintiff fails to plead that BakerHostetler had a legal duty to the OPG Entities for two of the seven specific "tortious" communications alleged, the March 20, 2017 email to Brent Levison in Miami, Florida, and Melton's personal visit to Florida on March 21, 2017. Instead, the Plaintiff judicially admits that the OPG Entities did not retain BakerHostetler for legal services until May of 2017. Amended Compl. at ¶ 71.

Moreover, the training deck alleged to be tortious legal advice explicitly includes a disclaimer at the bottom of the final slide, which states:

> These materials have been prepared by Baker & Hostetler LLP for informational purposes only and are not legal advice. The information is not intended to create, and receipt of it does not constitute, a lawyer-client relationship. Readers should

not act upon this information without seeking professional counsel. You should consult a lawyer for individual advice regarding your own situation.

Training Deck, Exhibit A-1. Because the Plaintiff judicially admits that the OPG Entities did not retain BakerHostetler until May 2017, and since the allegedly tortious training deck includes a disclaimer that its contents did not constitute legal advice, the Plaintiff cannot rely on the March 2017 communications and physical visit to Florida to establish a duty.

### ii.    The Plaintiff Fails to Allege Plausible Causation

Causation is a necessary element of legal malpractice.[12] *Conley v. Shutts & Bowen, P.A.*, 616 So. 2d 523, 524-25 (Fla. 3d DCA 1993); *Riker v. Premier Capital, LLC*, 2016 WL 5334980, at *9-10 (S.D.N.Y. Sept. 21, 2016); *Preferred Fragrance, Inc. v. Buchanan Ingersoll & Rooney PC,* 2015 WL 6143612, at *3 (E.D.N.Y. Oct. 18, 2015). To prevail on a legal malpractice claim, a plaintiff must plead, and later prove, how the lawyer's alleged breach of duties caused the plaintiff damage. This is referred to as the "but for" test.

This required element, together with *Twombly* and *Iqbal,* require the Plaintiff to plead facts, not conclusions, sufficient to show a plausible casual connection between BakerHostetler's alleged legal work and the adverse findings and damages assessed against the OPG Entities in the 2019 FTC Enforcement Action. The Plaintiff must allege facts to show that the OPG Entities would not have been damaged by the adverse findings in the 2019 FTC Enforcement Action "but for" the breaches of duty by BakerHostetler.

Here, the Amended Complaint is devoid of such facts to support proximate cause. In fact, conclusory or otherwise, the Plaintiff never pleads how "but for" BakerHostetler's alleged breach of duties, the OPG Entities would not have suffered damages. There are no facts pled regarding what would have happened, or how the OPG Entities would have avoided suffering damages, had BakerHostetler satisfied its duties. Instead, the Plaintiff asks the Court to assume this would have occurred, based on 20/20 hindsight, and without alleging any facts or causation theories.

Furthermore, while the Amended Complaint summarily concludes that Defendants "caused" "significant injuries to the OPG Entities," these bald assertions are not supported by any

---

[12]    Causation is also a necessary element of breach of fiduciary duty and this argument also defeats such a claim to the extent the Court construes the Complaint to assert such a claim. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Weil, Gotshal & Manges v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004).

facts whatsoever. The Amended Complaint jumps from alleging that BakerHostetler breached its "duty of care" to alleging that the result of the breach caused the OPG Entities to sustain "significant damages and loss" without any attempt to allege how the alleged "breach" proximately caused the "significant damages and loss". Such gymnastics do not state a claim for relief. These are precisely the sort of the insufficient, threadbare, conclusory, "formulaic recitation of the elements'" allegations, unsupported by "factual content" and "further factual enhancement," that *Iqbal* has held are insufficient to state a plausible claim for relief, and which the Court should identify as *not* being entitled to the assumption of the truth. Amended Compl., at ¶¶ 120-122; *see Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Because such an allegation is essential to pleading and maintaining a claim for legal malpractice, and the Plaintiff pleads none, dismissal is warranted.

### D.  The Amended Complaint Only Pleads Legal Malpractice, But If It Asserts Breach Of Fiduciary Duty And Breach Of Contract, Those Claims Also Fail

The Plaintiff pleads only a single count of "Legal Malpractice" against BakerHostetler. Amended Compl., at p. 31. Yet, in her claim for relief, the Plaintiff "demands judgment against Baker for the total amount of damages resulting from the legal malpractice, *breaches of fiduciary duty, and breaches of contract* by Baker. *Id.* at p. 33-34 (emphasis added). The Amended Complaint, however, fails to state any such claims upon which relief could be granted. The Court should rule that the Plaintiff may not pursue damages under those theories because she has not pled any such claims.

Further, nowhere in the Amended Complaint does the Plaintiff allege the existence of a contract, identify the contract, identify the terms of the contract, or identify how that contract was allegedly breached and the damages flowing therefrom. *Smith v. United States*, 873 F.3d 1348, 1350 (11th Cir. 2017) (affirming dismissal for failure to allege all the necessary elements of a claim); *Feldman American Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017); *Beck v. Lazard Freres & Co.,* 175 F.3d 913, 914 (11th Cir. 1999) (stating elements of breach of contract claim). There is, therefore, no claim for breach of contract.

## IV.   <u>CONCLUSION</u>

For the reasons argued herein, the Court should dismiss all claims against BakerHostetler and take judicial notice of Exhibits C-E.

## V.    REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), BakerHostetler respectfully requests that the Court hold a hearing on BakerHostetler's Motion to Dismiss. Oral argument will assist the Court in understanding the impact of the 2019 FTC Enforcement Action on this lawsuit and navigate the intricacies of BakerHostetler's challenges to personal jurisdiction. Oral argument will further assist the Court in addressing the Complaint's vague and conclusory allegations, including the impact of those allegations on the larger jurisdictional challenges. BakerHostetler estimates that sixty (60) minutes is an appropriate length of time for argument on all the defendants' motions to dismiss and the Plaintiff's opposition thereto.

Respectfully submitted,

/s/ *David R. Atkinson*
DAVID R. ATKINSON
Florida Bar No.: 767239
datkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
STEPHEN C. RICHMAN
Florida Bar No.: 1015692
srichman@gunster.com
jfirogenis@gunster.com
ARON U. RASKAS
Florida Bar No.: 1022416
araskas@gunster.com
mmotola@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 650-0595
Facsimile: (561) 655-5677
***Counsel for Defendant Baker & Hostetler, LLP***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2023 a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.

/s/ *David R. Atkinson*
David R. Atkinson
Stephen C. Richman

ACTIVE:16460126.2