UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1-22-CV-22606-JLK

MELANIE E. DAMIAN, as Receiver
for On Point Global LLC, *et al.,*

      Plaintiff,

v.

HOLLY MELTON, BAKER &
HOSTETLER LLP, and CROWELL
& MORING LLP,

      Defendants.

_____/

## PLAINTIFF'S OMNIBUS RESPONSE TO
## DEFENDANTS' MOTIONS TO DISMISS

      Plaintiff, Melanie E. Damian, as Receiver (the "**Receiver**") for On Point Global LLC, *et al.*, files her Omnibus Response to Defendant Holly Melton's Motion to Dismiss and to Strike and Incorporated Memorandum of Law [ECF No. 36], Defendant Crowell & Moring LLP's Motion to Dismiss the Amended Complaint and to Strike the Receiver's Requests for Attorneys' Fees and Costs and Incorporated Memorandum of Law [ECF No. 37], and Defendant Baker & Hostetler LLP's Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12 (B)(2) and 12(B)(6), Memorandum of Law in Support, and Request for Judicial Notice [ECF No. 38].

      Defendants, Holly Melton ("**Melton**"), Baker & Hostetler LLC ("**Baker**"), and Crowell & Moring LLP ("**Crowell**") (collectively, "**Defendants**"), have not raised any valid basis to dismiss or strike any part of the Receiver's Amended Complaint ("Complaint") and their Motions should be denied.

## I.      INTRODUCTION

The Defendants, through Melton and other counsel, have had long-standing attorney- client relationships with the OPG Entities.[1] As alleged in the Amended Complaint, in or about July 2014, Melton, along with Linda Goldstein, now with Defendant Baker, represented Acquinity Interactive and its principal, Burton Katz ("**Katz**") (also a principal of the OPG Entities), in defending the FTC's claims against them which were brought in this Court in an action styled FTC v. Acquinity, Case No. 14-60166-Civ-Scola ("Acquinity Matter").  The Acquinity Matter resulted in the entry, on October 16, 2014, of a Stipulated Order for Permanent Injunction and Other Equitable Relief ("2014 Permanent Injunction") [*See* Acquinity Matter at ECF No. 132].

The 2014 Permanent Injunction prohibited Katz from, among other things, "making or assisting others in making, expressly or by implication, any false or misleading representation including representations concerning the cost, performance, efficacy, nature, characteristics, benefits or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service."  *See id.* at 2.  The 2014 Permanent Injunction also imposed compliance reporting and monitoring obligations on Katz himself and on any entity in which he was a principal. *See id.* at 8-12.  Thus, the 2014 Permanent Injunction also applied to the OPG Entities because Katz was CEO of them, a fact of which Melton, Baker, and Crowell were fully aware.

The OPG Entities retained Melton in 2016 and continued with Baker in March 2017 through January 2020 to guide and counsel them concerning the legal risks and implications of the OPG Entities' business models and websites and whether they complied with Section 5(a) of the FTC Act and other applicable laws and with the 2014 Permanent Injunction.  As set forth in the Amended Complaint, Melton's, Baker's, and Crowell's compliance advice fell below the standard

---

[1]      The "**OPG Entities**" are defined as the Receivership Entities, including On Point Global LLC, MBL Media Ltd., PBJ Media LLC, Rogue Media Services LLC, and Direct Market LLC; further, this term will refer to On Point Global LLC's overall business including its subsidiaries engaged in carrying out On Point Global LLC's business Model.  These entities were all also "**Receivership Entities**" which will be used interchangeably throughout.

of care because, among other reasons, Defendants failed to warn the OPG Entities that they should make changes or modify their business practices to comply with consumer protection laws and the 2014 Permanent Injunction.

Defendants' breaches of the standard of care caused the OPG Entities to be subject to an enforcement action commenced by the FTC on December 13, 2019, in an action styled *Federal Trade Commission v. On Point Global LLC, et al.*, Case No. 19-25046-cv-Scola ("FTC Enforcement Action"). In February 2020, the FTC also sought contempt sanctions in the Acquinity Matter.  On September 29, 2021, the Court in the FTC Enforcement Action made a final determination contrary to the advice the Defendants had provided to the OPG Entities, holding, among other things, that the OPG Entities' websites violated Section 5(a) of the FTC Act. *See* FTC Enforcement Action at ECF No. 528. On the same day, the Court also found the OPG Entities in contempt of the 2014 Permanent Injunction. *See* Acquinity Matter at ECF No. 225. These findings resulted in tens of millions of dollars in damages to the OPG Entities.

