# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1-22-CV-22606-JLK

MELANIE E. DAMIAN, as Receiver
for On Point Global LLC, *et al.,*

   Plaintiff,

v.

HOLLY MELTON, BAKER &
HOSTETLER LLP, and CROWELL
& MORING LLP,

   Defendants.

_____/

<u>DECLARATION OF BRENT LEVISON</u>

I, Brent Levison, declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am over the age of eighteen (18), of sound mind, and competent to testify about the matters stated in this Declaration.

2. I make this Declaration based on my personal knowledge of the facts stated herein.

3. I submit this Declaration in support of Plaintiff's Omnibus Response to Defendants' Motions to Dismiss.

4. I was an owner and employed by On Point Global LLC, a Delaware limited liability corporation with its principal place of business in Miami, Florida during all relevant times.

5. Among the Receivership Entities are On Point Global LLC, MBL Media Ltd., PBJ Media LLC, Rogue Media Services LLC, and Direct Market LLC (collectively, the "OPG Entities", further, this term will refer to On Point Global LLC's overall business including its subsidiaries engaged in carrying out On Point Global LLC's business model).

6.     On January 21, 2016, OPG Entity Direct Market LLC engaged Holly Melton ("Melton") and Linda Goldstein ("Goldstein") while they were employed by Manatt Phelps Phillips to conduct the review of published websites to ensure compliance with privacy and data security laws, telemarketing laws and other applicable laws. *See* Email from Melton sending the Manatt Phelps Phillips Retainer Agreement to Direct Market LLC and Letter dated March 7, 2017, transferring files to Melton at Baker & Hostetler LLP ("**Baker**"), attached hereto as **Composite Exhibit "A"**. Melton and Goldstein then resigned from Manatt Phelps Phillips and moved to Baker and provided the OPG Entities continuous legal representation as Direct Market LLC engaged Baker and had their files transferred to Melton at Baker.

7.     Beginning on or about March 2017, the OPG Entities engaged Melton and Goldstein, then attorneys at Baker, to represent the OPG Entities with respect to our web-based businesses' legal compliance matters, including to guide and counsel the OPG Entities concerning the legal risks and implications of the OPG Entities' business models, websites, disclosures, and operations, and whether their business models and websites complied with applicable laws. Melton and Goldstein were further engaged to warn the OPG Entities that they should make changes and/or modify their business practices to be in compliance with federal consumer protection laws and prior Court Orders affecting an OPG Entities' principals, and thereby the OPG Entities, or, in the alternative, to cease operations or cease certain operations.

8.     On March 20, 2017, Melton, then an attorney at Baker, sent an email to me at the OPG Entities' office located in Miami, Florida with the subject "Direct Market Training Deck," and a power point titled "Direct Market LLC Legal Training," dated March 21, 2017. Additionally, Melton travelled to Florida, and on March 21, 2017, presented in-person training to the OPG Entities employees and/or representatives while physically present at the OPG Entities'

2

office in Miami, Florida. The compliance training addressed policies and procedures concerning basic consumer protection practices, TCPA compliance, FTC lead generation issues, and other compliance issues under applicable laws.

9.     Baker sent the OPG Entities periodic invoices for its legal services to OPG Entities' offices in Miami, Florida. The invoices were paid from accounts held in Miami, Florida. Melton, Goldstein, and Baker's representation of the OPG Entities was ongoing from on or about March 7, 2017, through the Preliminary Injunction hearing in the FTC Enforcement Action in January of 2020. On April 11, 2019, Goldstein, Melinda McLellan, and a team of Baker attorneys traveled to Miami to the OPG Entities' offices to address and provide training on telemarketing compliance issues, while physically present in Miami, Florida.

10.     Baker continued to represent me personally in the Acquinity Contempt proceeding and the FTC Enforcement Action in the Southern District of Florida until November 29, 2022.

11.     After Melton became a partner with Crowell & Mooring, LLP ("**Crowell**"), on or about November 2, 2018, the OPG Entities engaged Melton, through Crowell, to represent the OPG Entities with respect to their web-based business' legal compliance matters, including to guide and counsel the OPG Entities concerning the legal risks and implications of the OPG Entities' business models, websites, disclosures, and operations, and whether their business models and websites complied with applicable laws.

12.     Melton was further engaged to warn the OPG Entities that they should make changes and/or modify their business practices to be in compliance with federal consumer protection laws and prior Court Orders affecting an OPG Entity principal and thereby the OPG Entities, or, in the alternative, to cease operations or cease certain operations. The OPG Entities

engaged Crowell as its legal counsel in Miami, Florida.  Melton's representation of the OPG Entities, through Crowell, was ongoing from November 2, 2018, until about November 30, 2019.

13.     As part of her representation of the OPG Entities in legal compliance matters, while she was a partner at Crowell, Melton travelled to Florida, and on March 11, 2019, presented in-person training to the OPG Entities employees and/or representatives while physically present at the OPG Entities' office in Miami, Florida. The compliance training addressed policies and procedures concerning misleading and deceptive advertising practices under all applicable laws.