During Defendants' representation of the OPG Entities, Melton provided legal services to the OPG Entities while physically present in Florida, when she traveled to Florida and provided in-person training to the OPG Entities and their principals on March 21, 2017 (while at Baker), and March 11, 2019 (while at Crowell).  Defendants provided all other advice by telephone or email to the OPG Entities and principals who at all times were in Florida. *See, generally*, Declaration of Brent Levison attached hereto as **Exhibit A**.[2]

Defendants' three Motions to Dismiss challenge personal jurisdiction as to Baker and Melton,[3] and all three Defendants challenge the ripeness of the Receiver's claim.  Baker's and Melton's challenges to this Court's personal jurisdiction are groundless because Melton committed

---

[2] The Receiver maintains that Melton and Baker have failed to submit an affidavit (or any other evidence) that controverts the *prima facie* case of jurisdiction over Defendants that the Receiver has alleged sufficient to shift the burden back to the Receiver to prove jurisdiction.  However, the Receiver files the supporting Levison Declaration and exhibits thereto in an abundance of caution and without conceding that either Melton or Baker has met her or its respective burden.

[3] Crowell does dispute that the Court has personal jurisdiction over it.

the tort of malpractice while physically present in Florida and all Defendants committed malpractice in Florida through telephone calls and the transmission of electronic, digital, and written communications to the OPG Entities and their principals in Florida.

Defendants' assertion that the Receiver's legal malpractice claims are unripe, causing the Court to lack subject matter jurisdiction over them, is also unfounded because the Receivership Entities have sustained concrete injuries from Defendants' legal malpractice which has caused the Receiver's claims to accrue. Defendants' Motions to strike the Receiver's attorney's fees claims on the ground that they are not based in contract or statute is unfounded because recovery is allowed under the wrongful act doctrine. Finally, Baker's Motion to dismiss the Receiver's well-plead claims under Rule 12(b)(6) is groundless and must be denied.

## II.    ARGUMENT

### A.    The Complaint Sufficiently Pleads Personal Jurisdiction Over All Defendants.

1.    The Receiver has Established a *Prima Facie* Case for Personal Jurisdiction over Defendants under Florida's Long-Arm Statute.

Defendants Melton and Baker seek dismissal arguing that this Court lacks personal jurisdiction over them despite the numerous facts set forth in the complaint demonstrating that they provided legal services to a Florida company in Florida and appeared in this Court in two matters involving the Receivership entities that are inextricably intertwined with the Receiver's claim.

Before determining whether personal jurisdiction exists under Florida's long-arm statute, the Court must determine whether the Complaint states a cause of action. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). A cause of action for legal malpractice in Florida has three elements: (1) the attorney's employment and (2) his neglect of a reasonable duty, which (3) is the proximate cause of loss to the client. *See Thompson v. Martin*, 530 So. 2d 495, 496 (Fla. 2d DCA 1988) (finding complaint stated cause of action for legal malpractice).  *See also Walco Invs. v. Thenen*, 881 F. Supp. 1576, 1585 (S.D. Fla. 1995) (accepting Plaintiff's allegations of legal

malpractice as true and denying motion to dismiss); *Thompson v. Martin*, 530 So. 2d 495, 496 (Fla. 2d DCA 1988) (stating cause of action for legal malpractice).

The Complaint alleges each of the elements of a cause of action for legal malpractice. Specifically, the Complaint alleges that Defendants were employed as attorneys for the OPG Entities (Complaint [ECF 29] at ¶¶ 108, 110, 116, 118, 124, and 126); that Defendants neglected a reasonable duty (*id.* at ¶¶ 112, 113, 120, 121, 128, and 129); and that Defendants' neglect of the duty is the proximate cause of loss to the OPG Entities.  *Id.* at ¶¶ 114, 122, and 130. Thus, the Complaint sufficiently alleges a cause of action for legal malpractice against Defendants. Defendants do not assert any meaningful arguments to the contrary.

Establishing personal jurisdiction over a nonresident is a two-part analysis. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F. 3d 253 (11th Cir. 1996). A plaintiff must first allege facts sufficient to establish that jurisdiction exists under Florida's long arm statute, and then, if there is a basis for jurisdiction under the long-arm statute, must show that the nonresident defendant has sufficient minimum contacts with Florida to satisfy due process concerns.  *Id.* at 256. A *prima facie* case for personal jurisdiction is established by presenting "sufficient evidence to withstand a motion for directed verdict."  *Id.* at 255.