14.     Crowell sent the OPG Entities periodic invoices for its legal services rendered to the OPG Entities' offices in Miami, Florida.  The invoices were paid from accounts held in Miami, Florida. Melton and Crowell's representation of the OPG Entities was ongoing from on or about October 22, 2018, to the present.

15.     At all relevant times, the OPG Entities' office was (and is) located in Miami, Florida.  I was physically present (based) in Miami, Florida and regularly received information and legal advice from Melton and Goldstein, through Baker, and from Melton through Crowell, in Miami, Florida, through in-person visits, telephone calls, emails, text messages, and letters sent by them, or on their behalf, to me and others at the OPG Entities' office in Miami, Florida.  Electronic and written communications that were sent to me and/or others at the OPG Entities' office in Miami, Florida, by or on behalf of Melton, Goldstein, Baker, and Crowell in the course of their legal representation of the OPG Entities at issue in this matter are as follows:

a.     March 20, 2017 email from Melton (Baker) with the subject "Direct Market Training Deck," and power point dated March 21, 2017, titled "Direct Market LLC Legal Training," [Ex. A-1 to Baker's Motion];

b.   Engagement letter agreement dated January 21, 2016, between the OPG Entities and Mannat Phelps Phillips and the letter dated March 7, 2017, transferring the representation over to Baker concerning Melton, Goldstein, and Baker's legal representation of the OPG Entities on compliance issues, (**Composite Exhibit "A"**)];

c.   May 15, 2017 letter from Melton (Baker) to me mailed to Direct Market, LLC at the OPG Entities' physical office in Miami, Florida, discussing her analysis of the OPG Entities' new business model offering services regarding processing of vehicle registration renewals and making representations concerning government services. [Ex. A-2 to Baker's Motion];

d.   June 15, 2017 letter emailed from Melton (Baker) to me at the OPG Entities' office in Miami, Florida office regarding assessment of legal risk of a new business model. [Ex. A-3 to Baker's Motion];

e.   (i) September 27, 2017 email from Charlie Eissa to Melton (Baker) requesting Melton and Baker to conduct a "thorough legal and compliance review" of the entire business models and websites to "ensure total compliance," and (ii) October 4, 2017 email from Melton (Baker) to Charlie Eissa at the OPG Entities' office in Miami, Florida, assuring him that Baker was performing "a large-scale compliance review" of the OPG Entities and assembling a team of experts to "ensure total compliance," attached hereto as **Composite Exhibit "B"**;

f.   October 19, 2017 email from Melton (Baker) sent to me at the OPG Entities' office in Miami, Florida with subject "Feedback on Website Content," and attached memoranda, [A-4 to Baker's Motion];

g.     Engagement letter agreement dated (November 2, 2018), between the OPG Entities and Crowell, mailed by Melton to the OPG Entities' office in Miami, Florida, attached hereto as **Exhibit "C"**;

h.     March 11, 2019 Direct Market LLC Legal Training prepared by Melton (Crowell) and provided to the OPG Entities for in-person training at their office in Miami, Florida;

i.     April 5, 2019 memorandum titled "Compliance Monitoring Program" prepared by Melton (Crowell) and provided to OPG Entities;

j.     April 10, 2019 email from Crowell to me sent at the OPG Entities' office in Miami, Florida, outlining continuous compliance designated by Crowell;

k.     May 17, 2019 email (Crowell) sent to the OPG Entities' office in Miami, Florida, including a chart outlining Crowell's review of Freemium websites, and reflecting forty-four out of forty-eight Freemium websites on the chart stating, "Reviewed – no comments" (*i.e*, no suggested changes), attached hereto as **Exhibit "D"**; and

l.     July 19, 2019 email from Crowell sent to me at the OPG Entities' office in Miami, Florida, concerning analysis and revision of third-party data sharing, and SMS permission language from a section 8 housing website which was the subject of the FTC Enforcement Action (defined below).

16.     On December 13, 2019, the FTC brought an enforcement action [ECF No. 1] against the Receivership Entities (including the OPG Entities) and individual Receivership Defendants Burton Katz, Brent Levison, Elisha Rothman, Robert Zangrillo, Arlene Mahon, and Christopher Sherman, styled *Federal Trade Commission v. On Point Global LLC*, Case No. #: 1:19-cv-25046-SCOLA (the **"FTC Enforcement Action"**), pending in the United States District Court for the Southern District of Florida (the **"Receivership Court"**). The FTC alleged in the

FTC Enforcement Action that the OPG Entities engaged in deceptive and unfair practices with respect to the same web-based businesses that Baker's legal compliance advice to the OPG Entities centered on. On January 14, 2019, the Receiver was appointed by the Court to, among other things, oversee the OPG Entities and bring them into compliance. *See* ECF No. 126.

17.    Baker was legal counsel for the OPG Entities through the Preliminary Injunction hearing in the FTC Enforcement Action. The counsel consisted of a team of approximately fourteen attorneys, including two partners from Baker's Orlando, Florida office (one was the lead attorney, Robert Thielhelm, Jr.), six attorneys from Baker's New York office, and five attorneys from Baker's offices located in other states. *See* FTC Enforcement Action Docket Sheet.