The Complaint alleges facts sufficient to establish a *prima facie* case of personal jurisdiction over Melton and Baker under Florida's long-arm statute through their commission of a tort (legal malpractice) in Florida. *See* Florida Statute § 48.193(1)(a)(2); Complaint [ECF No. 29] at ¶¶ 35-55. Florida law is clear that long-arm jurisdiction extends to defendants who commit torts in Florida when *physically present* in Florida and by transmitting *communications into* Florida. "[T]o 'commit a tortious act' in Florida, a defendant's physical presence is not required…. 'Committing a tortious act' in Florida under § 48.193(1)(b) [renumbered as § 48.193(1)(a)(2)] can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications." *Wendt v. Horowitz*, 822 So. 2d at 1260. *See also Xymogen, Inc. v. Digitalev, LLC*, 2018 U.S. Dist. LEXIS 16147, Case No. Case No: 6:17-cv-869-Orl-31KRS  (M.D. Fla. Feb. 1, 2018) ("[C]ourts applying Florida law

have broadly interpreted the long-arm statute with regard to tortious conduct to include conduct outside the state that causes injury within the state"); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d at 256 (finding personal jurisdiction under Florida's long-arm statute over nonresident attorney negligently performing legal work out of state for use by Florida resident in Florida).

The Complaint specifically alleges that Melton committed legal malpractice while physically present in Florida twice. On March 21, 2017, when she was employed by Baker, and on March 11, 2019, when she was employed by Crowell, Melton presented in-person legal compliance training and advice to the OPG Entities' and their principals at the OPG Entities' office in Miami, Florida, and failed to advise them on legal compliance or to provide legal compliance training sufficient to comply with Article (5)(a) of the FTC Act such that it was below the standard of care. *See* Complaint [ECF No. 29] at ¶¶ 45, 53, and 107-114.

The Complaint also details numerous telephonic, electronic, and written communications, through delivery of emails, memoranda, power points, and letters (and reflecting telephonic communication), that Defendants sent to the OPG Entities in Florida, that comprise and reflect Defendants' negligent legal compliance training and advice provided to the OPG Entities over a period of years. *Id.* at ¶¶ 32-34, 37-39, 42-55, 64-84, 90-105, 108-114, 116-122, 124-130. The documents referred to in detail in the Complaint show the breadth of the connection that Defendants have with Florida as well as the requisite connexity between these contacts and the Receiver's legal malpractice claims. Levison also attests to the numerous meetings, correspondence, and telephone calls he had with Melton while he was in Florida. *See, generally* Exhibit A, Levison Declaration. Melton's tortious acts committed while in Florida and directed at her Florida client into Florida establish personal jurisdiction in Florida over her and her law firms. *See Lopez v. CMI Leisure Mgmt.*, 591 F. Supp. 3d at 1236.

Once a plaintiff has established a *prima facie* case for personal jurisdiction as the Receiver has here:

> A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations…. 'Where… the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts

back to the plaintiff to produce evidence supporting jurisdiction.'
(Citations omitted).

If the defendant makes a sufficient showing of the inapplicability of
the long-arm statute, 'the plaintiff is required to substantiate the
jurisdictional allegations in the complaint by affidavits or other
competent proof, and not merely reiterate the factual allegations in
the complaint.' (Citations omitted).

Conclusory statements, 'although presented in the form of factual
declarations, are in substance legal conclusions that do not trigger a
duty for Plaintiffs to respond with evidence of their own supporting
jurisdiction.' (Citations omitted).

In addressing whether personal jurisdiction over a nonresident
defendant exists, '[t]he district court must accept the facts alleged in
the complaint as true, to the extent they are uncontroverted by the
defendant's affidavits.' Moreover, 'where the plaintiff's complaint
and the defendant's affidavits conflict, the district court must
construe all reasonable inferences in favor of the plaintiff.'

*Lopez v. CMI Leisure Mgmt.,* at 1236. *See also Venetian Salami Co.,* at 502.

Defendants' Motions fail to make a sufficient showing, by affidavit or otherwise, to defeat

the Receiver's *prima facia* case of personal jurisdiction.  Melton did not submit an affidavit.  Baker

submitted the declarations of Jonathan B. New ("**New**") and John D. Parker ("**Parker**"), partners

at Baker, in support of Baker's Motion to Dismiss. *See* ECF No. 38, at Exhibits A and B,

respectively. New's declaration solely attaches documents that he attests are contained in Baker's

file for its representation of the OPG Entities. *Id.* at Ex. A. Parker's declaration describes the Baker

firm's incorporation and governance, and the geographic locations of its offices nationally. *Id.* at

Ex. B. But neither declaration controverts the Receiver's *prima facie* case.

Baker relies on the documents attached to New's declaration to wage an attack on the

merits of the malpractice claim. Baker asserts that the contacts and communications that Baker

directed into Florida referenced in the Complaint cannot be considered in evaluating the Court's

personal jurisdiction over Baker because Baker's legal advice in them was, according to New's

conclusory statements, not negligent. *See* ECF 38, Ex. A at pp. 8-9.  It is elemental that such an

argument is improper on a motion to dismiss where the court is required to accept the allegations

in the complaint as true and construe them in the light most favorable to the plaintiff. *See Renfroe v. Nationstar Mortg*., LLC, 822 F.3d 1241, 1242 (11th Cir. 2016).