18.    On September 29, 2021, the Receivership Court, in the FTC Enforcement Action, made a final determination that, the OPG Entities' "paid-guide" and "Freemium" websites violated Section 5(a) of the FTC Act. *See* FTC Enforcement Action at ECF No. 528. Also on September 29, 2021, in the Acquinity Matter, the Court granted in part the FTC's motion for summary contempt, finding, based on the Court's final determination of violation of the FTC Act in the FTC Enforcement Action, the OPG Entities and me and Burt Katz in contempt for violating the 2014 Permanent Injunction (also referred to as the "Acquinity Order"). *See* Acquinity Matter at ECF No. 225 at Sections (B)(2) and (5).

19.    On November 16, 2021, after a consolidated non-jury trial, the Receivership Court entered its Verdict and Order Following Non-Jury Trial holding certain of the OPG Entities and me and Burton Katz jointly and severally liable for compensatory damages for an amount not to exceed $102,768,235.47 in compensatory contempt remedies based on a claims process. *See* FTC Enforcement Action at ECF No. 579. The damages resulting from the malpractice is not less than $19 million based on the current claims process reports from the Receiver.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  February 15, 2023

_____
Brent Levison

8

**From:** "Melton, Holly" <HMelton@manatt.com>
**Date:** January 21, 2016 at 3:58:00 PM EST
**To:** "Brent Levison (brentlevison@gmail.com)" <brentlevison@gmail.com>
**Subject: Direct Market LLC 01.11.16 Engagement.DOC**

Hey, Brent.  Attached is our standard form engagement letter.  Let's also set up a time to discuss the Obamacare websites.

Holly

**Holly Melton**
Partner

_____

**Manatt, Phelps & Phillips,** LLP
7 Times Square
New York, NY  10036
**D** (212) 790-4559   **F** (212) 536-1837

HMelton@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**EXHIBIT A**



**Holly Melton**
Manatt, Phelps & Phillips, LLP
Direct Dial:  (212) 790-4559
E-mail:  HMelton@manatt.com

January 21, 2016                                                                                 Client-Matter:  Y64187

**BY E-MAIL** **brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market, LLC
425 NW 26th Street
Miami, FL 33127

      **Re:**    **Engagement for Legal Services**

Dear Brent:

      This letter describes the terms of our relationship.  Manatt, Phelps & Phillips, LLP ("we" or "us") will represent and advise Direct Market, LLC ("you") in connection with general advertising and marketing.  Initial work will involve the review of publishing websites to ensure compliance with privacy and data security laws, telemarketing laws and other applicable laws. For purposes of this engagement, we will be representing you only and all duties and responsibilities created and imposed by this agreement shall be owed solely to you and we will not be deemed to represent the interests of any of your affiliates, subsidiaries, parent companies, joint ventures, officers, directors, partners, principals, investors or employees (collectively, "Your Affiliates"), unless otherwise agreed to in writing.  Accordingly, we will be free to represent other firm clients adverse to or involving Your Affiliates or their interests.  Unless otherwise agreed in writing, the terms of this letter also will apply to any additional matters we agree to handle on your behalf or at your direction.  If this agreement is acceptable to you, please sign and return the original to me.  The enclosed copy is for your files.  In addition, please send a copy of the signed agreement to me by email as a .pdf attachment, or by facsimile at (310) 312-4224.  When you sign this letter, it becomes a contract between you and us.

      **Rates.**  You agree to pay our fees for services, which are primarily determined by multiplying the number of hours we spend working on your matters by the hourly rates then in effect for the professional providing such services.  Currently, these hourly rates vary from $135 for the most junior legal assistant to $895 for the most senior professional likely to perform services for you.  We review our hourly rates annually and any changes normally become effective on January 1.  I will be primarily responsible for representing you.  My 2015 hourly rate was $610. We are in the process of reviewing our rates firm-wide, and any adjustments for 2016 to the rate listed above would be retroactive to January 1, 2016.  We will provide you with

7 Times Square, New York, New York  10036  Telephone: 212.790.4500  Fax:  212.790.4545

Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  San Francisco  |  Washington, D.C.

# manatt

manatt | phelps | phillips

**BY E-MAIL brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 2

a 10% discount on fees. It may be necessary or desirable, from time to time, to utilize other professionals and personnel employed by or associated with us to perform the services you require. In addition to attorneys, the professionals whose services may be required in connection with our work on your behalf may include non-attorneys, such as consultants, advisors, litigation support specialists, paralegals and legal assistants.

In addition to fees for services, you agree to pay all expenses incurred on your behalf and for certain in-house administrative services. Expenses such as court filing fees, filing and recording fees of other government agencies, fees and expenses of accountants or other experts retained on your behalf, and charges for transcripts, depositions, parking, and travel expenses generally will be billed at the actual cost incurred by us; however, you acknowledge your responsibility to pay the fees and expenses of such third parties, and we may require retainers in respect of such third party costs. You further agree that you will, at our request, contract directly with such third party vendors or otherwise agree to be responsible directly to them for the payment of their fees. Expenses such as document reproduction, on-line computerized research, long-distance telephone, telecopies and fax transmissions, mileage, word processing, staff overtime required to meet your imposed deadlines, and messenger services will be charged at our standard rate in effect at the time the expense is incurred.