Parker attests that Baker has an office in Florida, that a member of the firm's Board of Directors is located in Florida, and that a "managing partner/partners'-in-charge" is located in Florida. *Id*. at Ex. B, at ¶¶ 11(e), (c), (j), respectively. Parker's declaration reinforces the Complaint's allegations that Baker has sufficient minimum contacts with Florida to satisfy due process requirements.

The New and Parker declarations do not contain any testimony or documentary evidence that controverts the allegations in the Complaint, or the testimony and evidence set forth in the Levison Declaration that establishes a *prima facie* case of specific jurisdiction over Melton and Baker under Florida's long-arm statute, and that Baker and Melton have sufficient minimum contacts with Florida which satisfy due process requirements. Therefore, the burden of proving personal jurisdiction has not shifted back to the Receiver. *See Xymogen, Inc. v. Digitalev, LLC*, 2018 U.S. Dist. LEXIS 16147 at *7 (finding affidavit submitted by defendant contained no information that would shift the burden to plaintiff).

2.    The Complaint Alleges that Defendants Have Minimum Contacts with Florida Sufficient to Meet Due Process Requirements.

Having determined that there is a basis for asserting personal jurisdiction over Defendants under Florida's long-arm statute, the Court must "determine whether the Defendants have sufficient minimum contacts with Florida to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Robinson v. Giarmarco & Bill, P.C*., 74 F.3d at 256 (citations and quotations omitted). *See also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) *(citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945)). To satisfy the minimum contacts requirement, a defendant must have "fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Robinson*, at 258

(citations and quotations omitted). "Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." *Id*.

Once minimum contacts of a defendant have been established, the contacts "are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id*. (citations omitted.)   The factors to be considered are: (a) defendant's burden in defending the lawsuit, (b) the forum state's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, and (d) the interstate judicial system's interest in obtaining the most effective resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Id*. at 259.  (citations omitted.)

The analysis and holding in *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d at 259, are instructive. The court determined that out of state lawyers were subject to personal jurisdiction in Florida in a legal malpractice lawsuit due to their contacts with Florida established through their representation of a Florida resident in estate planning matters. *Id*. at 259. The court also determined that the attorneys purposefully directed their activities to Florida sufficient to establish minimum contacts. The factors considered by the Court in *Robinson v. Giarmarco & Bill, P.C*. are compelling here, where Defendants were hired to perform more than menial tasks, knew that the OPG Entities and their principals were located in Florida, knew that their actions or omissions would have a substantial effect in Florida, and should have reasonably anticipated the possibility of a lawsuit in Florida.

Further, the *Robinson* court found that "Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident, concerning assets located within its borders." *Id.  See also Lopez v. CMI Leisure Mgmt*., 591, F. Supp. 3d at 1241 (weighing factors influencing Court's determination of forum state). Likewise, Florida has a keen interest in adjudicating this dispute because it involves Florida companies and their principals, a Florida Receiver, and two Florida Receiverships; it is intricately connected to two separate lawsuits that were litigated extensively in this Court; it involves consumer protection matters

involving, among others, Florida residents; and a majority of witnesses are located in Florida. The burden on Defendants is minor, particularly because Baker has a vibrant office in Florida and its lawyers are accustomed to litigating in Florida courts. This includes Baker's extensive and active participation in the Acquinity Matter and the FTC Enforcement Action in this District that ended only months ago. In fact, Baker's Florida-based lawyers facilitated Baker's New York lawyer's admission *pro hac vice* in these Florida-based matters. Melton's contacts include her many years' long representation of the OPG Entities and their principals, including her travels to Florida twice to provide in-person training and legal compliance advice to the OPG Entities and their principals, which form the basis of the allegations in the Amended Complaint. *See* Complaint [ECF No. 29] at ¶¶ 45 and 53. Thus, as in *Robinson*, Defendants squarely have minimum contacts with Florida sufficient to satisfy constitutional due process concerns. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.2d 1357, 1363 (11th Cir. 2006).

Additionally, the allegation in the Complaint that Defendants entered into retainer agreements with the OPG Entities which contemplated future legal work (and were executed in Florida) is another example of Defendants having availed themselves of the privilege of conducting activities in Florida. *See* Complaint [ECF No. 29] at ¶¶ 42, 71, 108, 116, and 124. *See also Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639 (Fla. 4th DCA 2013) (finding nonresident who contracted with law firm in Florida to perform services on her behalf had sufficient minimum contacts with Florida); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct 2174, 2182, 85 L. Ed 2d 528 (1985) (finding nonresident who signed franchise agreement with a Florida corporation that planned a substantial and continuing relationship established minimum contacts with Florida).

The Complaint alleges that "Baker has an office in Orlando, Florida with at least 58 attorneys practicing law and providing legal services in Florida. So, it regularly conducts business in Florida." *See* Complaint [ECF No. 29] at ¶ 41, n. 4. Indeed, Parker's declaration reinforces the significance of Baker's presence in Florida through its use of a Florida office and the presence in

Florida of Baker attorneys who have leadership roles in its national firm. *See* ECF No. 38 at Ex. B.