**Billing Practices.** We submit bills on a monthly basis shortly after services are rendered so you will have a ready means of monitoring and controlling the expenses you are incurring. Our bills itemize the services performed by date, time required, and the professional performing the services. Payment is due within twenty (20) days of your receipt of the bill. Please note that we do not accept foreign checks. If in the course of our representation we anticipate a significant increase in the level of our activity on your behalf, we may bill you on a basis more frequent than monthly. If you believe the expenses are mounting too rapidly, please contact us immediately so we can discuss and evaluate your options. When we do not hear from you, we assume you approve of the overall level of activity on our part in this matter on your behalf.

We understand that you may request that we submit our invoices electronically through a designated e-billing vendor. While we will endeavor to accommodate any such request, we cannot guarantee that we will be able to comply with all of the technical or other procedure requirements of your designated vendor. We will consider any such request on a case-by-case basis, and conversion to e-billing shall remain subject to our mutual agreement. In addition, please note our submission to e-billing procedures will not alter our current billing cycle as explained above.

# manatt
manatt | phelps | phillips

**BY E-MAIL brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 3

**Estimates.**  You may from time to time receive an estimate of the fees and expenses likely to be incurred by you in connection with the services we are providing.  An estimate is not a fixed fee and does not constitute a commitment by us to perform services for that amount or an obligation by you to pay that amount.  The fees and expenses required ultimately are a function of many conditions over which we have little or no control and may be more or less than any estimate.  You will be responsible for the actual fees and expenses on the basis described in this agreement.  Further, your obligation to pay such fees and expenses is not contingent upon successful completion of any project.

**No Guarantee of Results.**  Either at the beginning or during the course of our representation, we may express our opinions or beliefs concerning the matter or various courses of action and the results that might be anticipated.  Any such statement made by any attorney or employee of our firm is intended to be an expression of opinion only, based on information available to us at the time, and must not be construed by you as a promise or guarantee of any particular result.

**Late Charges.**  Each month we send to clients who have amounts outstanding an Unpaid Statement notice listing all such amounts.  A client will be assessed a late charge equal to one percent (1%) of the amount included on each notice that has been outstanding more than sixty (60) days.  The amount of this late charge will be set forth on the notice.  This late charge will be imposed each month on amounts that continue to be outstanding for more than sixty (60) days, including unpaid late charges.  Unless a payment applies to a particular invoice, payments are applied to statements that have been outstanding the longest period of time.  The costs associated with late payments go beyond a mere cost of funds calculation and make it impracticable or extremely difficult to quantify the actual costs incurred in connection with late payments, and you and we agree that this late charge is presumed to be the cost of a payment that is not made on time.  We also note that this late charge provision is not intended to provide our clients with a means of financing their bills, and instead we continue to expect and require prompt payment of our billing statements.

**Termination of Engagement.**  Either of us can terminate this relationship at any time, but if we find it necessary to terminate the relationship, we will, of course, comply with our ethical obligations to protect your interests in the process of withdrawing.  Upon termination of this engagement, you will remain responsible for the payment of all fees and expenses incurred on account of the representation.  You also agree that we may apply to the court or other tribunal to withdraw as your counsel in such matter(s) and you hereby consent to such withdrawal and to

# manatt

manatt | phelps | phillips

**BY E-MAIL brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 4

cooperate fully and promptly in freeing us of any obligation to perform further work, including the execution and delivery of a substitution of attorney form. In addition, you agree to immediately advise the appropriate court or tribunal of replacement counsel.

**Client Files.** At the conclusion of our engagement, upon your request, we will turn over documents in the file(s) for this matter to your custody. If you do not request the file, we will retain it for a period of at least seven (7) years after the matter has concluded. If you do not request delivery of the file before the end of the seven-year period, we will have no further obligation to retain the file and may, at our sole discretion, destroy the file without further notice to you.

**Tax Reporting and Disclosure.** Please be advised that certain federal and state tax laws and regulations may require us to provide information to tax authorities about advice rendered by us. If you have any questions about these requirements, an appropriate member of our tax practice will be pleased to discuss them with you.

**Policy Regarding Sarbanes-Oxley Section 307.** Please be advised that our firm has a policy regarding compliance with Section 307 of the Sarbanes-Oxley Act of 2002, SEC Release No. 33-8185, 17 CFR, Chapter II, Part 205. A copy of this policy is available for your review upon request.