As set forth above, Defendants have sufficient minimum contacts in Florida to satisfy constitutional due process concerns and Florida long-arm statute's jurisdictional requirements.

3.   The Corporate Shield Doctrine Does Not Shield Melton from the Personal Jurisdiction of this Court.

Melton argues that the Complaint fails to allege a *prima facie* case for personal jurisdiction against her because, on the face of the Complaint, the Court is barred from exercising personal liability over her under the Corporate Shield Doctrine (the "**Doctrine**").  *See* ECF No. 37 at p. 10. The Complaint alleges more than sufficient facts showing that Melton falls under the exception to the Doctrine that is triggered when a non-resident commits a tort while physically present in Florida, and that she is therefore not shielded under the Doctrine.

As Melton admits in her Motion, "the [D]octrine does not preclude long-arm jurisdiction if the plaintiff alleges that 'the individual employees committed negligent acts while personally present in Florida.' *Kitroser v. Hurt*, 85 So. 3d 1084, 1086 (Fla. 2012); *see also, e.g.*, *Kline v. Byrd*, No. 21-21125-CIV, 2021 WL 4225774, at *4 (S.D. Fla. Sept. 16, 2021)." ECF No. 36 at p. 8. Here, the Complaint alleges specifically that Melton committed legal malpractice while physically present in Florida on March 21, 2017, and on March 11, 2019, by providing in-person legal compliance training and advice that fell below the standard of care to the OPG Entities and their principals at the OPG Entities' office in Miami, Florida.  *See* Complaint [ECF No. 29] at ¶¶ 44, 45, and 53.  The Complaint also details the malpractice that Melton committed while she was physically present in Florida on March 11, 2019. *Id.* at ¶ 53. Accordingly, because the Complaint alleges that Melton committed legal malpractice (twice) while physically present in Florida, it is clear on the face of the Complaint that the Doctrine does not apply to Melton.

Because the Receiver has established a *prima facie* case for personal jurisdiction against Defendants, Defendants' Motions to Dismiss on the ground that the Court lacks personal jurisdiction over them should be dismissed.

11

**B.**     **The Complaint Pleads a Ripe Cause of Action for Legal Malpractice Against Defendants, and this Court Has Subject Matter Jurisdiction.**

As set forth above, the Complaint alleges each of the essential elements of a legal malpractice action against each of the Defendants and that the OPG Entities suffered concrete injuries that are ripe for this Court's judicial review under Article III of the United States Constitution. The Complaint also establishes that the Receiver has the express authority of the Court in the FTC Enforcement action to bring this lawsuit.

1.     The Complaint Pleads a Concrete Injury Resulting from Defendants' Legal Malpractice.

The Complaint's allegations make clear that on September 29, 2021, in the FTC Enforcement Action, the Court made a final determination that, contrary to the advice that Defendants had provided to the OPG Entities, the OPG Entities' "paid-guide" and "Freemium" websites violated Section 5(a) of the FTC Act. *See* FTC Enforcement Action ECF No. 528; *see also* Complaint [ECF No. 29] at ¶¶ 14, 86. Also on September 29, 2021, in the Acquinity Matter, the Court entered an Order on Motions for Summary Contempt, holding the OPG Entities and their principals Burton Katz and Brent Levison in contempt for violation of the August 2021 Preliminary Injunction and liable for payment of compensatory contempt sanctions. *See* Acquinity Matter at ECF No. 225; *see also* Complaint [ECF No. 29] at ¶¶ 16, 94.

The Complaint's allegations make clear that on November 16, 2021, the OPG Entities suffered an additional concrete injury resulting from Defendants' legal malpractice, when the Court in the FTC Enforcement Action entered a Verdict and Order Following Non-Jury Trial (the "**Verdict**") [FTC Enforcement Action at ECF No. 579] and held the OPG Entities and their principals Burton Katz and Brent Levison jointly and severally liable for compensatory contempt damages in the maximum amount of $102,768,235.47, subject to a claims process. *See* Complaint [ECF No. 29] at ¶¶ 17, 98.

The Court in the FTC Enforcement Action also issued a Permanent Injunction [FTC Enforcement Action at ECF No. 528] contained within the Order on Cross Motions for Summary Judgment and an Amended Injunction [FTC Enforcement Action at ECF No. 582] which binds

the company to strict compliance provisions beyond those required by the FTC regulations or any other consumer protection law. *See* Complaint [ECF No. 29] at ¶ 18. The injunction has required the OPG Entities to operate their businesses at significantly stricter standards than their competitors and has devalued the OPG Entities (enterprise value reduction), causing them to suffer millions of dollars of damages.