**Conflicts of Interest.** You understand and acknowledge that while Manatt is representing you, that we may be asked to represent other clients in connection with non-litigation matters adverse to or involving your interests. We represent a large number and variety of clients across a wide array of industries and businesses, including, without limitation, advertising and marketing. Given the scope of our practice, it is possible that we may be asked to represent, one or more of these other clients in matters adverse to you or your interests. By executing this letter, you acknowledge that we may represent other clients who directly, or through an affiliate, are adverse to you in transactions, negotiations, regulatory, legislative and public policy matters. You hereby acknowledge and agree that you have no objection to our representing such other clients adverse to you or your interests in connection with any matter not directly related to those matters for which we are representing or have represented you, and you waive any conflict of interest that may exist by virtue of any such adverse representation. This consent and waiver does not permit us to use any confidential information obtained during the course of our representation of you in any matter, nor does it extend to our engaging in litigation, arbitration or other formal dispute resolution proceedings adverse to you without your consent.

# manatt

manatt | phelps | phillips

**BY E-MAIL brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 5

    **Dispute Resolution.** New York Court Rules provide for arbitration or mediation of certain disputes concerning attorney's fees for legal services.  In the event a dispute arises between us concerning fees, we will provide you with information about the fee dispute resolution program sponsored by the New York State Bar.

    **Retainer.**  While we are not requiring a retainer at the outset of this engagement, we reserve the right to require a retainer in the future if we determine that circumstances so warrant. If there are outstanding fees due us for any other matters we may handle on your behalf, by signing below you acknowledge and agree that we may apply such retainer against any fees. Without limiting the foregoing, we may require retainers in advance to defray charges of third parties engaged by us on your behalf (such as experts, consultants, engineers, litigation support services and foreign counsel), which retainers will be applied to pay such third party charges on a current basis.  Except as otherwise agreed by you, any retainers so delivered by you in respect of such third party charges will be applied exclusively to that purpose and not to the payment of our legal fees.  As security for the payment of the sums charged to you  in connection with our representation, and without prejudice to any other rights, recourse or remedies we may have, you hereby grant us a security interest in and lien upon any retainer funds that we may receive from you.  In addition, as to any matters covered by this letter which involve litigation or threatened litigation, or any administrative or alternative dispute resolution proceeding, you hereby grant us a security interest in and a lien upon any sum or sums that may be recovered or received by you or on your behalf (or to which you are, or become, entitled to recover or receive) in connection with such litigation, threatened litigation or other proceeding, from any source or for any reason, including without limitation pursuant to any judgment, arbitration decision, settlement or insurance policy.  You expressly authorize us to take appropriate action to perfect these security interests or liens, if necessary, and to resort to such security interests or liens to obtain partial or total satisfaction of any obligation or debt that you may have to us arising from this engagement. You may seek the advice of an independent lawyer of your choice about this lien provision and its consequences.  By signing this agreement you acknowledge that you have been advised of the terms of this lien agreement and of your right to consult independent counsel and that you have been given a reasonable opportunity to seek such advice.



**manatt**
manatt | phelps | phillips

BY E-MAIL brentlevison@gmail.com

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 6

    **Wire Transfer.** You may remit the retainer, if one is required for this engagement, and any monthly payments to us via wire transfer as follows:

**Comerica Bank - California**

1021 Glendon Avenue

Los Angeles, CA 90024

Routing number: 121137522

For credit to the account of Manatt, Phelps & Phillips, LLP

Account number: 1890693698

    **Effective Date.** This agreement will not take effect, and we will have no obligation to provide services to you, until you return a signed copy of this agreement, but the effective date of this agreement will be retroactive to the date we first provided legal services to you. Even if this agreement is not executed and returned by you, you will be obligated to pay the reasonable value of any services we may have performed for you at your direction. No modification to this agreement will be effective unless it is in writing and signed by both of you and us. Facsimile signatures are as effective as original signatures.

    Please confirm your agreement to the terms of this engagement letter by signing and returning this letter at your earliest opportunity. For your convenience, we have enclosed a self-addressed, stamped envelope, or you can return it to me by email as a .pdf attachment, or by fax at 310.312.4224.

***[Signature required on next page]***

# manatt

manatt | phelps | phillips

**BY E-MAIL brentlevison@gmail.com**

Brent Levison
Member General Counsel
Direct Market LLC
January 21, 2016
Page 7

We appreciate this opportunity to be of service to you.

Very truly yours,

Holly A. Melton
Manatt, Phelps & Phillips, LLP

We hereby agree to retain Manatt, Phelps & Phillips, LLP, on the terms described above.

**Direct Market, LLC**

By:  _____
     **Brent Levison**

Its:   Member General Counsel

Dated:  _____

203338413.2

Manatt, Phelps & Phillips, LLP
Attn: Monte Lemann
11355 W. Olympic Blvd.
Los Angeles, CA  90064

     Re:  Direct Market LLC - 62254-030

Ladies and Gentlemen:

     This letter shall authorize and direct Manatt, Phelps & Phillips, LLP to release and immediately forward any and all files or property relating to Direct Market LLC, including files located on site or off site and electronic and digitally stored e-mails or documents, to our attorney Holly Melton at Baker Hostetler at the address listed below.

Holly Melton
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111-0100

     Finally, please change your database to reflect the above-referenced address with respect to any mail addressed to us, our company or relating to any of the matters listed above.