The Complaint alleges that the OPG Entities have already suffered specific damages. The Complaint alleges that the Receiver has nearly completed the Claims Process (as defined in the Complaint) (*Id.* at ¶ 22), and "has initially determined that the total amount of allowed claims against the Receivership Entities is $8,471,711.74, … which amount will increase following the claims reconsideration process and FTC audit." *Id.* at ¶ 23. The Complaint alleges that, "including previous amounts paid without a formal claim, pursuant to the Verdict [FTC Enforcement Action ECF No. 579], the Court's compensatory contempt sanction has cost the Receivership Entities at least $19,268,579.26." *See* Complaint [ECF No. 29] at ¶¶ 25, 106, 114, 122, and 130. The Complaint alleges that "as a result of the Receivership, the Receivership Entities have incurred professional's fees and costs totaling at least $3,106,753." *Id.* at ¶¶ 26, 107, 114, 115, 122, 123, and 130.[4]

### 2.    The Legal Malpractice Claim is Ripe.

Defendants claim, without merit, that the Receiver's well-pleaded action for legal malpractice against them is not ripe.  Defendants' sole basis for challenging this Court's subject matter jurisdiction over them is that the compensatory contempt damage figure contained in the

---

[4] The Receiver is acting under the authority of the Receivership Court in bringing these malpractice claims against Defendants. In the Order Granting Receiver's Motion for Partial Discharge and to Convert to Limited Receiver entered on December 1, 2022 [Acquinity Matter at ECF 656], the Court converted the Receivership to a Limited Receivership, and the Receiver to a Limited Receiver, and authorized the Limited Receiver to "continue to prosecute the Estate's claims for legal malpractice… that arose out of the conduct that formed the basis of the FTC Action." *Id.* at ¶ 7. The Court found that "the claims asserted therein are assets of the Receivership Estate and shall remain an asset of the Limited Receivership Estate." *Id.*  Moreover, the Limited Receiver will not be discharged, and the Limited Receivership will not be terminated, until after the malpractice action has been concluded. *Id.* at ¶ 9.

Complaint is not a final damage figure.  *See* ECF No. 37 at p. 9-11; ECF No. 38 at p. 16-17. Defendants assert that, because the figure is subject to change based on the FTC's audit of the claims process (which is nearly complete), the OPG Entities have not suffered a concrete injury, and the legal malpractice action against them has not accrued. *Id*. This argument ignores the Complaint's allegation that the contempt damages amount to a minimum of $19,268,579.26 (Complaint [ECF No. 29] at ¶¶ 25, 106, 114, 122, and 130) and a maximum of $102,768,235.47. *Id*. at ¶ 17. Defendants acknowledge that the Complaint alleges that the Receivership Court held that the compensatory contempt damages will amount to a maximum amount of $102,768,235.47.

Moreover, Defendants provide no credible support for their claim that this litigation cannot properly move forward until the nearly completed claims process (Complaint [ECF No. 29] at ¶ 22) is concluded and the final compensatory contempt damage figure is determined (which is likely to occur before the end of the briefing schedule on Defendants' Motions).  Defendants do not even assert how they might be prejudiced by knowing a range of compensatory contempt damages without yet knowing the exact figure.

Defendants cite to several cases that address the issues of ripeness and the accrual of a cause of action for negligence but fail to connect them to the facts here. The cases are inapposite. For example, Defendants rely on *Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*, 17-CV-81290, 2018 U.S. Dist. LEXIS 102368, 2018 WL 10152613 (S.D. Fla. 2018), and *Blumberg v. USAA Cas. Inc. Co*., 790 So. 2d 1061 (Fla. 2001) for the proposition that the OPG Entities' legal malpractice claim against Defendants has not accrued.  In *Twin Eagles Grp., LLC v. Certain Underwriters at Lloyd's of London*, the plaintiff simultaneously sued his insurer seeking coverage under a policy and his insurance agent for negligently failing to procure insurance coverage.  The Court found that plaintiff's negligence claim against his insurance agent "is not presently cognizable, and may never be." *Id.* at *6.  If the plaintiff succeeded in his coverage case, he would have no claim against his insurance agent for failing to procure coverage.  *Id*.  This is

not analogous to Defendants' claim here and does not support delaying the OPG Entities' lawsuit against Defendants.[5]

For the above reasons, Defendants' Motions to Dismiss on the ground that this action is not ripe should be denied.

### C. The Complaint States a Claim Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6).

Baker claims that the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).  *See* ECF No. 38 at pp. 17-20.  Baker contends that the Complaint fails to plausibly allege that Baker owed the OPG Entities a duty and that there was causation between Baker's alleged negligence and the OPG Entities' damages.