     As we have on-going issues to which many of these files pertain, your prompt attention to this matter is greatly appreciated.

Date: _March 7 2017_

By: _____

Name: _Brent Levison_

Its: _Co Manager_

203944742.1

**From:** **Melton, Holly A.** hmelton@bakerlaw.com
**Subject:** RE: introduction
**Date:** October 4, 2017 at 3:34 PM
**To:** Charlie Eissa ce@inboxexpress.com
**Cc:** Brent Levison brentlevison@gmail.com, Badreldin, Moustafa mbadreldin@bakerlaw.com



Hi, Charlie. We may have miscommunicated. This is a large scale compliance review, so it's going to take us some more time. We are in the process of assembling a team of folks who are familiar with not only advertising and regulatory issues, but also privacy, data security, CAN-SPAM, etc. We are also working with our client value team to work to staff this review in the most efficient and cost effective manner possible.

I think we meant to communicate that we would have had the chance to review the scope of review, etc. by today, and be in a position to ask any questions regarding the anticipated scope of the review. Toward that end, I do have some questions and would be happy to jump on a call. I've been out of the office at conferences and client meetings since we last spoke, so today is a little hairy. Would some time tomorrow work?

**Holly Melton**
Partner

## BakerHostetler
45 Rockefeller Plaza
New York, NY 10111-0100
T +1.212.589.4208

hmelton@bakerlaw.com
bakerlaw.com


**From:** Charlie Eissa [mailto:ce@inboxexpress.com]
**Sent:** Wednesday, October 4, 2017 3:11 PM
**To:** Melton, Holly A. <hmelton@bakerlaw.com>
**Cc:** Brent Levison <brentlevison@gmail.com>; Badreldin, Moustafa <mbadreldin@bakerlaw.com>
**Subject:** RE: introduction

Hey Holly / Moustafa,

You had mentioned on our call that you may be able to review the info sent by Wednesday of this week.

I am just following up to see when can we get on a call to discuss? If possible to do the deep dive on that call that would be optimum. I am happy to wait until you have completed your full review if needed.

Please Advise

Thank You
Charlie

**Exhibit B**

**From:** Charlie Eissa
**Sent:** Wednesday, September 27, 2017 10:48 PM
**To:** 'Melton, Holly A.' <hmelton@bakerlaw.com>
**Cc:** Brent Levison <brentlevison@gmail.com>; Badreldin, Moustafa <mbadreldin@bakerlaw.com>
**Subject:** RE: introduction

Holly / Moustafa,

It was a pleasure speaking with you.  Per our conversation, below is the scope of the review.  We look forward to your input and any additional suggestions you may have to ensure total compliance.

Your initial thoughts on any of the attached would be greatly appreciated.  They are being prepared for broadcast and I suggested they be held until they were reviewed.


A thorough legal and compliance review of each of the division's 16 web properties and marketing processes including but not limited to:

- Website
  - Disclaimers
  - Data Collection Process / Data Sharing Rules
  - Privacy Policy
  - Site Content
  - Landing Pages used in Monetization
- The Guide
  - Content
- eMail Communications (Attached)
  - Mail Stream Plan
  - Sending Domains / Whois Registrations
  - From Addresses
  - Creatives (Confirmation, Guide, Day 1 – Day 15 Content)
  - Cross-Stream Marketing
  - Unsubscribe Process
- Text Communications (Phase 2 Review)
- Browser Push Notifications  (Phase 2 Review)

Thank You
Charlie


[Privileged Attorney Client Communication]

**From:** Melton, Holly A. [mailto:hmelton@bakerlaw.com]
**Sent:** Wednesday, September 27, 2017 4:21 PM
**To:** Charlie Eissa <ce@inboxexpress.com>

590 Madison Avenue, 20th Floor, New York, NY  10022-2524 ▪ p212 223-4000 ▪ f212 223-4134

# crowell(moring

Holly A. Melton
(212) 895-4258
HMelton@crowell.com

November 2, 2018

BY EMAIL: blevison@onpointglobal.com

OnPoint Global
425 26th Street, Miami, FL 33127
Attention: Brent Levison
           Chief Administrative Officer & General Counsel

Re: Retention of Crowell & Moring LLP

Dear Brent:

This letter will memorialize our agreement concerning the representation of

OnPoint Global ("OnPoint") by Crowell & Moring LLP ("Crowell & Moring") in

connection with providing compliance counseling related to Telemarketing Sales

Rule (TSR) and Telephone Consumer Protection Act (TCPA) regulations, and

general counsel regarding contract negotiations with vendors. Crowell & Moring's

current assignment for OnPoint is limited to the matter described above.

I will primarily be responsible for this matter. Other Crowell & Moring

lawyers, law clerks, or legal assistants may also work on this matter from time to

time under my supervision as the need arises.

Crowell & Moring will charge OnPoint an hourly fee for the time that our

lawyers, law clerks, or legal assistants spend on this matter. The current rates for

the individuals likely to work on this assignment range from a high of $730 an hour

**Exhibit C**

NYACTIVE-17013941.1

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ London ▪ Brussels

OnPoint Global
November 2, 2018
Page 2

for my time, to $320.00 an hour for junior paralegals. Our rates generally are reviewed for adjustment annually by the firm's Management Board. We also bill for expenses and other services, including photocopies, word processing, travel, messenger services, and meals. The latter will be billed in a separate category to provide you information necessary for your federal tax returns.