It is well-established that when considering "a Rule 12(b)(6) motion to dismiss, that 'the pleadings are construed broadly,' and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." *Watts v. Florida International University*, 495 F.3d 1289, 94 (11th Cir. 2007).  A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits, including the documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc*., 555 F. 3d 949, 959 (11th Cir. 2009).

---

[5] Defendants also cite to several cases that were brought prematurely, but they are so dissimilar to the facts here that they have no bearing: *Digital Props. v. City of Plantation*, 121 F. 3d 586, 590 (11th Cir. 1997), involved a suit against a city for unconstitutional application of zoning regulations brought before the city made a binding decision on plaintiff's request. In *Elend v. Basham*, 471 F. 3d 1199, 1211-1212 (11th Cir. 2006), the court found that a claim for declaratory and injunctive relief with respect to protesters' First Amendment right to protest in the future that did not specify when, where or how they would protest, which was essential to the analysis, was unripe.  In *United States v. Rivera*, 613 F. 3d 1046, 1050 (11th Cir. 2010), the court found that a receiver's suit to reverse a surcharge for misfeasance brought before any surcharge was imposed was premature. In *Ouachita Watch League v. Jacobs*, 463 F. 3d 1163, 1173-1175 (11th Cir. 2006), the issue of ripeness was abandoned in the lawsuit; the Court explained that the claim that a federal agency failed to follow certain federal environmental standards becomes ripe when the alleged failure occurs.

1.      The Complaint Plausibly Alleges a Duty.

Baker argues without merit that the Complaint fails to allege that Baker owed the OPG Entities a duty. *See* ECF No. 38, at p. 18.  However, *see* the Complaint [ECF No. 29] at ¶¶ 32-34, 42, and 44, 88, 107-114, and 115-122.  Baker's reliance on several cases for this proposition is incredulous.  *Lane v. Cold*, 882 So. 2d 436 (Fla. 1ˢᵗ DCA 2004) affirmed entry of summary judgment in favor of an attorney on plaintiff's malpractice claim where the attorney merely asked plaintiff whether he wished her to prepare a document.  *Id*. at 438. There, the plaintiff did not even allege that the attorney gave him negligent advice.  *Id.* The Court held that the attorney's inquiry alone did not create a duty on her part to prepare the agreement.  *Id.*  In *Kates v. Robinson*, 786 So. 2d 61, 64 (Fla. 4ᵗʰ DCA 2001), the Court dismissed a complaint alleging legal malpractice against an attorney for failing to do legal work that was beyond what the plaintiff retained him to do. In *Wexler v. Shea & Gould*, 211 A.D. 2d 450, 621 N.Y.S.2d 858 (1st Dept. 1995), the court affirmed the dismissal of a complaint that did not allege any facts whatsoever about the alleged negligence committed by his attorneys, noting "[t]here is insufficient evidence that 'but for' defendants' alleged negligence plaintiff would have achieved a more favorable result [in his divorce]." These cases are completely inapposite.

Baker's claim that it owed no duty to the OPG Entities at the time that a March 20, 2017, email was sent to Brent Levison in Florida, and at the time of Melton's personal visit to Florida on March 21, 2017 (*see* ECF No. 38 at p. 18 (citing Complaint at ¶ 71)) is contradicted by the allegations in the Complaint that Melton was a partner at Baker at the time that she rendered these legal services. *See* Complaint [ECF No. 29] at ¶¶ 32, 33-34, 42, 44-45, 88, 107-108, 116, and 118. And, in any event, Baker's argument goes well beyond the purview on a motion to dismiss.

2.      The Complaint Plausibly Alleges Causation.

Baker's claim that the Complaint fails to plead causation is baseless.  The Complaint is replete with facts alleging that Baker rendered negligent legal services that injured the OPG Entities.  For instance, the Complaint alleges that Baker, through Melton, knew that the OPG Entities and their principals were subject to the 2014 Injunction entered in the Acquinity Matter

16

and, nevertheless, failed to provide legal compliance advice and training to the Receivership Entities sufficient to avoid liability under the FTC Act and under the 2014 Permanent Injunction through the operation of their businesses, thereby causing them to become subject to substantial penalties and sanctions, or failed to advise the OPG Entities to cease certain operation of its web-based businesses in order to avoid penalties and sanctions. *See* Complaint [ECF No. 29] at, *e.g.*, ¶¶ 1-5, 7-26, 32-34, 37-55, 57-105, 108-114, and 116-122,

Further, Baker is again improperly attempting to substitute its Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See* ECF No. 38 at p. 19. *See also Thompson v. Martin*, 530 So. 2d at 495 (reversing dismissal of second amended complaint).