Crowell & Moring renders statements monthly for services performed during the preceding month. These statements are due on receipt.

Crowell & Moring's client for purposes of this engagement is OnPoint Global only. Crowell & Moring is not undertaking the representation of any person or entity related to or affiliated with OnPoint, including, but not limited to, any parent entity, subsidiary, member, officer, director, or employee (hereinafter  collectively referred to as "Related Entities"). Crowell & Moring will not be precluded by reason of undertaking this or any future engagement of OnPoint from representing existing or future clients in legal matters relating to or adverse to any Related Entities.

Since Crowell & Moring represents a large number of diverse clients, which may include clients involved in activities affecting OnPoint, we ask you to agree that the representation of OnPoint by Crowell & Moring in the present and any future matters will not be grounds for asserting a conflict of interest in any work that the firm may do for other clients (including OnPoint's competitors and adversaries) that is unrelated to Crowell & Moring's current or future representation of OnPoint. Specifically, OnPoint agrees that Crowell & Moring may

NYACTIVE-17013941.1

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ London ▪ Brussels

OnPoint Global
November 2, 2018
Page 3

represent other clients in matters that do not involve any confidential information that has been obtained by Crowell & Moring in the course of any representation of OnPoint, even though our representation of the other client or clients may be adversarial to OnPoint in business transactions, litigation, or judicial or administrative proceedings. Accordingly, OnPoint waives any conflict of interest in any such matter, and will not assert any conflict of interest as a ground for disqualifying Crowell & Moring from representing other clients in any such matter.

The firm is often asked, in a marketing context, to identify clients of the firm and/or the work we do for them. We, of course, do not reveal any confidential information, and only refer to specific cases or transactions that are public knowledge (*e.g.*, complaint filed or deal announced). Unless you advise us otherwise, you authorize us to identify you as a client of the firm in brochures, on our website, and in other written materials, consistent with the above.

In the event that a dispute arises between us relating to our fees, you may have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of the State of New York, a copy of which will be provided to you upon request.

Finally, unless we receive different instructions from you, we will retain files from this matter for seven years after its completion. At that time, documents other than those with intrinsic value (such as a deed or contract) may be destroyed.

NYACTIVE-17013941.1

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ London ▪ Brussels

OnPoint Global
November 2, 2018
Page 4

If these terms and conditions are acceptable, please print and sign a copy of this letter in the space below and scan and return it to me by email within ten business days. If we do not receive the countersigned letter or any objections to it within ten days, and with your knowledge we begin work for you, we will treat the terms of this letter as having been accepted by you.

Sincerely yours,

Holly A. Melton

AGREED:

ONPOINT GLOBAL

_____

By:   Brent Levison
      Chief Administrative Officer & General Counsel

NYACTIVE-17013941.1

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ New York ▪ San Francisco ▪ Los Angeles ▪ Orange County ▪ London ▪ Brussels

**From:** **Brent Levison** brentlevison@gmail.com  📎
**Subject:** Fwd: Compliance Program Review Guidance Chart
**Date:** September 14, 2021 at 12:57 PM
**To:** Burton Katz burtonusc@gmail.com, Elisha Rothman erothman10@yahoo.com, chris sherman chris@mmimediagroup.com

---

---------- Forwarded message ---------
From: **Badreldin, Moustafa** <MBadreldin@crowell.com>
Date: Fri, May 17, 2019 at 5:19 PM
Subject: Compliance Program Review Guidance Chart
To: Aldo Lanzas <alanzas@onpointglobal.com>, Brent Levison <blevison@onpointglobal.com>,
ceissa@onpointglobal.com <ceissa@onpointglobal.com>, Liza Vallejos
<lvallejos@onpointglobal.com>, John Torrents <jtorrents@onpointglobal.com>
Cc: Melton, Holly <HMelton@crowell.com>

Hello all,

Attached you will find the chart containing our review findings and guidance on the websites.
Note the chart covers each specific site and at the bottom of the chart you will find global
comments on items  that we found reoccurred on the various sites.

As always, let us know if you have any questions and we can hop on a call to discuss. Have a great
weekend!

**Moustafa Badreldin | Crowell & Moring LLP**

590 Madison Avenue | 20th Floor | New York, NY 10022-2524

T: +1 212.895.4209 | F: +1 212.895.4134

mbadreldin@crowell.com | www.crowell.com

--
find a cause to die for - and then live for it!
        Marc B. Levison

CONFIDENTIALITY NOTICE:  This electronic mail message and any attachment are
confidential and may also contain privileged attorney-client information or work product.  The
message is intended only for the use of the addressee.  If you are not the intended recipient, or
the person responsible to deliver it to the intended recipient, you may not use, distribute, or
copy this communication.  If you have received the message in error, please immediately notify
me by reply electronic mail and delete this original message

**Exhibit D**

me by reply electronic mail and delete this original message.