> **D.    The Complaint Alleges a Plausible Claim For Attorneys' Fees Under the Wrongful Act Doctrine.**

Defendants have not alleged a valid basis for striking the OPG Entities' claim for attorneys' fees, and their Motions to strike the Receiver's claim for attorneys' fees should therefore be denied.[6] In Florida, the wrongful act doctrine permits a plaintiff involved in litigation with a third party due to the wrongdoing of another to recover its third-party litigation expense, including reasonable attorneys' fees, against the wrongdoer as an element of damages. *See Anago Franchising, Inc. v. Shaz, LLC*, No. 10-62273-Civ-Rosenbaum, 2013 U.S. Dist. LEXIS 197039, *3 (S.D. Fla. May 9, 2013).

The wrongful act doctrine provides that "when the wrongful act of a defendant forces the plaintiff into litigation with others, the plaintiff's attorneys' fees from that litigation are treated as the legal consequences of the defendant's conduct and may be recovered as damages. *Id.* at *3 (citations omitted). *See also Regions Bank v. KEL Title Ins. Grp., Inc.*, No. 3:12cv118-MCR/EMT, 2012 U.S. Dist. LEXIS 156675 (N.D. Fla. Nov. 1, 2012) (finding plausible claim for attorneys' fees pleaded under wrongful act doctrine as element of damages in legal malpractice claim);

---

[6]    Crowell requests that the Court strike the Receiver's request for attorneys' fees. *See* ECF No. 37 at pp. 11-12. Melton and Baker join Crowell's arguments and incorporate them by reference into their Motions. *See* ECF No. 36 at p. 2, n. 1 and ECF 38 at p. 2, n. 3, respectively.

*Gunster, Yoakley & Stewart, P.A. v. McAdam*, 965 So. 2d 182, 183-84 (Fla. 4th DCA 2007) (affirming attorneys' fees award under wrongful act doctrine in legal malpractice action). Reasonable attorneys' fees are recoverable regardless of whether the party seeking them commenced the third-party suit or defend against it. *See Anago Franchising, Inc. v. Shaz, LLC*, 2013 U.S. Dist. LEXIS 197039 *5, No. 10-62273-CIV-Rosenbaum (S.D. Fla. May 9,2013).

The Complaint alleges that the OPG Entities were forced to defend the FTC Enforcement Action and the Acquinity Matter in which the FTC alleged violations of Section(5) of the FTC Act because Defendants failed to advise them with respect to legal compliance with respect to these same issues to enable them to operate their web-based businesses in compliance with the FTC Act and the 2014 Permanent Injunction requirements or to cease operations, and it alleges that Defendants' substandard legal advice and training constituted legal malpractice.

For example, the Complaint alleges that Defendants "negligently failed to warn the OPG Entities that they should make changes and/or modify their business practices to be in compliance with these federal consumer protection laws and prior Court Orders effecting an OPG principal (and thereby OPG) or, in the alternative cease operations or cease certain operations." Complaint [ECF No. 29] at ¶ 3. The Complaint alleges that "Defendants' failure to properly counsel the OPG Entities in compliance matters caused the OPG Entities to incur millions of dollars in Receivership and attorney's fees, claims process fees, and contempt sanctions." *Id.* at ¶ 5. Additionally, *see* the Complaint at ¶¶ 3-18, 21-28, 30-34, 37-105, 108-114, and 115-122, and 123-130.  And, the Complaint alleges in the "WHEREFORE" clause for each count of legal malpractice directed against Defendants that the Receiver seeks judgment "for the total amount of damages resulting from [Defendants'] legal malpractice."

Striking allegations from a pleading under Rule 12(f) of the Federal Rules of Civil Procedure "'is a drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken allegations have 'no possible relation to the controversy.'" *Anago Franchising, Inc.* at *3.

Accordingly, based on the wrongful act doctrine, the above legal authority, and the allegations of the Complaint, the OPG Entities have plead a plausible claim for recovery of their reasonable attorneys' fees and other expenses incurred in these third-party litigations that the OPG Entities were forced into due to Defendants' wrongdoing, and the Defendants' Motions to Strike should therefore be denied. *See Regions Bank*.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Holly Melton's Motion to Dismiss and to Strike and Incorporated Memorandum of Law [ECF 36], Defendant Crowell & Moring LLP's Motion to Dismiss the Amended Complaint and to Strike the Receiver's Requests for Attorneys' Fees and Costs and Incorporated Memorandum of Law [ECF 37], and Defendant Baker & Hostetler LLP's Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12 (b)(2) and 12(b)(6), Memorandum of Law in Support, and Request for Judicial Notice [ECF 38] and grant such further relief as this Court deems appropriate and just.

Respectfully submitted,

*/s/ Melanie E. Damian*

Melanie E. Damian
*Court-Appointed Receiver*
Florida Bar No. 0099392
Email: mdamian@dvllp.com
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on the 15th day of February, 2023, on all counsel and/or parties who have appeared in the above-styled action.

*/s/ Melanie E. Damian*_____
Melanie E. Damian
*Court-Appointed Receiver*