OnPoint Global
Compli...w.docx

## OnPoint Global Compliance Review

| Website | TCPA Compliance | Marketing Partners list updated? | Privacy Policy updated? | Terms of Use Updated? | Risk Assessment |
|---|---|---|---|---|---|
| chipassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| tanfassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| valoanassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| mortgage-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| gibillassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| wicassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| womeninfantschildrenoffice.com | NA as there is no sign-up presented at all on this site. | No link to Marketing Partners | Yes | Yes | • Advise we put "This website is not associated with WIC or any other government operated service." on top of website so that it is clear and conspicuous.  • Instead of an "Apply for WIC" button up top, we should state "how to apply" so that it is clear we are not the place for them to directly apply for the benefit |
| North-Carolina-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Missouri-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |

| | | | | |
|---|---|---|---|---|
| Pennsylvania-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| californiaunemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| floridaunemploymentclaims.org | | Yes | Yes | Yes | Reviewed – no comments. |
| illinois-unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Maryland-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Wisconsin-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Washington-Unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| texas-unemployment.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| SouthCarolinaFoodStamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| texas-foodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| tennesseefoodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| missourifoodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| florida-foodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| california-foodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Georgia-FoodStamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |

| Website | | | | | Comments |
|---|---|---|---|---|---|
| NewYork-FoodStamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| indianafoodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| kentuckyfoodstamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Pennsylvania-FoodStamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| section-8-apartments.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Section-8-Housing.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| section8assistance.org | Yes | Yes | Yes | Yes | The Non-Gov agency disclaimer should be placed at the top, not bottom of the site.<br><br>"This site is privately owned and is neither affiliated with, nor endorsed by, nor operated by any government agency. We provide time saving information." |
| senior-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| texas-benefits.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| unemploymentassistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| unemploymentclaims.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| unemploymentoffice.org | Yes | No link to Marketing Partners | Yes | Yes | A Non-Gov agency disclaimer should be placed at the top, nothing currently on the website. |

| | | | | | |
|---|---|---|---|---|---|
| Veteran-affairs.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| medicaidguideassistance.com | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| medicaid-help.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| foodstampbalance.net | NA as there is no sign-up presented at all on this site. | No link to Marketing Partners | Yes | Yes | • The Non-Gov agency disclaimer should be placed at the top, not bottom of the site.<br><br>"This website is not associated with SNAP, the USDA or any other government operated services."<br><br>• Instead of an "Apply for EBT" button up top, we should state "how to apply for EBT" so that it is clear we are not the place for them to directly apply for the benefit. |
| food-stamps.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Ohio-Assistance.org | NA | | | | Website not loading |
| virginia-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| Pennsylvania-Assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| georgia-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| florida-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |

| | | | | | |
|---|---|---|---|---|---|
| California-Assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |
| arizona-assistance.org | Yes | Yes | Yes | Yes | Reviewed – no comments. |

## General comments

- ### No need to say "email" in TCPA language

  The TCPA does not need to state you will email them and the language as written is not correct as you would not use a number to email them. See below

  'Continue', I am providing express written consent for floridaunemploymentclaims.org and our Marketing Partners to contact me at the number provided above via telephone, email or text (including through automated means; e.g. automatic telephone dialing system, text and pre-recorded messaging) about various products, services and related marketing/telemarketing offers. I understand that message and data rates may apply. I am authorizing these parties to contact me even if my telephone number is currently listed on any state, federal, local or corporate Do Not Call lists and registries. I understand that my consent is not a condition of purchase and no purchase is necessary. If you choose not to continue, you will still receive your free guide by email shortly.

- ### "Find Out If You Are Eligible for Unemployment Benefits"

  Seen during the sign-up process, this language may imply to the consume that you will answer them about their eligibility affirmatively. You are only providing a guide however, Better to say "receive a guide to find out if you are eligible for unemployment benefits"



- ## Preloaded Form

We noticed the forms on the various websites would often times be pre-loaded, either with information we submitted before on another sister site, or with different information all together. We should check what is happening on the back end here as this shows you are transferring data from one site to another or even potentially taking information from another registrant and placing it on another's screen. See example below. This is information that was pre-loaded.



- ## Health Question.

We noticed in the form there is a health specific question asking question about medical history, diabetes, cancer, Eshima, etc. What are we doing this this information as we should be wary of collecting sensitive medical information?



- **"Are you interested in receiving a phone call from our automated platform about improving your credit score".**

  We ask this question in the form, make sure this call comes from us or one of our marketing partners, as per our TCPA consent language. If it comes from a different source, we need separate TCPA consent language for it.

- **Different websites loading upon submission of information.**

  We noticed that, when we submit our information, a separate website opens that appears to be from non-affiliated sites such as "CarrerAdvisortoday", "Finance Watcher" and "Home Tipper". What is our relationship with these sites? Are they partners? No

major red flag here but something to be wary of in the case that those websites start to make claims or offers that are not in compliance with a law or regulation, we do not want to be associated with them.